**Exhibit 3**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

UPTIME SYSTEMS, LLC,

Plaintiff,

v.

KENNARD LAW, P.C.,

Defendant.

Civil No. 20-1597 (JRT/ECW)

**ORDER AWARDING PLAINTIFF ATTORNEY FEES**

---

Steven M. Cerny, **SANTI CERNY, PLLC**, 222 South Ninth Street, Suite 1600, Minneapolis, MN 55402, for plaintiff.

Michael J. Minenko, **MINENKO LAW, LLC**, 2051 Killebrew Drive, Suite 611, Bloomington, MN 55425, for defendant.

Plaintiff Uptime Systems, LLC's ("Uptime") have filed a motion for sanctions in this case. On February 8, 2021, the Court granted Plaintiff's motion to remand this case to state court following an untimely removal by Defendant Kennard Law, P.C. ("Kennard") to federal court. (Order Granting Mot. Remand at 6–8, Feb. 8, 2021, Docket No. 65.) Additionally, the Court granted Uptime's motion for attorney's fees and costs. (*Id.* at 8–9.) Uptime was ordered to submit an accounting of its attorney's fees and costs incurred due to Kennard's untimely motion, and, on May 19, 2021, the Court awarded $16,327 to Plaintiff solely with respect to the time spent on the Motion to Remand, accepting Plaintiff's reasonable and necessary attorney's fees of $290 per hour. (Order Granting Atty.'s Fees at 1–2, May 19, 2021, Docket No. 70.)

Separately from its motion for attorney's fees, Uptime moved to impose sanctions pursuant to Federal Rule of Civil Procedure 11 on Kennards' attorneys—Alfonso Kennard, Jr. and Michael J. Minenko—on November 20, 2020. (Mot. Sanctions, Nov. 20, 2020, Docket No. 52.) On August 9, 2021, the Court adopted the Report and Recommendation ("R&R") of Magistrate Judge Elizabeth Cowan Wright, granted Uptime's motion in part, and ordered Kennard and attorney Alfonso Kennard, Jr. to pay a monetary sanction. (Order Adopting R&R at 1–2, Aug 10, 2021, Docket No. 74.) In the same Order, the Court ordered Uptime to submit an affidavit regarding its attorney's fees and costs. (*Id.* at 2.)

In accordance with the Court's August 9, 2021, Order, Uptime filed a declaration accounting for fees in the amount of of $22,997 for 79.3 hours of work, exclusive of time spent on Kennard's Motion to Remand and any other time not spent on violations identified in the R&R. (Decl. Steven M. Cerny ("Cerny Decl."), Ex. 1, Aug. 13, 2021, Docket No. 75–1.) Kennard did not object to the accounting.

**DISCUSSION**

Under Rule 11, Uptime may be awarded only reasonable attorneys' fees. Fed. R. Civ. P. 11(c)(4). A district court has substantial discretion when determining the reasonableness of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000). The burden of establishing that the fees sought are reasonable rests with the party seeking attorneys' fees. *Hensley*, 461 U.S. at 433–34, 437. "Where attorney fees are appropriate, courts typically use the

'lodestar' method for calculating a reasonable award." *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018). "The lodestar is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Id*. (internal quotation omitted). The reasonable rate must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking an attorneys' fees award has the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. See *Fish v. St. Cloud State Univ*., 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

The Court, after reviewing Uptime's counsel's declaration and noting that Defendant has not otherwise objected to or opposed the award, finds an award of $22,997 just and reasonable. Uptime's counsel submitted sufficient evidence supporting the hours worked on legal issues related to conduct or submissions by Kennard and attorney Alfonso Kennard, Jr., *see Hensley*, 461 U.S. at 434, and Uptime has also met its burden to show that counsel's hourly rates are in line with those prevailing in the community. Accordingly, the Court will award Uptime the full amount requested, to be paid jointly and severally by Defendant Kennard Law, P.C. and attorney Alfonso Kennard.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Uptime Systems, LLC is awarded attorney's fees and costs in the amount of $22,997. Defendant Kennard Law, P.C. and attorney Alfonso Kennard, Jr. are jointly and severally liable and shall pay Plaintiff in the amount of $22,997 as a monetary sanction under Rule 11 within thirty (30) days of this Order.

DATED: October 6, 2022
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Uptime Systems, LLC,

Plaintiff,

v.

Kennard Law, P.C.,

Defendant.

Case No. 20-cv-1597 (JRT/ECW)

**REPORT AND RECOMMENDATION & ORDER**

---

This matter is before the Court on Plaintiff's Motion for Sanctions (Dkt. 52) ("Sanctions Motion"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends granting in part and denying in part the Sanctions Motion.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The factual and procedural background of this case has been previously set out in detail by the undersigned in the Court's November 25, 2020 Order revoking Alfonso Kennard, Jr.'s pro hac vice admission to the District of Minnesota ("Revocation Order") (Dkt. 60 at 1-7) and by Chief U.S. District Judge John R. Tunheim in his February 8, 2021 Order remanding this case to state court ("Remand Order") (Dkt. 65 at 2-5). The Court repeats and expands on that background here to the extent necessary for resolving the Sanctions Motion.

## A. State Court Proceedings

Plaintiff Uptime Systems, LLC ("Plaintiff" or "Uptime") initiated this case against Defendant Kennard Law, P.C. ("Defendant" or "the Firm") in Minnesota state court on February 7, 2019. (Dkt. 65 at 3; Dkt. 60 at 1.)[1] Uptime asserted claims for breach of contract and unjust enrichment and claimed to be entitled to damages of $17,400 plus ongoing data storage costs, later calculating its total damages to be $45,787.82, exclusive of interest, costs, and fees. (Dkt. 65 at 3; Dkt. 60 at 1; Dkt. 1-1, Ex. 1 at 13; Dkt. 1-2, Ex. 3 at 19-20.)

The Firm had previously filed its own breach of contract suit in Texas state court on January 30, 2019, which was dismissed on September 18, 2019 based on a forum selection clause in the parties' contract. (Dkt. 65 at 3; Dkt. 60 at 1-2; Dkt. 55-1, Ex. 1 at 2.) According to Uptime, the Firm did not appeal, request reconsideration of, or seek other relief related to that September 2019 dismissal. (Dkt. 60 at 2; Dkt. 55 ¶¶ 4, 15.) However, according to the Firm, "[o]n or about September 2019, Defendant took measures to safeguard its operations by filing pleadings with Texas state court . . . that were ultimately dismissed." (Dkt. 1 ¶ 2 (Notice of Removal); Dkt. 30 ¶ 2 (Def.'s Resp. to Pl.'s Mot. Remand); Dkt. 34 ¶ 2 (Def.'s Resp. to Pl.'s Mot. Revoke Pro Hac Vice); Dkt. 44-3, Ex. 2 ¶ 7 (Decl. Alfonso Kennard, Jr. Supp. Def.'s Sur-Reply to Pl.'s Mot. Revoke Pro Hac Vice); Decl. Alfonso Kennard, Jr. ¶ 8[2]; *see also* Dkt. 48 (Def.'s Mem.

---

1 Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

2 As further detailed in Section I.B.4, Mr. Kennard submitted by email but did not file several papers, including this declaration, hereinafter cited as "Dec. 4, 2020 Decl."

Law Supp. Mot. Amend Pleading) (nearly identical statement); Def.'s Mem. Resp. Pl.'s Mot. Sanctions ¶ 2 (same)[3].) The meaning of this assertion is unclear. The most natural reading, given the statement's reference to "pleadings . . . that were ultimately dismissed," is that the Firm meant to say it filed a complaint or amended complaint in September 2019 that was dismissed at a later time. *See* Fed. R. Civ. P. 7(a) (defining "pleadings"). Or, perhaps the Firm meant "pleading" to refer to a motion, brief, or filed document of any kind. But the precise meaning of "pleading" in this context does not really matter, because the Firm has never submitted any evidence of any pleading, motion, or paper filed in Texas state court after the September 2019 dismissal—notwithstanding multiple opportunities to do so.[4]

In addition, the Firm asserted several times, "This on-going process in Texas was later ultimately resolved as follows: the Court decided that a choice of venue in Minnesota applied." (Dkt. 34 ¶ 3; Dkt. 44-3, Ex. 2 ¶ 8; Dkt. 48 ¶ 4.) While the Firm's "ultimately" language suggests that the dismissal was not final for some time after September 2019, it submitted no evidence indicating that the Texas state court issued any orders or took any action after September 2019. Based on the record before the Court, the Texas state court action was concluded as of September 18, 2019.

---

[3] As further detailed in Section I.B.4, Mr. Kennard submitted by email but did not file several papers, including this memorandum, hereinafter cited as "Def.'s Mem. Sanctions."

[4] Even at the hearing on the Sanctions Motion, Mr. Kennard was not able to identify any pleadings filed in Texas state court in or after September 2019, stating that he did not have that information at hand and would have to look into it.

After the Texas state court case dismissal, the Firm filed an Answer and Counterclaim in the Minnesota state court case on October 31, 2019, in which it asserted counterclaims of breach of contract, fraud, statutory fraud, and fraud in the inducement. (Dkt. 1-3, Ex. 4 at 7; Dkt. 55-4, Ex. 4 at 2-3; *see also* Dkt. 65 at 4.) The October 31, 2019 Answer and Counterclaim did not state the damages claimed by the Firm. (*See* Dkt. 55-4, Ex. 4.) On February 28 and March 6, 2020, Uptime moved for summary judgment and, in the alternative, default judgment, as well as sanctions based on the Firm's conduct in the Minnesota state court litigation. (Dkt. 1-3, Ex. 4 at 7; Dkt. 65 at 4; Dkt. 60 at 2.)

On April 20, 2020, the Firm filed another Answer and Counterclaim, which asserted a single counterclaim for breach of contract with damages of $1.5 million. (Dkt. 1-3, Ex. 4 at 8; Dkt. 4 at 1, 4, 6; Dkt. 65 at 4; *see also* Dkt. 55 ¶ 10; Dkt. 55-6, Ex. 6 at 3.) The April 20, 2020 Answer and Counterclaim was not styled as an amended pleading (*see* Dkt. 4), and Uptime asserts that the Firm did not seek leave to amend in violation of Minnesota Rule of Civil Procedure 15.01 (Dkt. 55 ¶¶ 8, 10). Uptime does not dispute its failure to seek leave to amend. Further, the April 20, 2020 Answer and Counterclaim included a certificate of service stating it was "forwarded to" Uptime's counsel "via electronic mail, facsimile, and/or U.S. Mail on April 20, 2020." (Dkt. 4 at 6; Dkt. 55 ¶ 10.) However, Uptime states that the Firm did not serve either the October 31, 2019 or the April 20, 2020 Answer and Counterclaim on Uptime (Dkt. 55 ¶¶ 8-10), which the Firm also does not dispute.

On June 25, 2020, the Minnesota state court granted Uptime's motion for summary judgment on its breach of contract claim with respect to damages up to January

31, 2019, which were $17,400. (Dkt. 1-3, Ex. 4 at 15; *see also id.* at 6; Dkt. 60 at 2; Dkt. 65 at 4.) The court otherwise denied the summary judgment motion and motion for default judgment; *sua sponte* dismissed the Firm's breach of contract counterclaim; and deferred the motion for sanctions. (Dkt. 1-3, Ex. 4 at 15; *see also id.* at 6; Dkt. 60 at 2; Dkt. 65 at 4.) As to the Firm's counterclaim, the court stated, "Because Defendant's counterclaim for breach of contract is not viable in light of this ruling [granting Uptime's motion for summary judgment], the Court dismisses that counterclaim." (Dkt. 1-3, Ex. 4 at 15; *see also id.* at 6 ("Defendant's counterclaim for breach of contract is dismissed.").) The court's order also required the Firm to retain Minnesota counsel to make certain filings by July 15, 2020 because Mr. Kennard, an attorney who had purported to represent the Firm in the Minnesota state court action, was not licensed to practice in Minnesota. (*Id.* at 7 n.1, 14 n.4, 9 & n.9.) The Court stated that if the Firm did not retain Minnesota counsel, it would issue a default judgment on Uptime's remaining unjust enrichment claim. (*Id.* at 6, 14.) The state court also issued a second order on June 25, 2020 setting pre-trial deadlines and a trial date of August 10, 2020. (*Id.* at 3-5.)

**B. Federal Court Proceedings**

**1. Removal and the Remand Motion**

Instead of proceeding to trial, on July 15, 2020, the Firm filed a notice of removal in state court, which was signed by Mr. Kennard (Dkt. 1-4), and filed a notice of removal in this Court on July 17, 2020 through local counsel Michael J. Minenko (Dkt. 1). (*See* Dkt. 65 at 4; Dkt. 60 at 3.) The Firm based the removal on diversity jurisdiction, stating that its "counterclaim damages combined with Plaintiff's alleged damages satisfied the

'amount in controversy' and diversity of citizenship, to allow this filing to be timely filed." (Dkt. 1 ¶ 4.) The Firm recounted some of the procedural history of the case, including that Uptime filed its Complaint on or about February 6, 2019; Uptime's pleaded damages were $46,000; and the Firm filed an Answer and Counterclaim pleading damages of $1.5 million on April 20, 2020. (*Id.* ¶¶ 1-4.) The Firm attached the June 25, 2020 state court order and memorandum as Exhibit 4 to the Notice of Removal. (*See* Dkt. 1-3, Ex. 4.) However, the Firm's Notice of Removal did not clarify that $17,400 of Uptime's damages had already been awarded; that the April 20, 2020 Answer and Counterclaim had not been served and was its second such pleading, with no motion to amend having been filed; or that the Firm's breach of contract counterclaim had been dismissed. (*See generally id.*) In its Notice of Removal, the Firm stated that it filed pleadings with a Texas state court in September of 2019 "that were ultimately dismissed" and additionally stated, "Removal of this action is timely under 28 U.S.C. Section 1446(c) because, despite being filed more than one-year after the original filing, Defendant in good faith sought to protect his interests in Texas state court which delayed this removal action." (Dkt. 1 ¶¶ 2, 4.) The Firm also stated, "Following the resolution of the Texas proceedings, on February 28, 2019, Defendant filed a Motion to Dismiss."[5] (*Id.* ¶ 2.)

[5] This statement is incorrect. The Firm's motion to dismiss the Minnesota state court case was filed on February 28, 2019, but that was months **before** the Texas state court case was dismissed on September 18, 2019. (Dkt. 55-1, Ex. 1 at 2 (Texas case dismissal); Dkt. 55-3, Ex. 3 at 2 (motion to dismiss in Minnesota state court); *see also* Dkt. 1 ¶ 4 (instead stating that "[a]fter resolving the Texas proceedings, Defendant filed an Answer/Counterclaim in Minnesota state court on April 20, 2020").) The Firm's motion to dismiss the Minnesota state court case was denied on October 18, 2019, a

Uptime filed a Motion to Remand and Motion for Attorney's Fees and Costs ("Remand Motion") on August 14, 2020, contending that the removal was untimely under 28 U.S.C. § 1446(b) and federal court diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) was lacking. (Dkt. 10; Dkt. 12 at 1, 14-19.) The Firm's Response to the Remand Motion repeated the assertions and most of the omissions in the Notice of Removal identified above.[6] The Firm stated that Uptime filed its Complaint on or about February 6, 2019; Uptime's pleaded damages were $46,000; the Firm filed pleadings in Texas state court in September 2019 "that were ultimately dismissed"; the Firm "in good faith sought to protect his interests in Texas state court which delayed this removal action"; the Firm filed a motion to dismiss "[f]ollowing the resolution of the Texas proceedings"; and the Firm filed an Answer and Counterclaim pleading damages of $1.5 million on April 20, 2020. (Dkt. 30 ¶¶ 1-3, 5, 16.) The Firm acknowledged that the

---

month after the Texas state court case was dismissed. (Dkt. 13-4, Ex. 4 at 6; *see also* Dkt. 55-6, Ex. 6 at 2, 3 (Minnesota state court case index showing the Firm's motion to dismiss, order denying motion to dismiss, and filing of an Answer and Counterclaim on October 31, 2019 and a second on April 20, 2020).)

[6] The Firm's Response to the Remand Motion included an exhibit with the Minnesota state court case caption and entitled "Defendant's Notice of Removal." (Dkt. 30-1, Ex. 1.) However, this document matches neither the Notice of Removal filed in this Court (*see* Dkt. 1) nor the other document captioned "Defendant's Notice of Removal," but with the state court case caption, filed in this Court and described as a "Notice of Filing of Notice of Removal" (*see* Dkt. 1-4 (text entry and filed document)). Moreover, the certificate of service on this purported Notice of Removal exhibit is dated July 16, 2020 (Dkt. 30-1, Ex. 1 at 6), which does not correspond to the certificate of service for the Notice of Removal that initiated this proceeding in federal court (*see* Dkt. 1 at 5 (certificate of service dated July 17, 2020)) or the previously filed state court Notice of Removal (*see* Dkt. 1-4 at 2 (certificate of service dated July 15, 2020)). The Firm never explained this discrepancy, and this second "Notice of Removal" was only briefly cited in connection with the Remand Motion. (*See* Dkt. 30 ¶¶ 7, 13.)

Minnesota state court had partially granted Uptime's summary judgment motion but otherwise only stated that the court "denied the remaining claims" and made no mention of the $17,400 award of damages to Uptime. (*Id.* ¶ 6; *see also id.* ¶ 13 (referring to Uptime's damages as "about $50,000").) The Firm again did not clarify that the April 20, 2020 Answer and Counterclaim had not been served and was its second such pleading, with no motion to amend having been filed, or that the Firm's breach of contract counterclaim had been dismissed. (*See generally id.*)

Further, the Firm contended that it had objected to the jurisdiction of the Minnesota state court and claimed that the Minnesota state court had no jurisdiction over this matter. (*Id.* ¶ 10 (" . . . the state court proceedings – a jurisdiction that Defendant has adamantly objected to since the filing of this matter"), ¶ 18 (referring to Minnesota state court as "the court of no jurisdiction" and this Court as "this court of proper subject matter jurisdiction (non-waivable) pursuant to diversity jurisdiction"); *see also id.* ¶¶ 8-9, 11-12.) The Firm contended that this Court had diversity jurisdiction because "the amount in controversy exceeds [sic] 75,000, as [the Firm] has claimed damages near $500,000 combined with [Uptime's] claimed damages of about $50,000."[7] (*Id.* ¶ 13.) In other words, the Firm's basis for diversity jurisdiction relied on the Firm's alleged damages for the breach of contract counterclaim already dismissed by the Minnesota state court and on Uptime's claimed damages, $17,400 of which had already been awarded. The Firm also asserted that "[s]ubject matter jurisdiction **cannot be forfeited or**

---

[7] The Firm did not set forth any legal argument as to whether counterclaim damages could be included in the amount in controversy in its opposition to the Remand Motion. (*See* Dkt. 30; *infra* n.9.)

**waived**." (*Id.* ¶ 14 (emphasis original).) Further, the Firm stated, "While Defendant's Counsel sought to defend his Firm in the Minnesota State Court, Plaintiff continually engaged in efforts to prevent Counsel, Alfonso Kennard, Jr., from defending himself in this contested jurisdictional state court case." (*Id.* ¶ 10; *see also id.* ¶¶ 17-18 (referring to Mr. Kennard's representation of the Firm in Minnesota state court).)

Chief Judge Tunheim issued the Remand Order on February 8, 2021, granting Uptime's Remand Motion and finding "that, irrespective of the amount in controversy, removal was untimely and not subject to any exceptions." (Dkt. 65 at 1-2.) Addressing the Firm's argument "that removal is timely despite being outside the one-year window because Kennard Law sought to protect its interests in Texas state court first, delaying this removal action," Chief Judge Tunheim stated:

> Kennard Law offers no legal justification for this theory. Moreover, even if Kennard Law did identify some legal basis for the delay, the Texas case was dismissed on September 18, 2019, about ten months before Kennard Law filed its Notice of Removal, and Kennard Law is not pursuing an appeal or other relief from the Texas court. Thus, there is no plausible factual basis for Kennard Law's assertion that the Texas court proceedings caused the 17 month delay in removal of the Minnesota court proceedings to this Court.

(*Id.* at 7.) He further described the removal as "plainly untimely." (*Id.* at 8.)

Chief Judge Tunheim addressed the present Sanctions Motion, noting that "the Court retains jurisdiction over the pending sanctions motion" (*id.* (citations omitted)), and also denied as moot the Firm's then-pending motion to amend its pleading (*id.* at 9), described further *infra* Section I.B.3. Uptime had also requested its attorney's fees and costs pursuant to 28 U.S.C. § 1447(c) and argued that it was so entitled "because Kennard Law removed the case with the clear intent to cause delay and to avoid continued

proceedings in state court." (*Id.* at 8-9.) Chief Judge Tunheim "agree[d] that removal of this case lacks an objectively reasonable basis, as it was blatantly untimely with strong indications of being a dilatory tactic," and so awarded Uptime reasonable attorney's fees. (*Id.* at 9.) Uptime submitted an accounting, and the Firm submitted its objection through local counsel Mr. Minenko. (Dkts. 67, 67-1, 68.) On May 19, 2021, Chief Judge Tunheim awarded Uptime attorney's fees and costs in the amount of $16,327 to be paid by the Firm. (Dkt. 70 at 2-3.)

**2. The Motion for Pro Hac Vice Admission, Revocation Motion, and Revocation Order**

On the same day the Firm filed its Notice of Removal (Dkt. 1), local counsel Mr. Minenko also filed a motion for pro hac vice admission of Mr. Kennard as an attorney at the Firm ("Motion for Admission"). (Dkt. 5; *see also* Dkt. 44-2, Ex. 1 ¶ 15 (asserting that Mr. Kennard is the 100% owner of the Firm); Dkt. 60 at 3-4.) The Motion for Admission stated that Mr. Kennard is "an attorney admitted to practice and currently in good standing in the U.S. District Court for" the Southern District of Texas. (Dkt. 5 at 1 (Affidavit of Mr. Minenko); *id.* at 2 (Affidavit of Mr. Kennard) (same, along with claiming admission and good standing in U.S. District Court for the Western District of Texas).) The Court granted the Motion for Admission on July 28, 2020. (Dkt. 6.)

Uptime filed a Motion to Revoke Pro Hac Vice Status of Alfonso Kennard, Jr. ("Revocation Motion") on August 27, 2020. (Dkt. 19.) Uptime argued that Mr. Kennard's pro hac vice admission should be revoked for several reasons, including, as relevant to the Sanctions Motion, unauthorized practice of law in Minnesota state court,

false representations to this Court, and a false affidavit in support of the Motion for Admission. (Dkt. 60 (citing Dkts. 21, 42).)

The Firm's Response to the Revocation Motion,[8] which was signed and filed by Mr. Kennard, made several assertions of fact and law that were the same or very similar to assertions made in its previous filings, specifically as follows:

- The Firm stated that it filed pleadings in Texas state court in September 2019 "that were ultimately dismissed" and further stated that "[t]his on-going process in Texas was later ultimately resolved" by that state court determining that Minnesota was the proper venue. (Dkt. 34 ¶¶ 2-3.)

- The Firm referred to having filed an Answer and Counterclaim on April 20, 2020 pleading damages of $1.5 million but did not clarify that that pleading had not been served and was its second such pleading, with no motion to amend having been filed, or that the Firm's breach of contract counterclaim had been dismissed. (*Id.* ¶¶ 1, 7.)

- The Firm stated that Uptime's Complaint claimed $46,000 in damages and acknowledged that the Minnesota state court had partially granted Uptime's summary judgment motion but otherwise only stated that the court "denied the remaining claims" and made no mention of the $17,400 award of damages to Uptime. (*Id.* ¶¶ 1, 8; *see also id.* ¶ 16 (claiming damages "near $500,000" and referring to Uptime's damages as "about $50,000").)

- The Firm asserted that the Minnesota state court did not have jurisdiction and that this Court is the only court with jurisdiction over the claims in this case. (*Id.* ¶¶ 4, 6, 7, 10.)

In addition, the Firm again stated that the removal from state court was based on diversity jurisdiction and further that "Defendant's [sic] demonstrated that this matter

---

8 The Firm's Response to the Revocation Motion included an exhibit entitled "Defendant's First Verified Amended Answer and Counterclaims." (Dkt. 34-2, Ex. 1.) This document appears to be the same as the proposed amended pleading that the Firm had previously filed with its Motion to Amend, which the Court will detail in Section I.B.3. (*Compare id.*, *with* Dkt. 26-1, Ex. 1.) The Firm never explained why it attached this exhibit to its Response to the Revocation Motion. (*See generally* Dkt. 34.)

should proceed under Diversity Jurisdiction and allow the counterclaim(s) or compulsory claims to be included in the 'amount in controversy' requirement." (*Id.* ¶ 12.) The Firm contended, "[S]ome Courts have allowed the 'amount in controversy' requirement to be satisfied with the inclusion of any compulsory claims – not only Plaintiff's complaint," and, "Moreover, this inclusion of counter damages has been included in various other courts without any disturbance." (*Id.* ¶¶ 13-14 (citing one case from the Tenth Circuit and one from the Eastern District of Michigan)[9].) The Firm further contended, "[T]hus the amount in controversy naturally should allow the full value of the amount in dispute surrounding Plaintiff's claims and Defendant's counterclaims." (*Id.* ¶ 15.) The Firm did not cite any cases from the District of Minnesota or the Eighth Circuit on this point. (*See generally id.*) The Firm also referred to Mr. Kennard's representation of the Firm, stating, "Mr. Kennard, in good faith continually sought to represent his Firm *pro se* – given the economic climate" (*id.* ¶ 11), and, "Defendant's counsel (Mr. Kennard) has continually made good-faith efforts protect his firm pro se . . ." (*id.* ¶ 19). (*See also id.* ¶ 11 (alleging that Uptime's counsel "sought to interfere in Mr. Kennard's efforts to represent his Firm, and actively took steps to sabotage Mr. Kennard's pro se efforts"), ¶ 19 (alleging that "Plaintiff's counsel has strictly sought to disqualify Mr. Kennard" and referring to unauthorized practice of law as an "irrelevant issue[]").)

---

[9] The Firm did not cite these cases in its Response to the Remand Motion; in fact, the Firm did not address at all the question of whether a counterclaim is included in the "amount in controversy" for the purpose of diversity jurisdiction in that filing (*see* Dkt. 30), instead only asserting, "Notably, Defendant's counterclaim damages combined with Plaintiff's alleged damages satisfied the 'amount in controversy' and diversity of citizenship, to allow this filing to be timely filed," in the supporting declaration (Dkt. 30-1 ¶ 4).

After Uptime filed a reply brief and letter to the Court (*see* Dkt. 60 at 5 (citations omitted)), and on the evening before the hearing on the Revocation Motion, the Firm filed an Opposed Motion to File a Sur-Reply, attaching the proposed Sur-Reply and supporting materials (*see* Dkt. 60 at 6 (citing Dkt. 44 and attachments)). The Court granted the Motion to File a Sur-Reply. (Dkt. 45.) The Sur-Reply addressed Mr. Kennard's representation of the Firm, stating that Mr. Kennard had previously stated that he "is the 100 percent owner of Kennard Law, P.C." and "is representing his law firm as *pro se*," as "[t]he law firm did not have the monetary resources during that time to hire additional counsel." (Dkt. 44-2, Ex. 1 at ¶ 2; *see also id.* ¶ 4 (referring to Mr. Kennard "representing himself in a Minnesota State Court"), ¶ 5 ("Mr. Kennard's efforts as a *Pro Se*"), ¶ 8 (similar), ¶ 12 ("Mr. Kennard from representing his own firm Pro Se – through the state court proceedings and now federal proceedings"); ¶ 15 ("Mr. Kennard . . . is the *Pro Se* representative of the Firm").)

Moreover, the Sur-Reply repeated the Firm's assertions that the Minnesota state court did not have jurisdiction and that this Court is the only court with jurisdiction over the claims in this case. (*Id.* ¶ 4 ("Minnesota State Court – an improper forum"), ¶ 13 ("removed this matter to a court of proper jurisdiction – Federal Court").) The Firm again asserted in its Sur-Reply that "Subject Matter Jurisdiction is proper in this Federal forum under diversity jurisdiction," though the Firm now "**urge[d]** this Court follow the Courts, like the one below that allowed the 'amount in controversy' requirement to be satisfied with the inclusion of any compulsory claims – not only Plaintiff's complaint." (*Id.* ¶ ¶ 18-19 (emphasis added) (citing case from Eastern District of Michigan).) The

Firm asserted that "damages combined equal over at least $500,000" but this argument relied on an "Amended Answer" filed on August 31, 2020 in connection with the Firm's then-pending motion to amend its pleading (described further *infra* Section I.B.3), not the state court April 20, 2020 Answer and Counterclaim its previous filings had relied on. (Dkt. 44-2, Ex. 1 ¶ 17 (citing Dkt. 26-1).)

The Sur-Reply to the Revocation Motion was accompanied by a Declaration of Mr. Kennard containing some of the same assertions in the Sur-Reply and/or other filings described above: that Mr. Kennard "continue[d] to" represent the Firm *pro se* (Dkt. 44-3, Ex. 2 ¶ 2; *see also id.* ¶ 4), and that the Firm filed pleadings in Texas state court in September 2019 "that were ultimately dismissed" and "[t]his on-going process in Texas was later ultimately resolved" by that state court determining that Minnesota was the proper venue (*id.* ¶¶ 7-8).

The Court held a hearing on the Revocation Motion on October 7, 2020. (Dkt. 45.) Mr. Minenko appeared for the Firm, but Mr. Kennard failed to appear. (Dkts. 45, 46; *see also* Dkt. 60 at 6.) That same day, the Court ordered that "if [Mr. Kennard] wants to make an oral argument on the Motion to Revoke, Mr. Kennard is ordered to file a letter showing good cause why he should be permitted to do so, in view of his failure to appear." (Dkt. 46 at 1.) In response, Mr. Kennard filed a letter on October 8, 2020 that was primarily directed at the merits of the underlying case, the damages the Firm suffered as a result of Uptime's actions (the dismissal of the Firm's breach of contract claim was not mentioned), and the conduct of Uptime's counsel. (*See* Dkt. 47.) Mr. Kennard did not ask to make oral argument on the Motion to Revoke, instead stating "I stand on what

has been filed." (*See id.*) The letter also generally repeated the Firm's arguments regarding jurisdiction, including "No other court has jurisdiction"; "The Texas court decided that the forum clause in Minnesota applied—thus the delay"; and "This is the only court where all claims can be lawfully heard." (*Id.*) Mr. Kennard also referred to "representing myself," "defend[ing] myself," and "pro se" representation. (*Id.*)

The Court granted Uptime's Revocation Motion on November 25, 2020, concluding that violations of several Local Rules and the Minnesota Rules of Professional Conduct, as well as Mr. Kennard's conduct in light of those violations, provided sufficient basis to revoke Mr. Kennard's pro hac vice admission. (Dkt. 60 at 31.) As relevant to the Sanctions Motion, the Court concluded that Mr. Kennard violated Minnesota Rule of Professional Conduct 5.5(a) by representing the Firm in Minnesota state court. (*Id.* at 20.) In its discussion of this violation, the Court noted that the Firm "continues to assert that [Mr. Kennard] 'continue[s] to represent the Firm itself *pro se*.'" (*Id.* at 18-19 (citations omitted).) The Court further explained:

> This "pro se" argument is inconsistent with the law. First, Minnesota law does not permit **anyone** to represent the Firm "pro se" in Minnesota state court. Rather, "a corporation must be represented by a licensed attorney when appearing in district court." Second, the definition of "pro se" is "[f]or oneself; on one's own behalf; without a lawyer." Mr. Kennard was not a party to the state court action and was not acting for himself or on his own behalf; he was acting for and on behalf of the Firm. Mr. Kennard cannot erase the fact that he is a lawyer (albeit a lawyer not licensed in Minnesota) or the reality of the corporate form simply by stating that he was representing the Firm "pro se."

(*Id.* at 19 (citations and footnote omitted).) The Court additionally "note[d] that, as under Minnesota law, a corporation must be represented by counsel in federal courts and cannot proceed pro se." (*Id.* n.5 (citations omitted).)

Also relevant to the Sanctions Motion, the Court addressed the Firm's representations to the Court regarding the Texas state court action, stating that "the Court does have serious concerns about" the representations and citing the various papers that contained them. (*Id.* at 27 (citations omitted).) The Court concluded:

> But there were no "pleadings"—or, as far as the record evidence here shows, any documents—filed by the Firm in Texas state court in September 2019, and the Texas action was not resolved "later": the Texas court issued an Amended Order Granting Defendant's Motion to Enforce Forum Selection Agreement and to Dismiss on September 18, 2019. According to Uptime, the Firm did not appeal, request reconsideration of, or seek other relief related to that dismissal, and the Firm has not asserted otherwise and has not filed copies of the referenced pleadings for the Court's review. The Court considers the Firm's statements—made more than once—to be false statements of fact to this Court and therefore to violate—more than once—Minnesota Rule of Professional Conduct 3.3(a) . . . .

(*Id.* (citations omitted).)

The Court addressed several other violations of Local Rules, the Minnesota Rules of Professional Conduct, and court orders, as well as other conduct by Mr. Kennard. (*See generally* Dkt. 60.) However, the Court did reject Uptime's argument that the Motion for Admission and accompanying affidavit falsely asserted that Mr. Kennard was a member in good standing of the United States District Courts for the Southern District of Texas and for the Western District of Texas. (*Id.* at 10-11.) Uptime argued this assertion was both a false statement to the Court and a violation of the Local Rule governing eligibility for pro hac vice admission. (*Id.*) The Court "carefully considered this issue and, although it is a close call, conclude[d] that there is not a clear violation of Local Rule 83.5(d)(1) or Rule 3.3(a)(1) with respect to Mr. Kennard's Motion for Admission and Affidavit." (*Id.* at 11.) The Court examined the local rules of the district courts at issue

and concluded that it did not appear that Mr. Kennard made false statements regarding his status in those courts in his affidavit. (*Id.* at 11-14.)

**3. The Answer and Counterclaim and Motion to Amend**

Separately from the removal papers, on July 17, 2020, the Firm filed an Answer. (Dkt. 4.) The pleading appears to be the Answer and Counterclaim filed in Minnesota state court on April 20, 2020, as the caption is for that case and it includes a Certificate of Service dated April 20, 2020. (*See id.* at 1, 6; Dkt. 54 at 6 (Uptime brief referring to April 20, 2020 Answer and Counterclaim and citing Dkt. 4).) As described in Section I.A, that Answer and Counterclaim was the second the Firm filed in Minnesota state court; was not styled as an amended pleading or filed with a motion to amend; was not served on Uptime, despite the certificate of service stating that it was forwarded to Uptime's counsel on April 20, 2020; and asserted a single counterclaim for breach of contract with damages of $1.5 million. The Answer and Counterclaim filed in this Court did not—nor did any other paper filed—contain any indication that it was not the first or operative Answer and Counterclaim or that the Minnesota state court had dismissed the Firm's breach of contract counterclaim on June 25, 2020 as "not viable." (*See* Dkt. 4.)

On August 31, 2020, while the Remand Motion and Revocation Motion were pending and not yet fully briefed, the Firm filed an Opposed Motion to Amend Defendant's Answer / Counterclaims ("Motion to Amend"). (Dkt. 26.) In the Motion to Amend, the Firm requested "leave to file Defendant's First Verified Amended Answer and Counterclaims," specifically "in order to provide clarity." (*Id.* ¶¶ 1, 4-5; *see also id.* ¶ 2.) The proposed pleading asserted counterclaims for breach of contract, fraud, and

fraud in the inducement and pleaded damages of $500,000. (Dkt. 26-1, Ex. 1 ¶¶ 55-67.) The claim for fraud included allegations related to a contract for "billboard services and/or marketing services" and "maintaining the billboard in good condition." (*Id.* ¶¶ 61-62.) Although the Motion to Amend referred to "the prior Answer" and existing "counterclaims" (*id.* ¶¶ 1-2), neither the Motion to Amend nor the proposed pleading indicated that the already-filed Answer and Counterclaim at Docket No. 4 was not the first or operative pleading, that the Firm never served that already-filed Answer and Counterclaim, or that the state court had dismissed the Firm's breach of contract counterclaim—much less set forth any basis from which a court could conclude that the proposed breach of contract counterclaim was somehow different from the dismissed counterclaim or otherwise viable in view of the state court's decision.

On October 12, 2020—over a month after the Motion to Amend was filed—the Firm filed its supporting memorandum. (Dkt. 48.) This brief made several assertions of fact and law that were the same or very similar to assertions made in its previous filings, specifically as follows:

- The Firm stated that Uptime's Complaint claimed $46,000 in damages but made no mention of the partial grant of summary judgment or $17,400 award of damages to Uptime. (*See id.* ¶ 2.)

- The Firm referred to having "now raised claims . . . for its own damages" (*id.* ¶ 2) and asserted that "there is clearly, a plausible legal claim (breach of contract, fraud, fraud in the inducement)" (*id.* ¶ 13; *see also id.* ¶ 15 (similar)). The Firm did not refer to the dismissal of its breach of contract counterclaim or to any other circumstances regarding its previously-filed Answer and Counterclaim, i.e., that that pleading had not been served and was its second such pleading, with no motion to amend having been filed. (*See generally id.*)

- The Firm stated that it filed pleadings in Texas state court in September 2019 "that were ultimately dismissed" and further stated that "[t]his on-going

process in Texas was later ultimately resolved" by that state court determining that Minnesota was the proper venue. (*Id.* ¶¶ 3-4; *see also id.* ¶ 11 ("no evidence of undue delay as Defendant's [sic] simply sought good-faith measures to protect its interest in a Texas state forum").)

- The Firm referred to Mr. Kennard representing the Firm "pro se." (*Id.* ¶¶ 5, 9, 17.)

- The Firm asserted that Minnesota state court was an "improper state forum" and this Court is "the appropriate forum." (*Id.* ¶¶ 8, 13; *see also id.* ¶¶ 10, 13, 17 (referring to the Firm having disputed Minnesota state court as a forum).)

The Firm argued that the Motion to Amend was timely, even though "more than one year elapsed from the initial state filing," because "Defendant established his good faith efforts to secure the rights of the Firm by seeking to invoke the jurisdiction of Texas," and so "given the good faith efforts by Defendant, the one-year statute of limitation on removal should be equitably tolled." (*Id.* ¶ 9 (citations omitted).) The Firm further argued:

> Defendant met the requirements to equitably toll the one-year limitation on removal of cases. Specifically, Defendant provided timely notice of the state jurisdictional dispute (i.e. challenging Minnesota and asserting Texas jurisdiction) . . . . Secondly, Defendant demonstrated the early stage of the federal proceedings and the lack of prejudice towards Plaintiff – given the justifiable good-faith concerns regarding the proper state jurisdiction dispute (Texas vs Minnesota). Lastly, Defendant demonstrated its good-faith conduct by seeking to bring the matter before a Texas court (Defendant's principal place of business), opposing Plaintiff's filing in a Minnesota state court.

(*Id.* ¶ 10 (citations omitted); *see also id.* ¶ 17 (requesting leave to amend be granted because "Defendant timely disputed MN state jurisdiction and timely filed the Notice of Removal and the Motion to Amend") (citations omitted).)

Soon after the Firm filed its brief in support of the Motion to Amend, the undersigned stayed the Motion to Amend until after Chief Judge Tunheim had issued a

decision on the Remand Motion. (Dkt. 50 at 2; *see also* Dkt. 65 at 5.) Subsequently, in the Remand Order, Chief Judge Tunheim denied the Motion to Amend motion as moot, "since no amendment can overcome the deficiency." (Dkt. 65 at 9 (citation omitted).)

**4. The Sanctions Motion**

Uptime filed the current Sanctions Motion on November 20, 2020. (Dkt. 52.) At that time, the Remand Motion, Revocation Motion, and Motion to Amend were pending, with the Remand Motion fully briefed and set for argument (*see* Dkt. 62), the Revocation Motion argued and taken under advisement (Dkt. 45), and the Motion to Amend stayed (Dkt. 50). The parties' arguments will be described fully in the Court's analysis, *infra* Section III, so for purposes of background, it suffices to say that the Sanctions Motion seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority, against Mr. Kennard and Mr. Minenko; and identifies as sanctionable conduct the Notice of Removal, the affidavit for the Motion for Admission, the state court April 20, 2020 Answer and Counterclaim filed in this Court on July 17, 2020 (Dkt. 4), the Motion to Amend, and other papers Uptime contends contain false statements of fact or misstatements of law (including the Firm's Responses to the Remand Motion and the Revocation Motion and papers supporting the Motion to Amend). (Dkt. 52 at 1, 4-5; *see also* Dkt. 54 at 2-3.) Uptime requested the following relief: revocation of Mr. Kennard's pro hac vice admission, striking of several of the Firm's papers; an award of Uptime's "reasonable costs and attorneys' fees in addressing these federal proceedings"; holding Mr. Kennard and the Firm "jointly and severally liable for Uptime's reasonable costs and attorneys' fees in addressing these federal

proceedings"; and imposition of "additional sanctions on Michael J. Minenko proportionate to his level of involvement in this matter." (Dkt. 54 at 28.)

Uptime asserts that it has complied with the procedural requirements of Rule 11(c)(2) by serving Mr. Kennard and Mr. Minenko with the Sanctions Motion on October 28, 2020 and that "counsel for Kennard Law have failed to take any corrective action with respect to the conduct outlined in Uptime's Motion." (Dkt. 54 at 15 (citing Dkts. 52, 52-1).) Neither Mr. Kennard nor Mr. Minenko dispute that the requirements of Rule 11(c)(2) have been fulfilled.

Mr. Minenko filed a response to the Sanctions Motion and supporting Declaration on November 23, 2020, which detailed his involvement in this case.[10] (Dkts. 58, 59.) Mr. Minenko "requests the Court to consider the mitigating factors described [in his response] in deciding whether to impose sanctions against Minenko, and if imposed, what sanctions are appropriate under the circumstances." (Dkt. 58 at 1.) Mr. Minenko was contacted by Daniel Salas, an attorney with the Firm, about serving as local counsel for a matter in this District on the evening of July 15, 2020. (Dkt. 59 ¶ 2.) The next afternoon, Mr. Minenko and Mr. Salas spoke on the phone, and Mr. Salas told Mr. Minenko that the Firm was a defendant in a lawsuit in Minnesota state court and wanted to remove the suit to this District on the basis of diversity. (*Id.* ¶ 3.) "Mr. Salas assured [Mr. Minenko] that such removal would be timely and warranted under the facts and applicable law, but it needed to be done by Friday, July 17, 2020." (*Id.*) Mr. Minenko agreed to serve as local

[10] Mr. Kennard has not disputed any aspect of Mr. Minenko's Declaration and indicated at the hearing that Mr. Minenko's recitation of the facts was accurate.

counsel and received notice of removal documents drafted by the Firm at 3:40 p.m. on July 16. (*Id.*) "At the time [Mr. Minenko] reviewed these documents, [he] believed that a compulsory counterclaim could be considered for jurisdictional amount purposes in diversity cases." (*Id.*) According to Mr. Minenko,

> Because I had only 24 hours to assemble, review, and file all the required removal and new case documents, while during the same time attend to other work-related responsibilities as a sole practitioner, and because I relied on information supplied to me by attorney Daniel Salas and Kennard Law, my prefiling inquiry into the facts and law relevant to the issue of removal was very limited.

(*Id.*) Mr. Minenko filed the Notice of Removal and related documents on July 17, 2020, as well as the Motion for Admission, "based entirely on information provided to me by Mr. Kennard," and "did not independently seek to confirm the status of Mr. Kennard's standing with the bar of any court." (*Id.* ¶ 4.)

On August 13, 2020, Mr. Minenko spoke with Uptime's counsel, who "communicated Uptime's view of the case . . . , including its procedural background and history in the Minnesota and Texas state courts," which "was the first notice [Mr. Minenko] had from anyone or from any source regarding this procedural background and history." (*Id.* ¶ 5.) Mr. Minenko then read the description of the procedural background and history in Uptime's memorandum supporting the Remand Motion, which was filed on August 14, 2020. (*Id.*) Mr. Minenko then spoke to Mr. Kennard on August 31, 2020, after Mr. Minenko emailed Mr. Kennard that day; this conversation lasted about five minutes and "was the one and only time Mr. Kennard and [Mr. Minenko] verbally communicated with one another." (*Id.* ¶ 6.) As of February 23, 2021, Mr. Minenko had received no compensation for this involvement in this case. (*Id.* ¶ 8 (Nov. 23, 2020

CASE 0:20-cv-01515-PJS-ECW   Doc. 77   Filed 03/15/21   Page 23 of 79

Decl.); Dkt. 68 ¶ 7 (Feb. 23, 2021 Decl. Obj. to Amount Att'y's Fees); *see also* Dec. 4, 2020 Decl. (Mr. Kennard stating same).)

With respect to documents filed in this case, Mr. Minenko states that "[o]ther than the Motion for Admission Pro Hac Vice, [he] was not involved in preparing any of the documents Kennard Law has filed in this case," although he filed documents on behalf of the Firm on July 17, 2020. (*Id.* ¶ 7; *see also* Dkts. 5, 58 (docket text entries showing no documents filed by Mr. Minenko between July 17 and the opposition to the Sanctions Motion on November 23, 2020).) Notably, two documents filed by Mr. Kennard on behalf of the Firm on August 31, 2020 bear Mr. Minenko's electronic signature. (*See* Dkt. 26 at 2; Dkt. 26-1, Ex. 1 at 10.) However, Mr. Minenko states, "At no time after July 28, 2020, when Mr. Kennard became an attorney of record for Kennard Law, has my name appeared on any pleading, written motion, or other paper filed with the Court, **with my prior knowledge or consent**." (Dkt. 59 ¶ 7 (emphasis added).) Mr. Minenko "appeared as local counsel for Kennard Law at the" hearing on the Revocation Motion and "made no statements on behalf of Kennard Law other than to state that [he] had nothing to add to what Mr. Kennard already submitted to the Court in writing." (*Id.*)

The evening of Friday, December 4, 2020, the undersigned's chambers received an email from an employee at the Firm, attaching documents that the employee intended to file and stating that the Court's CM/ECF system was down and the documents would be filed once the system allowed. On December 8, the documents had not been filed and the undersigned's chambers sent the Firm employee an email stating that the Firm needed to file the documents on CM/ECF and including the District's CM/ECF help desk phone

number. Counsel for Uptime was copied on the Firm's email with the documents and the undersigned's chambers' reply email. The documents were never filed, and at the hearing Mr. Kennard stated that the Firm was unable to file them because his pro hac vice admission had been revoked. (*See* Dkt. 60 (Nov. 25, 2020 Revocation Order).) In the interest of deciding the Sanctions Motion on a complete record, the Court has considered the emailed documents, consisting of Defendant's Memorandum in Response to Plaintiff's Motion for Sanctions ("Def.'s Mem. Sanctions" (*see supra* n.3)) and a Declaration of Alfonso Kennard, Jr. dated December 4, 2020 ("Dec. 4, 2020 Decl." (*see supra* n.2)), and orders the Clerk of Court to file them on the docket in this case (*see infra* Section V).

The emailed Memorandum was styled as being on behalf of the Firm. (Def.'s Mem. Sanctions at 1 (titled "Defendant's Memorandum and beginning "COMES NOW, Defendant . . . , and filed this Defendant's Memorandum"), 10 ("Defendant respectfully request [sic]").) It contained a Certificate of Service that it was served on counsel via the Court's CM/ECF system on December 4, 2020, although, as noted above, it was never filed and therefore could not have been served by CM/ECF. (*Id.* at 11.) The Memorandum makes several assertions of fact and law that are the same or very similar to assertions made in the Firm's previous filings, specifically as follows:

- The Firm stated that it filed pleadings in Texas state court in September 2019 "that were ultimately dismissed." (*Id.* ¶ 2.)

- The Firm stated that Uptime's Complaint claimed $46,000 in damages (*id.* ¶ 1) and acknowledged that the Minnesota state court had partially granted Uptime's summary judgment motion but otherwise only stated that the court "denied the remaining claims" (*id.* ¶ 8) and made no mention of the $17,400 award of damages to Uptime.

- The Firm referred to having "now raised claims . . . for its own damages" (*id.* ¶ 1) and filed an Answer and Counterclaim on April 20, 2020 pleading damages of $1.5 million (*id.* ¶ 7) but did not clarify that that pleading had not been served and was its second such pleading, with no motion to amend having been filed, or that the Firm's breach of contract counterclaim had been dismissed.

- The Firm asserted that the Minnesota state court did not have jurisdiction and that this Court is the only court with jurisdiction over the claims in this case. (*Id.* ¶¶ 3, 5, 7, 10.)

- The Firm referred to Mr. Kennard representing the Firm "pro se." (*Id.* ¶¶ 6, 11, 19, 24, 25, 27, 30, 32, 33, 35.) Moreover, Mr. Kennard's signature block on the document said "*Pro Se* Representation." (*Id.* at 11.)

The Firm expanded on some the topics listed above. First, it addressed Mr. Kennard's "pro se" representation, citing the COVID-19 pandemic and the Firm's financial situation as the reason for such representation[11]:

- " . . . Defendant from representing Pro se, despite the health pandemic drastically reducing the law firm's financial stability – like most businesses." (*Id.* ¶ 6.)

- "Mr. Kennard, in good faith continually sought to represent his Firm *pro se* – given the economic climate." (*Id.* ¶ 11.)

- " . . . Defendant's financial situation that otherwise has prohibited him from retaining other outside counsel." (*Id.* ¶ 18.)

- "In reality, given the health pandemic and its direct impact on the financial struggle of the Firm, it is under these circumstances that Defendant in good faith sought to maintain it [sic] very existence while also representing *Pro se*." (*Id.* ¶ 19.)

---

[11] The Firm had previously referred briefly to the "economic climate" in connection with the "pro se" representation (*see* Dkt. 34 ¶ 11; Dkt. 48 ¶ 5) as well as the pandemic (Dkt. 44-2, Ex. 1 ¶ 15; Dkt. 44-3, Ex. 2 ¶ 2), but this Memorandum addressed the topic more extensively (*see generally* Def.'s Mem. Sanctions).

- " . . . a post-covid-19 world that severely impacted the financial viability of most business, including this firm; the Defendant had to make a choice of a) either paying staff (payroll) and related Firm bills and representing *Pro se* (given he practices law in other federal courts often); or b) not paying payroll nor Firm bills and hire local counsel, and risk the firm's very existence – in a time where the pandemic is causing droves of company closures." (*Id.* ¶ 24.)

- " . . . coupled with the harsh economic realities of covid-19 . . . inability to hire counsel and guarantee firm closure, Mr. Kennard (with no intent to deceive and in good faith) sought to adjudicate the claims *Pro se* given the pandemic financial effects – as opposed to not adjudicate and risk closing the Firm." (*Id.* ¶ 25.)

- " . . . with the looming pandemic and the Defendant's very existence at stake, taking into account Defendant's admission to other federal courts across the county, Defendant sought to adjudicate the claims while maintaining payroll and Defendant's continued existence, as opposed to using the Defendant's limited funds (only exacerbated by the health pandemic financial impact) and certainly close down." (*Id.* ¶ 26.)

- " . . . given the lack of financial resources felt from the health pandemic . . . " (*Id.* ¶ 27.)

- " . . . aforementioned unique circumstances, Defendant's [sic] assert that they have reasonable grounds (i.e. unprecedented on-going covid-19 pandemic, admission in other federal courts, and Defendant's very existence at stake) . . . " (*Id.* ¶ 28.)

- " . . . given the unprecedented circumstances (unprecedented on-going covid-19 pandemic, admission in other federal courts, and Defendant's very existence at stake) . . . as *Pro se*, as there are no finances available to hire local counsel without risking closure." (*Id.* ¶ 30.)

- "The Defendant's lack of finances is further demonstrated by local counsel, as he stated Defendant has not yet paid him for the local counsel services. Thus, Plaintiff's representation that Defendant is not experiencing severe financial distress is misplaced amid the raging health pandemic that continues on." (*Id.* ¶ 31 (citation omitted).)

- "Notably, this *Pro se* representation is entirely brought on by the dire financial effects brought upon by the unprecedented health pandemic." (*Id.* ¶ 33.)

Second, the Firm, for the first time, addressed whether the Firm's statements about filing pleadings in Texas state court in September 2019 were false. After repeating the same statements previously made (*id.* ¶ 2), the Firm stated:

> [Uptime] alleges that after consulting his local counsel in Texas that because all deadlines passed, this is evidence of a false statement. In reality, given the health pandemic and its direct impact on the financial struggle of the Firm, it is under these circumstances that Defendant in good faith sought to maintain it [sic] very existence while also representing *Pro se*. Thus, when viewed objectively, under the unique circumstances present, it cannot be said that Defendant was false in his statement because any alleged "delays" to remove this matter was a direct result of Plaintiff's insistence that Mr. Kennard could not defend himself and his firm.

(*Id.* ¶ 19.)

The Firm also referred to the sanctions motion Uptime had filed in Minnesota state court, at one point acknowledging that it had been deferred (*id.* ¶ 8) but at other points suggesting that the motion had been denied or dismissed (*see id.* ¶ 12 ("the second motion for sanctions (first in Minnesota state court that was ultimately dismissed) against Defendant"), ¶ 26 ("While in the Minnesota State court, as mentioned, Plaintiff's [sic] filed a motion for sanctions that ultimately was not granted.") (citation omitted)).

In the Declaration accompanying the Memorandum, Mr. Kennard made statements similar to those in the Memorandum. He stated that he "serve[s] as counsel for the Firm." (Dec. 4, 2020 Decl. ¶ 1.) He repeated the previous statements about the Firm having filed pleadings in Texas state court in September 2019 "that were ultimately dismissed." (*Id.* ¶ 8.) He cited the pandemic and the Firm's financial situation as the reason he represented the Firm: "And, given the pandemic, Kennard Law is not and has not been in a financial position to retain counsel in Minnesota." (*Id.* ¶ 3.) He suggested

that Uptime's motion for sanctions in Minnesota state court was dismissed or denied, referring to "sanctions (that was ultimately denied) at the state court level" (*id.* ¶ 3) and stating, "Notably, the Minnesota state court did not sanction Kennard for representing itself in the state forum" (*id.* ¶ 5). He also stated, "[A] federal court can ascertain my qualification to represent his own corporate structure, especially where I agree to waive any shield to personal liability." (*Id.* ¶ 4; *see also* Def.'s Mem. Sanctions ¶ 35 ("Defendant requests that Plaintiff's Motion for Sanctions be denied . . . , and to allow Defendant's *Pro se* representation to continue, especially since Mr. Kennard was [sic] waived his shield to personal liability.").)

The Court held a hearing on the Sanctions Motion on December 14, 2020, at which Mr. Kennard was permitted to argue "because Plaintiff seeks sanctions against Mr. Kennard personally." (Dkt. 64.) Mr. Minenko presented oral argument. (*Id.*) Where relevant, the Court will note points made at the hearing in its discussion in Section III.

At the time of the hearing, the Revocation Order had issued (*see* Dkt. 60) and the Remand Motion had been argued and taken under advisement (*see* Dkt. 63). As described in Section I.B.1, the Remand Order has since issued (*see* Dkt. 65), and Chief Judge Tunheim has further awarded Uptime attorney's fees and costs, pursuant to 28 U.S.C. § 1447(c), in the amount of $16,327, to be paid by the Firm (Dkt. 70 at 2-3). The Sanctions Motion is therefore the only remaining issue in this case in this Court.

## II. LEGAL STANDARD

"Rule 11's main purpose is to deter baseless filings[, and] Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined

Case 1:23-cv-00646-RP-JRD-ECM Doc. 1 Filed 02/15/24 Page 29 of 71

that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017). Rule 11(b) of the Federal Rules of Civil Procedures provides that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b). When reviewing a motion for sanctions pursuant to Rule 11, the Court determines "whether a reasonable and competent attorney would believe in the merit of an argument," *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) (cleaned up), and "whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court," *Adams*, 863 F.3d at 1076 (8th Cir. 2017). "Arguments for the extension, modification, or reversal of existing law do not violate Rule 11 if they are not frivolous under an objective standard." *Charland v. Little Six, Inc.*, 112 F. Supp. 2d 858, 861 (D. Minn. 2000) (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment), *aff'd sub nom. Charland v. Little Six*, 13 F. App'x 451 (8th Cir. 2001). "If, after notice and a reasonable opportunity to respond,

the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney . . . that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Due process is satisfied if the sanctioned party has a real and full opportunity to explain its questionable conduct before sanctions are imposed." *Coonts*, 316 F.3d at 753. "The court has broad discretion in the choice of sanctions." *Id.* at 753.

Sanctions under § 1927 are also available when an attorney "multiplies the proceedings in any case unreasonably and vexatiously," and sanctions may include costs and attorney's fees that are reasonably incurred because of that attorney's behavior. 28 U.S.C. § 1927. "Whether an explicit finding of bad faith is required for the imposition of sanctions under § 1927, however, is not clear. However, the Eighth Circuit has announced that the standard . . . is whether the attorney's conduct viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, No. CV 17-5009 (JRT/KMM), 2020 WL 4915832, at *4 (D. Minn. Aug. 21, 2020), *as amended* (Aug. 27, 2020) (cleaned up) (collecting cases); *see also Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) "[T]he statute permits sanctions when an attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.") (cleaned up). "As with sanctions under Rule 11, the district court must provide an attorney with fair notice and an opportunity to be heard before ordering the reimbursement of fees." *Clark*, 460 F.3d at 1011. "However, because § 1927 'is penal in nature, it should be strictly construed[.]'" *Protege Biomedical, LLC v. Duff & Phelps*

*Sec., LLC*, No. CV 19-3152 (JRT/HB), 2021 WL 168467, at *2 (D. Minn. Jan. 19, 2021) (alteration in original) (quoting *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999)).

The Court also has inherent authority "to manage its own affairs so as to achieve the orderly and expeditious disposition of cases" and so to impose sanctions if an attorney's conduct abuses the judicial process. *Adams*, 863 F.3d at 1077 (cleaned up) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Where the court sanctions attorney conduct under its inherent power, the offensive conduct must constitute or be tantamount to bad faith." *Mgmt. Registry*, 2020 WL 4915832, at *4 (cleaned up).

## III. ANALYSIS

The Court first addresses Uptime's arguments with respect to sanctions under Rule 11. Given that Rule's focus on whether a "pleading, written motion, or other paper" violates one or more provisions of the Rule, the Court proceeds by discussing the documents "sign[ed], fil[ed], submitt[ed], or later advocat[ed]" by attorneys for the Firm and identified by Uptime as sanctionable. These are here grouped as documents related to removal and the Remand Motion; documents related to the Motion for Admission and the Revocation Motion; documents related to the Firm's Answer and Counterclaim and the Motion to Amend; and documents related to the Sanctions Motion. The Court then addresses sanctions pursuant to § 1927 and the Court's inherent authority, followed by who should be sanctioned to the extent sanctions are imposed. Finally, the Court addresses what the appropriate sanction is.

### A. Documents Related to Removal and the Remand Motion

Uptime contends that counsel for the Firm should be sanctioned for "filing and advocating a frivolous Notice of Removal and Response to Plaintiff's Motion to Remand that include false statements of fact and meritless arguments." (Dkt. 54 at 18.) Specifically, Uptime argues that the Firm's arguments that the removal was timely and that this Court had subject matter jurisdiction because the amount in controversy requirement was satisfied were frivolous, and further that the documents contained false statements of fact and the Notice of Removal was filed for an improper purpose. (*Id.* at 19-23; *see also id.* at 27 ("[C]ounsel for Kennard Law have further filed several papers that include false statements of fact or misstatements of the law, including papers filed by counsel for Kennard Law in opposition to Uptime's Motion to Remand . . . . Counsel for Kennard Law's filings continue to advocate their frivolous assertion that federal court jurisdiction is proper in this matter, and that Kennard Law has sought to protect its interests in Texas state court, thus justifying, excusing, or somehow supporting their actions in this case.").)

#### 1. The Notice of Removal (Dkt. 1)

The Court agrees that the Firm's contentions in the Notice of Removal regarding the timeliness of removal were not warranted by existing law and so violate Rule 11(b)(2). As described in Section I.B.1, the Firm acknowledged that it filed the Notice of Removal more than one year after commencement of the suit (the time limit set by 28 U.S.C. § 1446(c), assuming that the Firm even had that long and not merely 30 days under § 1446(b)). The Firm's only justification for this delay is its nebulous and

unsupported claim that it took certain actions in Texas state court that somehow delayed removal of the Minnesota state court action. (*See* Dkt. 1 ¶ 4 ("Defendant in good faith sought to protect his interests in Texas state court which delayed this removal action.").) But any actions by the Firm in a state court case would have no bearing on the timeliness of a removal more than one year after commencement of the suit in any event: as Chief Judge Tunheim explained, "[A] case cannot be removed based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 more than one year after the action begins, unless the plaintiff acted in bad faith to prevent removal." (Dkt. 65 at 6-7 (citing 28 U.S.C. § 1446(c)(1)).) As Chief Judge Tunheim noted, the Firm **never** alleged that Uptime acted in bad faith to prevent removal, and the explanations throughout the Firm's (and/or Mr. Kennard's) submissions to the Court only referred to the Firm seeking to protect its interests in Texas state court. (*See id.* at 7 ("Because removal occurred 17 months after the state court proceedings commenced, no exception to the 30-day rule can apply here, as there are no allegations of bad faith conduct by Uptime.").) As Chief Judge Tunheim further stated, "Kennard Law offers no legal justification for this theory." (*Id.*) Any legal contention that the removal was timely is, therefore, not "warranted by existing law" and violates Rule 11(b)(2).[12]

Moreover, the Firm made false statements in the Notice of Removal in support of this unsupported and unwarranted legal contention. The Firm stated in the Notice of

12 The Firm did not make any "argument for extending, modifying, or reversing existing law or for establishing new law" with respect to the Firm's claims, defenses, and other legal contentions in its Notice of Removal or Response to the Remand Motion, so the Court need not address whether such an argument was frivolous in violation of Rule 11(b)(2).

Removal that it took some kind of action in Texas state court in September 2019, referring specifically to "filing pleadings," and that the suit was dismissed at some later time. (Dkt. 1 ¶¶ 2, 4.) But the Texas state court action was dismissed in September 2019, not after that date, and as discussed in Section I.A, there is no evidence that the Firm (or the court) took any action in the Texas state court action after the dismissal. In short, the Firm's statements about its post-September 2019 activity in the Texas state court action are false. Similarly, the Firm's statements suggesting that dismissal of the Texas state court action occurred sometime after September 2019 ("ultimately dismissed") also are false.

Worse yet, the Firm had ample time to clarify the record regarding the Texas state court action. In the Revocation Order, this Court reviewed these same assertions and the facts as shown by the record and concluded that these statements were false. (Dkt. 60 at 27.) Not only did the Firm fail to explain these statements when raised again in the Sanctions Motion, it repeated them. (*See* Def.'s Mem. Sanctions ¶ 2.) The Firm did not correct or withdraw those false statements. Rather, it argued:

> In reality, given the health pandemic and its direct impact on the financial struggle of the Firm, it is under these circumstances that Defendant in good faith sought to maintain it very existence while also representing *Pro se*. Thus, when viewed objectively, under the unique circumstances present [sic], it cannot be said that Defendant was false in his statement because any alleged 'delays' to remove this matter was a direct result of Plaintiff's insistence that Mr. Kennard could not defend himself and his firm."

(*See id.* ¶ 19.)

The Court rejects the Firm's argument that an inability to retain local counsel or the COVID-19 pandemic excuses a litigant's false statements regarding actions the

litigant did (or rather, did not) take in another lawsuit. As Chief Judge Tunheim concluded in the Remand Order, "[T]here is no plausible factual basis for Kennard Law's assertion that the Texas court proceedings caused the 17 month delay in removal of the Minnesota court proceedings to this Court." (Dkt. 65 at 7.) In sum, the Firm's factual contentions in the Notice of Removal regarding its actions in Texas state court in September 2019 and the resolution of that suit lacked any evidentiary support, and in fact appear to be completely false. Further, the Firm relied on them to support a legally baseless tolling or delay argument with respect to removal. The Firm's statements in the Notice of Removal suggesting the Texas state court action did not terminate in September 2019 and that the Firm took some kind of action in that proceeding after the September 2019 dismissal violate Rule 11(b)(3).

The Firm made other factual representations in the Notice of Removal that, at best, were extremely misleading, and some of which lacked evidentiary support. The Firm stated Uptime had "pleaded damages of $46,000" and referred to Uptime's "alleged damages" in its contentions regarding the amount in controversy, even though the Minnesota state court had already awarded $17,4000 in damages. (Dkt. 1 ¶¶ 1, 4.) The Firm also stated that it had filed an Answer and Counterclaim in Minnesota state court on April 20, 2020, and its alleged counterclaim damages of $1.5 million in combination with Uptime's "alleged damages" satisfied the amount in controversy requirement. (*Id.* ¶¶ 2, 4.) There are numerous problems with these representations. The Minnesota state court had already awarded Uptime $17,400 in damages, and by relying on "pleaded" and "alleged" damages, it appears that the Firm may have been trying to inflate the amounts

sought by Uptime at the time of removal to meet the amount in controversy requirement. But more troubling is the Firm's reliance on its $1.5 million counterclaim. First, this amount is part of the state court April 20, 2020 Answer and Counterclaim. (Dkt. 4 ¶ 21.) The Firm never obtained leave to amend to assert the April 20, 2020 Answer and Counterclaim from the Minnesota state court, nor did the Firm serve the April 20, 2020 Answer and Counterclaim on Uptime. (Dkt. 55 ¶¶ 7, 8, 10; *see also* Dkt. 1-3, Ex. 4 at 8; Dkt. 55-6, Ex. 6 at 3 (state court case index; no motion or order regarding leave to amend).) Based on these facts, it is unclear whether the April 20, 2020 Answer and Counterclaim was valid for any purpose, because it is unclear whether it was the operative pleading in the Minnesota state court action, and therefore whether the Firm could rely on it.[13] More importantly, the Minnesota state court dismissed the Firm's breach of contract counterclaim as "not viable" on June 25, 2020, after the Firm filed the

[13] It is not clear which answer and counterclaim the Minnesota state court considered operative when it dismissed the breach of contract counterclaim on June 25, 2020. The Minnesota state court order recounted the facts of the Firm's two answers and counterclaim pleadings, noting the first alleged Uptime breached the contract and referring to the second as "an amended answer and counterclaim." (Dkt. 1-3, Ex. 4 at 7-8.) The court's conclusion then stated, "Because Defendant's counterclaim for breach of contract is not viable in light of this ruling, the Court dismisses that counterclaim." (*Id.* at 15.) Given that the first answer asserted several counterclaims, not just breach of contract (Dkt. 55-4, Ex. 4 at 3); the state court did not address the fact that no motion to amend was filed (*see* Dkt. 1-3, Ex. 4 at 8); the court ordered that Minnesota counsel sign and file "the answer already submitted" (*id.* at 6); and the only claim remaining in the case that the court referred to was Uptime's unjust enrichment claim (*see id.* at 6, 14), the state court's view of the validity of the April 20, 2020 Answer and Counterclaim, or which answer was the operative one, is not entirely clear. Nonetheless, given the state court's dismissal of the Firm's breach of contract claim on June 25, 2020 as "not viable," it is clear that the Firm did not have a $1.5 million breach of contract claim, as alleged in the April 20, 2020 Answer and Counterclaim, at the time the Notice of Removal was filed.

April 20, 2020 Answer and Counterclaim and before the Firm filed its Notice of Removal (Dkt. 1-3, Ex. 4 at 15), so there appears to be no factual or legal basis for the Firm's reliance on either its October 19, 2019 or April 20, 2020 breach of contract counterclaim. Setting aside whether counterclaim damages may satisfy the amount in controversy requirement,[14] the Firm has not offered any legal authority for the contention that damages arising out of a dismissed claim can be used to satisfy the amount in controversy. *Contra Mathias v. Hettich*, No. 20-CV-1014 (SRN/LIB), 2020 WL 5708920, at *2 (D. Minn. Sept. 24, 2020) (citing *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1248 (8th Cir. 2006)) ("[J]urisdiction is determined at the time of removal. Therefore, although Plaintiff has since withdrawn his defamation claim, the Court must consider both the defamation and conversion claims when it analyzes the amount in controversy because, at the time of removal, Plaintiff maintained both claims."). Therefore, the Firm's legal contention that "counterclaim damages combined with Plaintiff's alleged damages satisfied the 'amount in controversy' and diversity of citizenship" (Dkt. 1 ¶ 4) was not warranted by existing law in violation of Rule 11(b)(2) and lacked evidentiary support for the factual contentions relied on in violation of Rule 11(b)(3).[15]

---

[14] Chief Judge Tunheim only addressed the timeliness of removal, not the amount in controversy, when remanding the case. (Dkt. 65 at 1-2 ("The Court finds that, irrespective of the amount in controversy, removal was untimely and not subject to any exceptions.").)

[15] Again, to the extent the Firm contends its statements regarding its own claims and damages have evidentiary support because the state court lacked jurisdiction to decide any matters in this case, that contention is also without merit, as the Court explains later in this Section.

Even if the Firm had some legal or factual basis for its reliance on counterclaim damages, its conduct in filing the Notice of Removal is independently sanctionable under Rule 11(b)(1), which prohibits a pleading, written motion, or other paper from being "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." According to Uptime, "counsel for Kennard Law filed the Notice of Removal for an improper purpose to unnecessarily delay the resolution of this matter and needlessly increase Uptime's costs and fees." (Dkt. 54 at 23.) Uptime relies on the fact that the Firm removed the action after Uptime had already prevailed in part on summary judgment and the Firm's counterclaim was dismissed. (*Id.*) Uptime also asserts "that counsel for Kennard Law have blatantly sought to mislead this Court as to why they failed to file the Notice of Removal within the time permitted to do so." (*Id.*) Given the timing of the Notice of Removal, the misstatements of fact regarding the Texas and Minnesota state cases in the Notice of Removal, and the Firm's reliance on a dismissed counterclaim in the Notice of Removal, the Court agrees that the Notice of Removal was filed for improper purposes, specifically to cause unnecessary delay, to avoid the consequences of the June 25, 2020 state court order and the impending full resolution of the suit in state court, and to mislead the Court about the facts of the case. *See Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 819 (8th Cir. 2008) (affirming sanction of party and attorney based on violation of Rule 11(b)(1)) ("[A] district court abuses its discretion by refusing to sanction a plaintiff and his counsel under Rule 11 for filing and maintaining a frivolous lawsuit when the plaintiff seeks to relitigate claims he had been denied leave to serve against the same defendant in an earlier lawsuit.

In this case, the district court held that Edward's claims against Hotz Weaver were virtually identical to those filed by his father. Further, the attorneys representing Edward are the same attorneys who represented his father, and therefore they are charged with knowledge of the fact that the claims against Hotz Weaver were barred by the prior dismissal.") (cleaned up).

The fact that the Firm attached the June 25, 2020 order of the Minnesota state court to the Notice of Removal does not excuse the Firm's conduct in filing the Notice of Removal. A litigant is not permitted to make false statements in a document filed with the Court simply because careful review of another document filed with the document containing false statements would permit the Court to identify which of the litigant's statements are true and which are false. Setting aside the issues around the amount in controversy, it is clear that removal was untimely and it is clear that the Firm made false statements about the Texas state court action when trying to justify its untimely removal (based on a meritless legal theory). Indeed, in the context of awarding attorney's fees pursuant to 28 U.S.C. § 1447(c), Chief Judge Tunheim "agree[d] that removal of this case lacks an objectively reasonable basis, as it was blatantly untimely with strong indications of being a dilatory tactic." (Dkt. 65 at 9; *see also id.* at 7 ("Kennard Law offers no legal justification for this theory. . . . [T]here is no plausible factual basis for Kennard Law's assertion . . . ."); *id.* at 8 ("[R]emoval is plainly untimely.").) The Court accordingly concludes that the Notice of Removal was presented for an improper purpose, including for purposes of delay and to try to avoid a bad outcome, in violation of Rule 11(b)(1). *Cf. Banco Popular de Puerto Rico v. Ramirez*, 280 F. Supp. 3d 316, 321 (D.P.R. 2017)

("According to Plaintiff, Defendants lost the foreclosure case in state court. [Defendants then filed a motion to dismiss, which was denied, and an appeal.] Then they filed a motion for stay, which was also denied, and then they removed this action without merit. In their notice of removal and opposition to remand, they advanced no clear argument as to why the state court order denying the motion for stay allowed them to ascertain that the case became removable. This procedural history strongly insinuates an attempt to delay an unavoidable outcome through legal shenanigans. Accordingly, the Court orders Defendants to reimburse Plaintiff for attorneys' fees and costs related to this removal under section 1447(c) and section 1927. . . . Moreover, . . . Defendants must show cause as to why the aforementioned conduct has not violated Rule 11(b) and why sanctions under Rule 11 and section 1927 should not be imposed.").

**2. The Firm's Response to the Remand Motion (Dkt. 30)**[16]

Although the Response acknowledged that Uptime had partially prevailed on summary judgment in Minnesota state court (*id.* ¶ 6), it still put forth the same unwarranted factual and legal contentions that were in the Notice of Removal and further stated, inaccurately, that the Minnesota state court "denied the remaining claims" in that action (*id.*). The mention of the partial grant of summary judgment does not change the Court's analysis and conclusions with respect to those repeated factual and legal contentions, which are identified in Section I.B.1. The Court concludes that the Firm's

---

[16] Uptime addressed the Firm's Notice of Removal and Response to the Remand Motion in the same section. (*See* Dkt. 54 at 18-23.)

Response violates Rule 11(b) (2) and (3) by presenting those same factual and legal contentions.

In Response to the Remand Motion, the Firm also contended that the Minnesota state court lacked jurisdiction over this dispute, citing cases on general principles of subject matter jurisdiction and, more specifically, diversity jurisdiction. (*Id.* ¶¶ 8-9, 11-16, 18.) This legal contention is completely unwarranted, and, as Uptime argues, the authorities cited by the Firm do not address the issues in this case. (*See* Dkt. 54 at 20 ("[The Firm] attempts to mislead this Court in its Response to Plaintiff's Motion to Remand with citations to, and meritless arguments based on, cases that have no bearing on the timeliness of removing a case to federal court, and instead pertain to the ability to challenge whether a federal court has subject matter jurisdiction.").) Rather, the Firm's argument appears to confuse a federal district court's "original jurisdiction" over cases that meet the requirements for diversity jurisdiction with a federal court's "exclusive jurisdiction," where **only** a federal court can hear a particular category of claim, and which is in contrast to "concurrent jurisdiction," where more than one court has subject matter jurisdiction; generally, a federal district court's jurisdiction over diversity matters is concurrent, not exclusive. *See Jurisdiction*, *Black's Law Dictionary* (11th ed. 2019) (defining "original jurisdiction," "exclusive jurisdiction," and "concurrent jurisdiction"); *McElroy v. Sec. Nat. Bank of Kansas City, Kan.*, 215 F. Supp. 775, 778 (D. Kan. 1963) ("Diversity jurisdiction of the federal courts is generally concurrent with courts of general jurisdiction of the state wherein the federal court sits. For purposes of diversity jurisdiction, a federal court is 'in effect, only another court of the State.'") (quoting

*Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 108 (1945), and *Erwin v. Barrow*, 217 F.2d 522, 524 (10th Cir. 1954)). There was nothing lacking with respect to jurisdiction in the Minnesota state court; this case came to this Court via removal, which is a permissive, not required, procedural mechanism initiated by a defendant. *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have **original** jurisdiction, **may** be removed by the defendant or the defendants, to the district court of the United States . . . .") (emphases added). The legal contention that this Court was the only court with jurisdiction over this dispute, and that the Minnesota state court was a "court of no jurisdiction" (Dkt. 30 ¶ 18), is not warranted by existing law and so violates Rule 11(b)(2).

The Court considers whether the Firm's Response to the Remand Motion was presented for improper purposes in violation of Rule 11(b)(1). By the time the Firm filed its Response on September 4, 2020, Uptime had filed several documents pointing out the errors in the Firm's factual statements and legal theories. (*See* Dkts. 12, 13 (Uptime's Remand Motion memorandum and supporting affidavit with exhibits); Dkts. 21, 22 (Uptime's Revocation Motion memorandum and supporting affidavit with exhibits).) Rather than correct these errors, admit it made any mistakes, or otherwise take any remedial action, the Firm continued to rely on sanctionable factual assertions and legal theories in its Response, not to mention asserted a new—and meritless—argument that the Minnesota state court lacked jurisdiction. *See Superior Consulting Servs., Inc. v. Steeves-Kiss*, 786 F. App'x 648, 651 (9th Cir. 2019) ("The district court did not abuse its

discretion in imposing sanctions under Rule 11. The court acted within its discretion in concluding that Superior's failure to attach or to fully explain the terms of the Agreement . . . was misleading in light of the reliance by [the Complaint] on the Agreement, and that the Complaint lacked factual support as a result. A court's finding that a complaint is factually misleading is sufficient to support Rule 11 sanctions. The district court's additional statement . . . conveyed the determination that the Complaint was also legally frivolous. . . . This was especially egregious because Steeves-Kiss had alerted Superior to the language of the Agreement after the initial Complaint was filed, but Superior continued to describe it in a misleading manner in the First Amended Complaint.") (citations omitted).

The Court concludes that the Firm's Response to the Remand Motion was presented for improper purposes in violation of Rule 11(b)(1), namely that of delay, and in an attempt to mislead the Court as to the status of the Texas and Minnesota state court litigation and the basis for jurisdiction.[17]

The Court has considered the possibility that the Firm simply made several innocent mistakes with regard to the facts and law. The Firm has yet to admit any error,

[17] Exhibit 1 to the Firm's Response to the Remand Motion (Dkt. 30-1, Ex. 1), which appears to be an altered version of the Notice of Removal at Docket No. 1 or the Notice at Docket No. 1-4 (or both), is another example of what appears to be an attempt to mislead the Court. Uptime did not seek sanctions based on Exhibit 1. Given the lack of notice to the Firm and because the Firm did not have the chance to address sanctions with respect to Exhibit 1, the Court will not base any sanctions on that filing. But the submission of an altered document—with no explanation from the Firm—is extremely concerning, and certainly could warrant sanctions pursuant Rule 11 or the Court's inherent authority had the issue been raised.

so this may be a moot point, but in any event, numerous cases hold that even well-intentioned ignorance or carelessness does not excuse sanctionable conduct because the Rule 11 standard is objective, not subjective. *See Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987) (ignorance of the law or legal procedures does not excuse filing a frivolous action); *Nieves v. City of Cleveland*, 153 F. App'x 349, 353 (6th Cir. 2005) (where attorney "had carelessly drafted the complaint" and had not intended to file a baseless claim, "[t]he district court correctly responded that such an excuse does not make his conduct any less a violation of Rule 11"); *U.S. Bank Nat. Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) ("We agree with the district court that [law firm's] plea of ignorance is unavailing. Rule 11 establishes an objective test, and as we have repeatedly observed, an empty head but a pure heart is no defense.") (cleaned up); *In re Hein*, 341 B.R. 903, 905 (Bankr. N.D. Ind. 2006) ("[A]cting without thinking is the very basis for sanctions under [Rule 11]. An empty head but a pure heart is no defense.") (cleaned up). Even if the Firm were simply incredibly misguided as to the facts and the law surrounding removal and federal court jurisdiction, its conduct in presenting the Notice of Removal and Response to Remand Motion is still sanctionable under Rule 11.

In sum, both the Notice of Removal (Dkt. 1) and the Firm's Response to the Remand Motion (Dkt. 30) contain legal contentions not warranted by existing law and factual contentions that lack evidentiary support, in violation of Rule 11(b)(2) and (3). Based on the record, both documents were presented to the Court for improper purposes

in violation of Rule 11(b)(1), including delay, to avoid the Minnesota state court's decision, and to try to confuse this Court.

**B. Documents Related to the Motion for Admission and the Revocation Motion**

With respect to the Motion for Admission (Dkt. 5), Uptime contends that Mr. Kennard's Affidavit with the Motion for Admission falsely certified that he was currently a member in good standing of two other federal district courts. (Dkt. 54 at 24.) The Court rejected this argument in the Revocation Order and accordingly also concludes that the Motion for Admission did not violate any provision of Rule 11(b). (*See* Dkt. 60 at 11-14.) At the hearing, counsel for Uptime acknowledged that the Court had now ruled on the Revocation Motion and noted that the Court had found that Mr. Kennard violated other Local Rules regarding attorney discipline. (*See id.* at 14-17.) It is not entirely clear whether Uptime now contends that those violations are also sanctionable under Rule 11(b), but, given that Rule's focus on papers submitted to the Court, the Court concludes that the violations of Local Rules on attorney discipline described in the Revocation Order do not constitute violations of Rule 11(b).

Uptime next contends that Mr. Kennard's "admission pro hac vice has allowed him to continue to unnecessarily multiply these proceedings and increase Uptime's costs and fees in having to address his meritless filings in federal court, including . . . filing a Motion to Revoke his Pro Hac Vice Status . . . ." (Dkt. 54 at 24.) First, since the Court has rejected the argument that the Motion for Admission itself violates Rule 11(b), it accordingly rejects any argument about further violations that were "allowed" by or flowed from that Motion. (*See id.*) Second and more importantly, a violation of Rule

11(b) on the part of the Firm and/or its counsel cannot occur based on *Uptime*'s filing of a motion—the inquiry is whether "a pleading, written motion, or other paper" presented to the Court conforms to the several provisions of Rule 11(b). The Court therefore only considers whether the Firm's filings violated Rule 11, rather than finding a Rule 11 violation based on Uptime's decision to file a motion or Uptime's responses to the Firm's filings.[18]

But Uptime also specifically identifies the Firm's Response to the Revocation Motion (Dkt. 34) as sanctionable. Uptime argues that "counsel for Kennard Law have further filed several papers that include false statements of fact or misstatements of the law, including papers filed by counsel for Kennard Law in opposition to . . . Uptime's [Revocation Motion]," and these "filings continue to advocate their frivolous assertion that federal court jurisdiction is proper in this matter, and that Kennard Law has sought to protect its interests in Texas state court." (Dkt. 54 at 27.) As described in Section I.B.2, the Firm's Response to the Revocation Motion made several assertions of fact and law that were the same or very similar to assertions made in previous filings and failed to mention that the Minnesota state court had dismissed the Firm's breach of contract counterclaim as "not viable." For all the same reasons the Court concludes in Section III.A that the filings containing these contentions were violations of Rule 11(b)(1), (2), and (3), the Court concludes the Firm's Response to the Revocation Motion also violates

---

[18] Whether the Firm's sanctionable conduct "unnecessarily multipl[ied] these proceedings and increase[d] Uptime's costs and fees in having to address his meritless filings" is more pertinent to the question of what sanction to impose, to the extent the Court concludes conduct is sanctionable, which the Court addresses in Section III.G.

Rule 11(b)(1), (2), and (3).[19] In other words, the contentions did not become less sanctionable for being repeated.

The Firm also expanded on its argument regarding the amount in controversy, arguing that "some Courts have allowed the 'amount in controversy' requirement to be satisfied with the inclusion of any compulsory claims." (Dkt. 34 ¶ 13; *see also id.* ¶¶ 12-15.) The Firm cited one case each from the Tenth Circuit and the Eastern District of Michigan for the proposition that counterclaim damages can be included in the amount in controversy. (*Id.* ¶¶ 13-14.)

Uptime argues that this "argument is meritless, and directly refuted by longstanding Minnesota federal and Eighth Circuit precedent that expressly hold that counterclaims cannot satisfy the amount in controversy." (Dkt. 22-23.) It is true that the Firm's argument did not acknowledge directly contradictory authority from this District, even after Uptime relied on such authority in support of the Remand Motion. (*See* Dkt. 12 at 16-17 (quoting, at length, *Al-Cast Mold & Pattern, Inc. v. Perception, Inc.*, 52 F. Supp. 2d 1081, 1083 (D. Minn. 1999)).) However, as Mr. Minenko argued at the hearing on the Remand Motion and the hearing on the Sanctions Motion, and as Uptime's counsel acknowledged at the hearing on the Sanctions Motion, the Eighth Circuit has not

---

19 Neither Uptime nor the Court raised Exhibit 1 to the Firm's Response to the Revocation Motion, which appears to be the Firm's proposed First Verified Amended Answer and Counterclaims to Plaintiff's Original Petition. (*Compare* Dkt. 34-2, Ex. 1, *with* Dkt. 26-1, Ex. 1.) The Court is at a loss as to why the Firm filed this document in connection with its Revocation Motion. Uptime did not seek sanctions based on Exhibit 1, so the Court merely notes that Example 1 is an example of how the Firm's filings demonstrate an intent to delay or try to confuse the Court, or at least a lack of regard for the proceedings.

resolved whether counterclaim damages count towards the amount in controversy. A district court decision is not binding authority even in the same district. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'") (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1] [d], p. 134-26 (3d ed. 2011)). Therefore, the Firm's legal argument was not contrary to **binding** precedent, even if it was contrary to a decision of another court in the District of Minnesota.

The Court is therefore left with the question of whether to sanction the Firm for failing to cite a District of Minnesota case when arguing that counterclaim damages should be included for purposes of the amount in controversy requirement. Courts have at times found similar conduct of ignoring precedent from the same jurisdiction to be sanctionable under Rule 11. *See, e.g.*, *Maciosek v. Blue Cross & Blue Shield United of Wisc.*, 930 F.2d 536, 542 (7th Cir. 1991) (quoting Fed. R. Civ. P. 11) ("Ignoring precedent from the same jurisdiction is not making a 'good faith argument for the extension, modification, or reversal of existing law . . . .'"). Here, given the Court's conclusion the Firm's Response to the Revocation Motion violated Rule 11(b)(1), (2), and (3) for other reasons, the Court need not decide whether the failure to cite a District of Minnesota case in its Response to the Revocation Motion is sanctionable. (It certainly would have been better practice to discuss the case, particularly as Uptime relied on the case to support its Remand Motion, and the Firm's failure to do so indicates, at best, a lack of care in the Firm's filings.) The Court also need not decide whether the Firm's

legal contention that counterclaims may satisfy the amount in controversy independently violates Rule 11(b)(2).[20]

The Court turns to the Firm's Sur-Reply to the Revocation Motion. As described in Section I.B.2, the Sur-Reply (Dkt. 44-2, Ex. 1) and supporting Declaration of Mr. Kennard (Dkt. 44-3, Ex. 2) repeated several of the types of contentions that the Court has already addressed with respect to other filings. For all the same reasons the Court has previously concluded these contentions violate Rule 11(b)(1), (2), and (3), the Court concludes the same with respect to the Firm's Sur-Reply to the Revocation Motion.

The Sur-Reply also refers to damages as pleaded in its "Amended Answer" for the proposition that the "damages combined equal over at least $500,000 for an amount in controversy." (*Id.* ¶ 17 (citing Dkt. 26-1).) But since the "Amended Answer" relied on was merely a proposed pleading filed with the Firm's Motion to Amend, the Firm's reliance on that ineffective pleading lacked any factual or legal basis (although it is unclear whether the Firm was ignorant of the procedural posture of the case or simply ignored the fact that the "Amended Answer" was ineffective). This is yet another basis for imposing sanctions under Rule 11.

Finally, as described in Section I.B.2, after the hearing on the Revocation Motion at which Mr. Kennard did not appear, the Firm filed a letter with the Court on October 8, 2020. (Dkt. 47.) The letter repeated some of the Firm's previous assertions, namely that

---

[20] To the extent the Firm sought to invoke Rule 11(b)(2)'s allowance of "nonfrivolous argument[s] for" changing or making law, the Firm did not clearly indicate its intent to change or make such law and certainly did not acknowledge "existing law" in the District (whether binding or persuasive) in its Response. (*See* Dkt. 34 ¶¶ 12-15.)

only this Court has jurisdiction over this matter and that the Texas state court proceedings delayed removal, and explicitly reaffirmed its previous contentions, stating, "I stand on what has been filed." (*Id.*) For all the reasons the Court has already concluded filings with these contentions violate Rule 11(b)(1), (2), and (3), the Court concludes the same with respect to the Firm's letter.

In sum, the Firm's Response to the Revocation Motion, Sur-Reply, Declaration of Mr. Kennard, and October 8, 2020 letter contain several factual and legal contentions that lack evidentiary support or are not warranted by existing law.[21] Those documents presented to the Court therefore violate Rule 11(b)(1), (2), and (3).[22]

### C. Documents Related to the Firm's Answer and Counterclaim and the Motion to Amend

Uptime argues that "the purported second [April 20, 2020] Answer and Counterclaim [(Dkt. 4)] filed by counsel for Kennard Law is not a valid and operative pleading as falsely maintained and represented to this Court by counsel for Kennard

---

21 Mr. Minenko argued at the hearings on the Remand Motion and the Sanctions Motion that when Uptime's claim for attorney's fees is taken into account, Uptime's damages would, in fact, be above the $75,000 threshold for diversity jurisdiction. However, the Firm did not withdraw the arguments and contentions it presented in writing, so the attorney's fees argument does not alter the analysis with respect to sanctions.

22 The Firm argued in its Response, Sur-Reply, Declaration of Mr. Kennard, and October 8, 2020 letter that Mr. Kennard was entitled to represent the Firm "pro se." (*See* Dkt. 34 ¶¶ 11, 19; Dkt. 44-2, Ex. 1 ¶¶ 2, 4, 8, 12, 15 and Prayer ("Defendant respectfully request the Court deny Plaintiff's Motion to Revoke and permit the Pro Se representation in this case to progress in federal court."); Dkt. 44-3, Ex. 2 ¶¶ 2, 4; Dkt. 47 at 2.) Because Uptime did not raise the Firm's "pro se" contentions in its filings in connection with the Revocation Motion as a reason for sanctions, the Court will not base a violation of Rule 11(b) on these statements in the Response. *See* Fed. R. Civ. P. 11(c)(1) (requiring notice and a reasonable opportunity to response).

Law." (Dkt. 54 at 25.) According to Uptime, the April 20, 2020 Answer and Counterclaim is inoperative because it was never served, was not signed by an attorney licensed to practice in Minnesota, was not filed pursuant to a granted motion to amend the Firm's earlier pleading, and was dismissed by the Minnesota state court. (*Id.*) Additionally, Uptime argues that the Certificate of Service accompanying the Answer and Counterclaim is a false statement, since it was not, in fact, served. (*Id.* at 27.)

The Court declines to delve too far into the procedural aspects of the Minnesota state court case with respect to which Answer and Counterclaim was the "valid and operative pleading"—especially since, as described (*supra* n.13), it is unclear whether the state court found the October 31, 2019 or the April 20, 2020 Answer and Counterclaim to be operative. For purposes of this proceeding, even if the April 20, 2020 Answer and Counterclaim was the operative pleading in the Minnesota state court, that court had dismissed the breach of contract counterclaim on June 25, 2020, and the Firm's subsequent reliance on that document to support its breach of contract counterclaim damages and satisfaction of the amount in controversy requirement violates Rule 11(b)(2). Further, Uptime argued that the Certificate of Service (*see* Dkt. 4 at 6) was false, and the Firm has never disputed that fact. The Firm's reliance on the April 20, 2020 Answer and Counterclaim and Certificate of Service in **this** Court, including filing it as Docket Entry 4, is therefore a violation of Rule 11(b)(3). Moreover, given that the state court dismissed the Firm's breach of contract counterclaim as not viable on June 25, 2020, the Court concludes that this document was filed for improper purposes of delay, confusion, and attempting to resurrect a dismissed claim, in violation of Rule 11(b)(1).

The Firm certainly has never explained why it filed the state court April 20, 2020 Answer and Counterclaim as an independent document in this action and in a manner that suggested the counterclaim was still viable.

The Court turns to the Firm's Motion to Amend, filed on August 31, 2020, which was intended "to provide clarity."[23] (Dkt. 26 ¶ 1.) Uptime argues that the Motion to Amend is "meritless" and "an obvious and blatant attempt to abuse of [sic] the judicial process, re-litigate issues that were already ruled on in Minnesota state court, continue to delay a resolution of this matter, and needlessly increase Uptime's costs and fees." (Dkt. 54 at 26-27.) The Court considers whether the Motion to Amend is sanctionable below.

As an initial matter, the Firm's October 12, 2020 brief in support of its Motion to Amend continued to misrepresent the Texas state court proceedings and made legally baseless jurisdictional arguments. (*See generally* Dkt. 48.) For the reasons discussed above, these statements alone warrant sanctions under Rule 11.

Moreover, in arguing that the Motion to Amend was timely, the Firm expanded on its argument regarding the timeliness of removal, contending that "the one-year statute of limitation on removal should be equitably tolled." (*Id.* ¶ 9; *see also id.* ¶ 10.) This legal contention is meritless. Legal authorities on statutes of limitations are not applicable to just any deadline in the law: a statute of limitations is a time limit for bringing a claim. *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014) ("In the ordinary course, a statute of limitations creates 'a time limit for **suing** in a civil case, based on the date when the claim

---

[23] The proposed pleading presents allegations related to "billboard services and/or marketing services." (Dkt. 26-1, Ex. 1 ¶¶ 61-62.) These appear to have nothing to do with the case.

accrued.'") (emphasis added) (quoting *Black's Law Dictionary* 1546 (9th ed. 2009)); *Statute of Limitations*, *Black's Law Dictionary* (11th ed. 2019). Removal is a procedural mechanism that moves an **existing** suit from state court to federal court, governed by 28 U.S.C. § 1441 *et seq.*; as a general matter, statutes of limitations do not affect the time limits on removal, and the time limits on removal do not affect how long a party has to bring a suit after it accrues. To the extent these two concepts could affect one another, the Firm has not explained or provided legal authority supporting any such relationship. To the extent the Firm simply misused the term "statute of limitation" and meant to argue that the deadline for removal should have been tolled for equitable reasons, there is no basis in statute for such tolling; rather, the removal statute specifies both the deadline in § 1446(b)(1) and certain exceptions to that deadline. *See id.* § 1441(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant [of a paper] from which it may first be ascertained that the case is one which is or has become removable."); *id.* § 1446(c)(1) ("A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."). The Firm has not provided any legal authority supporting the proposition that exceptions or "tolling" are available beyond what is provided for in the statute, much less any authority indicating the circumstances present here would meet any requirements for such "tolling," and never alleged that Uptime acted in bad faith to prevent removal. (*See supra* Section III.A.1.) The Firm's legal contentions invoking a

"statute of limitation," made with the intent of keeping this case in federal court, are therefore unwarranted by existing law and violate Rule 11(b)(2).

Finally, the Motion to Amend did not address the dismissal of the Firm's breach of contract counterclaim by the state court as "not viable." (Dkt. 1-3, Ex. 4 at 15.) At the hearing on the Sanctions Motion, Mr. Kennard appeared to argue that the Firm could assert the same breach of contract counterclaim previously dismissed by the state court because the dismissal was without prejudice. However, he said he would have to confirm the fact that the dismissal was without prejudice, which he never did. And regardless of whether the dismissal was with or without prejudice, the Minnesota state court issued an order dismissing the Firm's "counterclaim for breach of contract" as "not viable in light of [its] ruling" granting summary judgment in favor of Uptime on its breach of contract claim. (*Id.*) Pursuant to 28 U.S.C. § 1450, "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." As the U.S. Supreme Court explained:

> In this respect two basic purposes are served. Judicial economy is promoted by providing that proceedings had in state court shall have force and effect in federal court, so that pleadings filed in state court, for example, need not be duplicated in federal court. In addition, the statute ensures that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal. Thus attachments, sequestrations, bonds, undertakings, securities, injunctions, a**nd other orders obtained in state court all remain effective after the case is removed to federal court**.

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 435-36 (1974) (footnote omitted and emphasis added); *see MediterraneanCoins, GmbH v. eBay.com*, No. C 05-3533 JF, 2005 WL 3096374, at *4 (N.D. Cal. Nov. 14, 2005) ("[W]hen a case is removed to federal court, the federal court

takes the case as it stood in state court at the time of removal. Thus, removal of the instant case does not allow [a defendant] to avoid any orders or enforcement that may have been pending in state court.").

Of course, the federal court to which a case is removed has the "authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal." *Granny Goose Foods*, 415 U.S. at 437; *see* 28 U.S.C. § 1450. But the Firm cannot simply file a Motion to Amend to add a breach of contract counterclaim previously dismissed by the state court without seeking modification of the order dismissing that counterclaim or otherwise arguing why the counterclaim was not futile in view of that order. By failing to recognize (much less mention) the effect of the state court order on its Motion to Amend (*see generally* Dkt. 26; Dkt. 26-1, Ex. 1 (proposed Defendant's First Verified Amended Answer and Counterclaims to Plaintiff's Original Petition)), the Firm appears to have been trying to avoid the adverse state court order and consequently filed the Motion to Amend for improper purposes in violation of Rule 11(b)(1). *See Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015) ("We have repeatedly approved sanctions in cases where plaintiffs attempted to evade the clear preclusive effect of earlier judgments.") (collecting cases). The Firm's after-the-fact explanation at the hearing on the Sanctions Motion does not alter this conclusion.[24]

[24] This conclusion regarding an improper purpose is further supported by the statement that "[t]his Motion is Defendant's first request to amend the pleadings is this matter" (Dkt. 26 ¶ 2)—which glossed over the fact that April 20, 2020 Answer and Counterclaim was already the second pleading and the Motion actually sought leave to file a third Answer and Counterclaim—and by the argument that it was "still early in the federal proceedings" (Dkt. 48 ¶ 8; *see also id.* ¶¶ 10, 16, 17; Dkt. 26 ¶ 4)—which glossed

### D. Documents Related to the Sanctions Motion

The Court reaches the last category of documents that Uptime raised as a basis for sanctions: the Response and Declaration Mr. Kennard emailed to the undersigned's chambers in response to the Sanctions Motion. Uptime raised the contents of these documents at the hearing as additional grounds for sanctions, arguing that these submissions are within the reach of Rule 11 as "other paper[s]" "present[ed] to the Court" by Mr. Kennard's having signed and submitted them via email. *See* Fed. R. Civ. P. 11(b). The Firm offered no argument to the contrary, and the Response and Declaration were emailed to chambers as a substitution for filing them on the docket and with the intent of later filing them on the docket. Under these circumstances, the Court agrees with Uptime that Rule 11 is an appropriate vehicle for sanctioning these submissions.[25] *See Adduono v. World Hockey Ass'n*, 824 F.2d 617, 621 (8th Cir. 1987) (stating that Rule 11, in its then-current form, "applies only when an attorney has signed a pleading, motion or other paper," while in the present case, the attorney "signed neither a pleading, nor motion nor any other paper which may be the basis of a Rule 11 sanction" and the settlement agreement at issue "neither was submitted to the court nor reviewed by the court nor incorporated into the court's order of dismissal," so "Rule 11 is an inappropriate vehicle for reviewing and disciplining [the attorney's] conduct").

---

over the case's lengthy state court proceedings, which meant partial summary judgment had already been entered and the case was on the eve of trial.

[25] The Court does not suggest that every email to chambers might be sanctionable under Rule 11, but here, the Firm intended to file the Response and Declaration attached to the email, but could not because Mr. Kennard no longer had ECF filing privileges, so the Firm presented the response and declaration to the Court by email instead.

The Court also concludes that the Firm and Mr. Kennard had sufficient notice and opportunity to respond to the issues raised with respect to the emailed Response and Declaration. As detailed in Section I.B.4 and further below: (1) the contentions in these documents largely repeated contentions the Firm had previously made and that Uptime raised with respect to other filings; (2) the contentions in these documents in part related to issues the undersigned had already discussed in the Revocation Order, giving the Firm sufficient notice as to the Court's view of certain conduct or statements; and (3) the contentions in these documents were discussed at length at the hearing on the Sanctions Motion. Further, Mr. Kennard had several opportunities to respond to Uptime's arguments, as well as the Court's questions, at the hearing on the Sanctions Motion and indeed did respond.

The first aspect of these documents that Uptime raised at the hearing was that the Response purported to be submitted on behalf of the Firm, even though Mr. Kennard's pro hac vice admission had been revoked. (*See* Def.'s Mem. Sanctions at 1, 10; Dec. 4, 2020 Decl. ¶ 1.) To be clear, Mr. Kennard was not permitted to present any paper to the Court on behalf of the Firm after the Court revoked his pro hac vice admission, and the Court normally would not have considered those documents. But, in view of Rule 11's requirement that an attorney against whom sanctions are sought be given a "reasonable opportunity to respond," Fed. R. Civ. P. 11(c)(1), the Court will not recommend sanctions based on this statement and has considered these documents.

Secondly, and more importantly, Uptime also argued that in these documents, Mr. Kennard claimed to represent the Firm "pro se," in disregard of both long-standing

precedent and the Revocation Order, and that such conduct is sanctionable. The Court agrees. The law regarding who may represent a corporation in litigation and the meaning of "pro se" is well-established, and Mr. Kennard should have never purported to represent a corporate entity "pro se." Any ignorance and confusion that may have existed on this topic was dispelled in the Revocation Order, which set out the law and stated, "This 'pro se' argument is inconsistent with the law." (Dkt. 60 at 19.)

The Court notes that the emailed Response stated as follows:

> When Mr. Kennard's and Kennard Law's actions and conduct are viewed objectively in a post-covid-19 world that severely impacted the financial viability of most business, including this firm; the Defendant had to make a choice of a) either paying staff (payroll) and related Firm bills and representing *Pro se* (given he practices law in other federal courts often); or b) not paying payroll nor Firm bills and hire local counsel, and risk the firm's very existence – in a time where the pandemic is causing droves of company closures.
>
> Thus, when Defendant's conduct is viewed through an objective lens to Defendant's duties to the court as an attorney, coupled with the harsh economic realities of covid-19, Defendant's choice to represent *Pro se* and not hire counsel cannot be seen as intentional or reckless disregard for attorney's duties to the court. *See id. (emphasis added).* Rather than ignore and not respond to the court process given the inability to hire counsel and guarantee firm closure, Mr. Kennard (with no intent to deceive and in good faith) sought to adjudicate the claims *Pro se* given the pandemic financial effects – as opposed to not adjudicate and risk closing the Firm.
>
> While in the Minnesota State court, as mentioned, Plaintiff's [sic] filed a motion for sanctions that ultimately was not granted. Doc. 13-11. (*emphasis added*). When Defendant's actions are viewed objectively with the looming pandemic and the Defendant's very existence at stake, taking into account Defendant's admission to other federal courts across the county, Defendant sought to adjudicate the claims while maintaining payroll and Defendant's continued existence, as opposed to using the Defendant's limited funds (only exacerbated by the health pandemic financial impact) and certainly close down. Doc 34; 47.

> Rather than ignore and not respond to Plaintiff's pleadings, given the lack of financial resources felt from the health pandemic, Mr. Kennard sought to engage and represent the Firm *Pro se*. While in the Minnesota State court, Plaintiff "at every turn" sought to neutralize Mr. Kennard's efforts to engage in the state court process, and even filed a Motion for Sanctions at the state level. Doc. 52; 54.
>
> Therefore, when Defendant's actions are seen objectively with aforementioned unique circumstances, Defendant's [sic] assert that they have reasonable grounds (i.e. unprecedented on-going covid-19 pandemic, admission in other federal courts, and Defendant's very existence at stake) to make new law around the rules on out-of-state attorneys. *See Mgmt. Registry v. A.W. Cos.*, Civil No. 17-5009 (JRT/KMM), at *10 (D. Minn. Aug. 21, 2020); Fed. R. Civ. P. 11(b).

(Def.'s Mem. Sanctions ¶¶ 24-28 (paragraph numbering omitted).) The Court understands the Firm make two arguments in these paragraphs: first, the Firm seeks to invoke Rule 11(b)(2)'s allowance of "nonfrivolous argument[s] for extending, modifying, or reversing existing law or for establishing new law" and second, the Firm argues that Mr. Kennard's conduct does not, when viewed objectively, manifest an intentional or reckless disregard of the attorney's duties to the Court.[26]

These arguments are unpersuasive to the extent the Firm relies on them to excuse its multiple assertions as to "pro se" representation throughout this lawsuit. First, to the extent the Firm believed that it had a "nonfrivolous argument for extending, modifying,

---

[26] The *Management Registry* case cited by the Firm sets forth the Rule 11 standard, 2020 WL 4915832, at *4 ("However, the Eighth Circuit has announced that '[t]he standard under § 1927 and Rule 11 is whether the attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."'") (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990) (quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987))), but certainly does not support the Firm's argument that the COVID-19 pandemic warranted ignoring established Minnesota federal and state law that a corporate entity must be represented by an attorney licensed to practice in Minnesota.

or reversing existing law or for establishing new law" as to the prohibition on "pro se" representation by corporate entities, *see* Fed. R. Civ. P. 11(b)(1), it certainly never made that argument in any previous filing. Rather, the Firm repeatedly ignored the existing law holding that the Firm could not represent itself "pro se" through Mr. Kennard, who is not admitted to practice in Minnesota. Second, Mr. Kennard was told by the state court judge in July 2019 that a corporate entity in Minnesota must be represented by an attorney licensed to practice in Minnesota (Dkt. 1-3, Ex. 4 at 14 n.4 ("The court advised Mr. Kennard of the requirement for a corporation to be represented by a Minnesota attorney at the last conference call in July 2019. He has chosen to ignore the court's admonition.")) and was provided a citation to applicable authority in the District of Minnesota in Uptime's August 28, 2020 brief in support of its Revocation Motion (Dkt. 21 at 16). Nevertheless, Mr. Kennard continued to maintain that he could represent the Firm "pro se." Mr. Kennard's insistence that he could represent the Firm "pro se" under these circumstances, constitutes (at best) reckless disregard and (at worst) intentional disregard for the law and his duties to the Court, both of which are sanctionable under Rule 11.

As to the effect of the COVID-19 pandemic, the Court notes that the law prohibiting "pro se" representation of corporate entities makes no exception for entities in financial difficulties. *See Am. Dairy Queen Corp. v. Blume*, No. CV 11-358 (RHK/TNL), 2011 WL 13262111, at *3 (D. Minn. May 25, 2011) ("This Court recognizes that granting the present motion to withdraw substantially interferes with Defendant Blume Investments, LLC and Defendant Royal Professional Solutions, LLC's ability to litigate

in this action. As business entities, Blume Investments, LLC and Royal Professional Solutions, LLC may not be represented pro se.") (citing *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-202 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."); *United States v. Van Stelton*, 988 F.2d 70, 70 (8th Cir. 1993) ("[A] corporation cannot appear pro se.")). Indeed, in 1993, the U.S. Supreme Court in *Rowland* rejected two earlier decisions of lower courts holding that artificial entities may be represented by persons who are not licensed attorneys because they "neither follow federal precedent, nor have themselves been followed." 506 U.S. at 203 n.5. One of the cases rejected by *Rowland* was *In re Holliday's Tax Services, Inc.*, where a bankruptcy court permitted the sole shareholder of a closely held bankrupt corporation to represent the corporation on the grounds that otherwise the corporation would be denied its day in court, 417 F. Supp. 182, 184-85 (E.D.N.Y 1976), which is essentially the same rationale put forth by the Firm.

In view of *Rowland* and subsequent authority in the Eighth Circuit and this District, the Firm's COVID-19 argument is frivolous. The argument is also unsupported by the record, as it is undisputed that the Firm was making its "pro se" argument in Minnesota state court in July 2019, well before COVID-19 pandemic could have affected its business operations. (Dkt. 13 ¶ 8.) While the Court will not sanction the Firm for its state court conduct, this fact certainly undermines the Firm's post hoc (and unsupported) argument that the COVID-19 pandemic rendered the Firm incapable of hiring local counsel. In fact, the Firm did hire local counsel (Mr. Minenko) in July 2020 when

removing the case, presumably because it would have been impossible to file the Notice of Removal otherwise, further undermining this argument. *See Hall v. T.J. Cinnamon's, Inc.*, 121 F.3d 434, 435 (8th Cir. 1997) ("Furthermore, TJC's alleged inability to retain local counsel is belied by its own actions as it promptly hired local counsel following the entry of default judgment.").

In sum, the Court concludes that the Firm's after-the-fact rationale for its "pro se" argument does not constitute a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" permitted under Rule 11(b)(2). And the fact that the Firm made this after-the-fact argument in response to a Sanctions Motion; that it is clearly contradicted by certain facts, including Mr. Kennard's attempts to represent the Firm "pro se" in state court in 2019 and the Firm's retention of Mr. Minenko; and that it was made without any discussion of *Rowland* or any other applicable authority, confirms the frivolous nature of the argument in the Firm's Response to the Sanctions Motion and supporting Declaration.

The third aspect of the emailed documents that Uptime raised at the hearing was that the Response and Declaration again falsely represented that the Firm took some kind of action in Texas state court in September 2019. (*See* Def.'s Mem. Sanctions ¶ 2; Dec. 4, 2020 Decl. ¶ 8.) The Court has already discussed this factual contention with respect to the Firm's other filings, as well as the Firm's inadequate explanation (*supra* Section III.A.1), and concluded that it violates Rule 11(b)(3). The repetition of these purported facts at this stage, **after** they were found to be false statements in the undersigned's

Revocation Order (*see* Dkt. 60 at 27), is especially egregious, and certainly sanctionable, conduct.[27]

* * *

The Court will recap its findings. Throughout this litigation, the Firm repeatedly misrepresented to the Court what happened in the Texas state court matter in September 2019 and later by falsely stating that it filed "pleadings" in Texas to somehow safeguard its rights but that those pleadings were "ultimately" (i.e., at a later date) dismissed. The Firm did so in an attempt to proceed in federal court after having received a negative decision from the Minnesota state court, based on a legal theory for which the Firm offered "no justification" and for which Chief Judge Tunheim found "no plausible factual basis." (Dkt. 65 at 7.) The Firm also maintained that Mr. Kennard, who is not admitted to practice in Minnesota, could represent the Firm "pro so"—in complete disregard of binding authority. The Firm relied on the COVID-19 pandemic to excuse this conduct, even though the Firm was making its "pro se" argument in Minnesota state court in 2019, months before the COVID-19 pandemic began. And the Firm relied on a breach of contract counterclaim that the state court had dismissed as "not viable" to try meet the amount in controversy requirement. In fact, not only was the dismissal not mentioned in the Notice of Removal, but the Firm brought a Motion to Amend to "clarify" the

---

[27] Uptime raised the Certificate of Service on the emailed Response (*see* Def.'s Mem. Sanctions at 11) as a false statement. Because the Court has already found the Firm's conduct in connection with its Response to the Sanctions Motion and supporting Declaration sanctionable on different grounds, the Court does not address this argument. Uptime did not raise the Firm's other statements regarding jurisdiction in the Response as a basis for sanctions, and the Court will not address them here other than to say they become no less objectionable for having been repeated.

counterclaim—without explaining why the Firm thought it could bring the same breach of contract counterclaim that the state court had already dismissed and thus why the counterclaim was not futile. The Firm had repeated opportunities to withdraw arguments, correct its misstatements, or supply evidence to the Court that would justify its arguments. It did none of those—not even after the Court revoked Mr. Kennard's pro hac vice admission due to his:

> failure to comply with this District's disciplinary rules, specifically Local Rule 83.6(c)(1) and 83.6(d), and his failure to acknowledge his obligation to comply with those Rules; his undisputed unauthorized practice of law in Minnesota state court in violation of Minnesota Rule of Professional Conduct 5.5(a) and his persistent refusal to admit that Minnesota law prohibited him from representing the Firm in Minnesota state court (notwithstanding repeated warnings from the state court judge).

(*See* Dkt. 60 at 30.) Further, the Court cautioned the Firm that it appeared that several of its representations to the Court were "apparently false." (*Id.*; *see id.* at 17 (identifying representations).)

The undersigned does not recommend imposition of Rule 11 sanctions lightly. But in view of the Firm's unwarranted and unsupported contentions—which have been repeated throughout this litigation and none of which have been withdrawn, corrected, or explained—the Court concludes that sanctions are appropriate for the written submissions discussed above. Indeed, the only conclusion the Court can reach is that the Firm persisted in its conduct for the improper purposes of avoiding or unnecessarily delaying a return to state court by confusing and misleading the Court. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 884 F. Supp. 2d 895, 901, 904-05 (D. Minn. 2012) (finding that attorneys violated Rule 11 and § 1927 by filing complaint "that contained a host of

frivolous claims after being clearly and emphatically warned by this Court not to do so") ("Any reasonable and competent attorney would have responded to the Court's June 30 order by carefully going through the first amended complaint line-by-line and re-pleading only those claims that would pass muster under Rule 11. Instead of doing that, however, S & S chose to re-plead many of the same frivolous claims, thereby unreasonably and vexatiously multiplying the proceedings."); *id.* at 907-08 ("Because S & S has provided no explanation for how it could reasonably have believed that plaintiffs had 16 different causes of action against the Dobbins Defendants, the Court further concludes that S & S brought these claims to 'harass, cause unnecessary delay, [and] needlessly increase the cost of litigation' in violation of Rule 11(b)(1).") (alteration in original). The Court therefore recommends granting the Sanctions Motion to the extent set forth above.

**E. Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority**

Having reviewed the Firm's submissions to the Court and Uptime's argument's regarding sanctions with respect to Rule 11, the Court turns to the other bases for sanctions underlying the Sanctions Motion. At the hearing, Uptime confirmed its position that all conduct raised and arguments made were within the scope of Rule 11, as well as § 1927 and the Court's inherent authority. Having accepted most of Uptime's arguments and concluded that many of the contentions in many of the Firm's submissions violate Rule 11(b)(1), (2), and (3), the Court need not analyze the same issues under § 1927 and the Court's inherent authority. *See Chambers*, 501 U.S. at 50 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.

But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.")

Although the Court does not decide these questions here, it notes that some or all of the Firm's (or an attorney's) conduct sanctionable under Rule 11 likely would be found to have multiplied the proceedings unreasonably and vexatiously, recklessly disregarded the attorney's duties to the Court, or abused the judicial process. (*See* Dkt. 65 at 9 ("The Court agrees that removal of this case lacks an objectively reasonable basis, as it was blatantly untimely with strong indications of being a dilatory tactic.").) Indeed, it seems plain the Firm's conduct as a whole, which included assertions of facts and legal theories that were false, unsupported by the law, and repeated in multiple filings over several months, could easily be found to constitute conduct which multiplied the proceedings unreasonably and vexatiously, *see* 28 U.S.C. § 1927, and demonstrated a reckless (and possibly intentional) disregard of an attorney's duties to the Court, *see* *Mgmt. Registry*, 2020 WL 4915832, at *4. However, the Court declines to recommend sanctions under § 1927 because the Court is recommending sanctions under Rule 11. The Court therefore recommends denial of the Sanctions Motion as moot to the extent it seeks sanctions under § 1927 and the Court's inherent authority.

### F. Who Shall Be Sanctioned

Rule 11 allows the Court to sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The Court has so far focused on whether the submissions at issue violated the several requirements of Rule 11(b)(1) through (4), i.e., **what** violated Rule 11(b). In determining **who** violated that

Rule, the Court turns to examining the preliminary requirement of Rule 11(b), that belief in a submission to the Court and contentions therein be "formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). The Advisory Committee Notes to Rule 11 provide this following guidance regarding whether "an inquiry reasonable under the circumstances" has been conducted:

> The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment; *see also Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018) (quoting *Coonts*, 316 F.3d at 753).

Although the Sanctions Motion seeks to impose sanctions on both Mr. Minenko and Mr. Kennard (*see* Dkt. 52 at 1, 2-3; Dkt. 54 at 27-28), there is almost no dispute that Mr. Kennard is the, or at least an, attorney who violated or is responsible for the violations of Rule 11(b)(1)-(3) discussed in Sections III.A-D. To begin with, at the hearing on the Sanctions Motion, Mr. Kennard stated that Mr. Minenko had not done anything wrong and asked that, if any sanctions were to be imposed on Mr. Minenko, they be imposed on him instead. Mr. Kennard generally stated that he, or others at the Firm, prepared the documents at issue. Moreover, (1) all of the documents relevant here were signed by, filed by, and/or on behalf of, personally, Mr. Kennard; and (2) Mr. Kennard himself (though in Minnesota, unlawfully) represented the Firm in the litigation

in Texas and Minnesota state courts and signed the contract underlying the dispute (Dkt. 1-1, Ex. 1 at 26, 34 (exhibits to Minnesota state court complaint bearing Mr. Kennard's signature)), and so was presumably entirely familiar with the facts and issues. The Court therefore concludes that Mr. Kennard violated and/or is responsible for the violations of Rule 11(b).

With respect to Mr. Minenko, he stated, and Mr. Kennard did not dispute, that no documents submitted after July 17, 2020 were filed, submitted, or signed by Mr. Mineko, except for: (1) the Report of the Rule 26(f) Planning Meeting, which was filed on August 17, 2020 (*see* Dkt. 17) but not raised by Uptime as a submission violating Rule 11(b) (*see* Dkts. 52, 54), and so not relevant here; and (2) the Motion to Amend filed on August 31, 2020 (*see* Dkt. 26), which was filed by Mr. Kennard and included Mr. Minenko's signature without Mr. Minenko's knowledge or consent.[28] (Dkt. 58 at 8-9; Dkt. 59 ¶ 7.) The Court therefore concludes that Mr. Minenko is not responsible for any Rule 11 violations through the filing of the Motion to Amend or the filing or submission of any other document after July 17, 2020. Moreover, although Mr. Mineko appeared for the Firm at the hearings for the Revocation Motion, the Remand Motion, and the Sanctions Motion, Uptime does not argue that Mr. Minenko "later advocat[ed]" at those hearings any of the submissions or contentions that the Court has determined violated Rule 11(b), and the Court has not identified any such advocacy.

---

[28] Mr. Kennard's filing of a document including Mr. Minenko's electronic signature without Mr. Minenko's permission is, in and of itself, troubling.

These conclusions leave only the documents Mr. Minenko filed on behalf of the Firm on July 17, 2020: the Notice of Removal, and associated documents (which includes, for the purposes of who is responsible for the violations, the Answer and Counterclaim filed at Docket No. 4), and the Motion for Admission. (*See* Dkt. 58 at 10.) The Court concluded in Section III.B that the Motion for Admission did not violate Rule 11, so there is no violation based on that document for which to sanction either Mr. Minenko or Mr. Kennard.

With respect to the Notice of Removal, Uptime argues, "By serving as local counsel to Kennard Law, [and] signing the Notice of Removal, . . . [Mr. Minenko] participated in and enabled [Mr. Kennard's sanctionable conduct]." (Dkt. 54 at 2; *see also id.* at 28.) Uptime's counsel further argued at the hearing that Mr. Minenko's inquiry was not reasonable because Mr. Minenko filed the June 25, 2020 Minnesota state court summary judgment order as Exhibit 4 to the Notice of Removal. (*See* Dkt. 1-3, Ex. 4.) Uptime argues that the June 25, 2020 state court order contained enough information about several issues in this case, such as Mr. Kennard's unauthorized practice of law and the dismissal of the counterclaim, to raise questions about the removal that would have resulted in Mr. Minenko not filing the Notice of Removal.

Mr. Minenko argues that he conducted a reasonable prefiling inquiry under the circumstances because (1) he had little time to conduct an inquiry into the relevant facts and law, as he had less than twenty-four hours after being retained to file the documents, and (2) within this time constraint, he "had to and did rely on Kennard Law and its lead counsel for information regarding the facts and law underlying the Notice of Removal

Case 1:23-cv-00426-RP-JRT Document 17-31 Filed 08/15/24 Page 74 of 125

prepared by Kennard Law." (Dkt. 58 at 10-11; *see also* Dkt. 59 ¶¶ 2-4.) Mr. Minenko also stated, and Mr. Kennard did not dispute, that Mr. Kennard, or someone else at the Firm, drafted the Notice of Removal, though Mr. Mineko filed it. (*Id.* at 10-11 (citing Dkt. 59 ¶ 3).)

Although it is a close call, the Court concludes that Mr. Minenko conducted a reasonable prefiling inquiry, considering the time he had to conduct an inquiry and the representations he received from attorneys at the Firm concerning the facts and the law underlying the dispute and relevant to removal. Relying on the representations from attorneys at the Firm does not automatically excuse any oversight or errors on Mr. Minenko's part. *See Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 348 (N.D. Iowa 2007) ("Nor does the court find any reason to excuse Rivard's local counsel from joint responsibility for this sanction. 'The text of the rule does not provide a safe harbor for lawyers who rely on the representations of outside counsel.' . . . 'If [attorneys], acting as local counsel, signed [a party's pleading] relying entirely on the representations of [outside counsel], so much the worse for them.'") (alterations in original) (quoting *Val-Land Farms, Inc. v. Third Nat'l Bank in Knoxville*, 937 F.2d 1110, 1118 (6th Cir. 1991)). Still, under the circumstances here, where the sanctionable nature of certain statements in the Notice of Removal required careful parsing of the state court order by one unfamiliar with the Texas and Minnesota state court proceedings[29] and

[29] It is unclear why the state court judge's comments about Mr. Kennard's unauthorized practice of law would have prevented Mr. Minenko from filing the Notice of Removal, given that Mr. Kennard had retained Minnesota counsel to proceed in federal court. Similarly, the April 20, 2020 Answer and Counterclaim standing alone would not have raised any red flags to a lawyer unfamiliar with the case, and, as Mr.

where Mr. Minenko was "assured [by Mr. Salas] that such removal would be timely and warranted under the facts and applicable law" (Dkt. 59 ¶ 3), the Court concludes that Mr. Minenko conducted a reasonable prefiling inquiry under the circumstances. *See Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993) ("An attorney receiving a case from another attorney is entitled to place some reliance upon that attorney's investigation. A lawyer could reasonably expect another lawyer to inform him of previous adverse rulings that might affect the viability of the contemplated lawsuit.") (cleaned up). Moreover, even if the Court were to conclude that Mr. Minenko was to some degree responsible for the violations of Rule 11(b) in connection with the Notice of Removal and the April 20, 2020 Answer and Counterclaim, the Court would decline to exercise its discretion, pursuant to the law discussed *infra* Section III.G, to impose a sanction on Mr. Minenko. This is due to Mr. Minenko's limited involvement in this case, the short time he had to prepare the documents, and the fact that Mr. Kennard accepted full responsibility for all violations.[30] *See Jalin Realty Cap. Advisors, LLC A Better Wireless, Nisp, LLC v. Rhythm Stone Media Grp. LLC*, No. CV 11-165 (JRT/LIB), 2012 WL 12895689, at *7 (D. Minn. Feb. 22, 2012) (declining to award sanctions against supervising local counsel who had not "otherwise been much involved in litigating this case"). Moreover, the written

---

Minenko pointed out, no binding authority precluded basing the amount in controversy on counterclaim damages. As for the statements about the Texas state court proceedings, Uptime has not explained how Mr. Minenko could know they were false on 24 hours' notice—even the summary of the Texas state court proceedings in the June 25, 2020 Minnesota state court order did not make the falsities obvious. (*See* Dkt. 1-3, Ex. 4 at 8.)

[30] The Court expects that the Sanctions Motion itself is a sufficient deterrent to future local counsel who may be called on to facilitate a quick removal.

submissions Mr. Minenko actually prepared (Dkts. 58, 59, 68) (as compared to Notice of Removal and April 20, 2020 Answer and Counterclaim prepared by the Firm but filed by Mr. Minenko) and oral argument on the Remand Motion and Sanctions Motion[31] met Rule 11(b)'s requirements.

**G. Determining the Appropriate Sanction**

Having determined that many of the Firm's submissions to the Court violate one or more of Rule 11(b)(1), (2), and (3), and that Mr. Kennard is responsible for those violations, the final question is the appropriate sanction. Rule 11 provides:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; and order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4). "Rule 11's main purpose is to deter baseless filings . . . ." *Adams*, 863 F.3d at 1077 (cleaned up). "The court has broad discretion in the choice of sanctions." *Coonts*, 316 F.3d at 753 (citation omitted).

As for the nature of the sanction, the Court notes that Uptime requested both an award of "its reasonable attorneys' fees and costs in addressing these federal proceedings" and other nonmonetary sanctions, including revoking Mr. Kennard's pro hac vice admission and striking various papers. (Dkt. 54 at 28.) At this point, Mr. Kennard's pro hac vice admission has already been revoked (*see* Dkt. 60) and this case has been remanded (*see* Dkt. 65). This renders the request for revocation and to strike

---

31 Mr. Minenko appeared at the hearing on the Revocation Motion but made no substantive argument. (*See* Dkt. 49 at 17:6-16.)

papers, especially those considered with respect to the Remand Motion and Revocation Motion, moot or of little use. The Court recommends against those nonmonetary sanctions.

The Court concludes that monetary sanctions in the form of payment of at least part of Uptime's reasonable fees and expenses resulting from the violations are appropriate here. "Although Rule 11, as amended, de-emphasizes monetary sanctions and discourages direct payouts to the opposing party, the rule also recognizes that under unusual circumstances deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." *Murphy v. Aurora Loan Servs., LLC*, 859 F. Supp. 2d 1016, 1022 (D. Minn. 2012), *aff'd and remanded*, 518 F. App'x 511 (8th Cir. 2013) (affirming Rule 11 sanction of attorney but remanding for reconsideration of the amount of the award).

Here, Mr. Kennard had ample opportunity to consider his conduct and contentions more carefully and avoid this outcome. The Minnesota state court admonished him for various misconduct, though it deferred ruling on the sanctions motion. (Dkt. 1-3, Ex. 4 at 14-15.) Uptime sought fees in connection with the Remand Motion and outlined the factual and legal problems with the removal. (Dkt. 12 at 20-22.) The undersigned revoked Mr. Kennard's pro hac vice admission, rejected his contentions regarding his "pro se" representation of the Firm, and identified his factual representations regarding pleadings in Texas state court in September 2019 as "apparently false" in the Revocation Order. (Dkt. 60 at 18-20, 27.) Yet, Mr. Kennard renounced none of the contentions and

instead repeated them throughout this case, including in his final written submissions responding to the Sanctions Motion. (*See supra* Sections I.B.4, III.D.) Even at the hearing on the Sanctions Motion, he told the Court he was unsure of relevant facts, such as exactly what was filed in Texas in September 2019 or the status of the Firm's counterclaim after the Minnesota state court's dismissal of it, despite those facts having been repeatedly raised in Uptime's motions and despite Mr. Kennard's personal involvement in the state court cases. The Court concludes that a monetary penalty in the form of some portion of the reasonable attorney's fees and expenses incurred as a result of the sanctionable filings is necessary to deter repetition of similar conduct by Mr. Kennard or others. *See Murphy*, 859 F. Supp. 2d at 1022-23 (where attorney had already been sanctioned in another case "for filing almost identical claims as those filed here and . . . even after both Judge Montgomery's and Judge Schiltz's orders, [made] the same arguments that several judges in this district have concluded are frivolous," and "the previous sanctions have not deterred Mr. Butler from arguing frivolous claims," a higher sanction amount than already ordered was suitable, and "a monetary penalty in the form of part of the reasonable attorney's fees and expenses incurred from the date Mr. Butler filed the Complaint in this case is necessary to deter repetition of Mr. Butler's filings").

That leaves the question of the exact amount of the sanction. Uptime shall submit an affidavit regarding its attorney's fees and costs as described in Section IV that conforms to the following four points.

First, Uptime has already been awarded its fees and costs, pursuant to 28 U.S.C. § 1447(c), related to the Notice of Removal and Remand Motion proceedings in the

amount of $16,327, to be paid by the Firm. (Dkt. 65 at 8-9; Dkt. 70 at 2-3.) Accordingly, those fees and costs should not be included in the award under Rule 11. However, Uptime asked in connection with the Sanctions Motion that Mr. Kennard be made jointly and severally liable with the Firm for any amount awarded in connection with the Remand Motion. (*See* Dkt. 54 at 28 (generally requesting that Mr. Kennard and the Firm "be jointly and severally liable for Uptime's reasonable costs and attorneys' fees in addressing these federal proceedings").)[32] Awarding reasonable costs and fees incurred by Uptime in connection with the Remand Motion against Mr. Kennard and the Firm would be an appropriate Rule 11 sanction given the Firm's sanctionable conduct associated with the Notice of Removal and Remand Motion. *See Meyer*, 792 F.3d at 927 (affirming district court imposition of sanction under Rule 11 jointly and severally against party and its attorneys); *Ideal Instruments*, 243 F.R.D. at 348, 349 (imposing sanction of award of attorney's fees and costs under Rule 11 jointly against party and its attorneys). Given the Court's conclusion that Mr. Kennard was responsible for those violations, the Court recommends that Mr. Kennard be held jointly and severally liable with the Firm for the award of attorney's fees and costs that Chief Judge Tunheim already awarded pursuant to 18 U.S.C. 1447(c). *See* Fed. R. Civ. P. 11(c)(1) (court may impose sanctions on "any attorney, law firm, or party").

---

[32] An award of fees and costs was not sought against Mr. Kennard personally in Uptime's Remand Motion (*see* Dkt. 12 at 21-22; Dkt. 14 (proposed order)), and Chief Judge Tunheim ordered that the awarded amount was "to be paid by Defendant Kennard Law" (Dkt. 70 at 2).

Second, the Court has not concluded that all of the Firm's filings violated Rule 11, nor that all of Uptime's fees and costs "directly result[] from the violation[s]." Fed. R. Civ. P. 11(c)(4). Uptime should exclude any fees and costs that do not result from the violations identified by the Court here. As an example, no fees and costs in connection with the review or analysis of the Motion for Admission or the Order granting Mr. Kennard's pro hac vice admission (Dkts. 5, 6) should be included. The Court does not view Uptime's decision to file the Revocation Motion as "resulting from" a violation, so fees and costs related to preparing and filing that motion should not be included. Similarly, fees and costs related to Uptime's filing of a letter regarding a professional discipline petition, which Uptime did of its own accord and not in response to a document of Mr. Kennard's (*see* Dkt. 43), and Uptime's counsel's preparation for and appearance at the hearing on the Revocation Motion, which Uptime generally would have had to do for its own motion no matter how the Firm responded, should not be included. However, the Court has concluded that the Firm's Response to the Revocation Motion (Dkt. 34) violated Rule 11(b) in several respects. (*Supra* Section III.B.) Uptime requested, and was granted, permission to file a Reply brief to address the Firm's Response. (Dkts. 38, 39.) This Reply in part addressed the Firm's statement regarding proceedings in Texas in September 2019. (Dkt. 42 at 4-5.) Although this issue was only a part of Uptime's Reply, Uptime may include time associated with the Reply brief in its accounting, and the Court will determine at a later date how much, if any of those fees shall be awarded. As the prevailing party, Uptime may also include fees and costs incurred for the Sanctions Motion. *See* Fed. R. Civ. P. 11(c)(2).

Third, even as to the fees and costs that resulted from the violation, the Court will not necessarily award all such fees and costs. Not only does Rule 11 not require a full reimbursement, it provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4); *see also id.* ("The sanction may include . . . **if** imposed on motion and **warranted for effective deterrence**, an order directing payment to the movant of **part** or all of the reasonable attorney's fees and other expenses directly resulting from the violation.") (emphases added); *Murphy*, 859 F. Supp. 2d at 1023 ("Although the ultimate determination made by the Court will be how much of a sanction is necessary 'to deter repetition of the conduct or comparable conduct by others similarly situated' and no more, Fed. R. Civ. P. 11(c)(4), the Court finds it appropriate to consider the attorney's fees and costs expended by Defendants in this case in tailoring an appropriate Rule 11 sanction."); *id.* at 1025 ("Based on all of the above, the Court finds that payment of $50,000, which is a portion of the Bank Defendants' reasonable attorney's fees, is warranted and appropriate, and should deter Mr. Butler from filing more frivolous lawsuits and arguments with the Court.") (footnote and citation omitted). Similarly, while Rule 11 provides for awarding the prevailing party reasonable fees and costs, the award is permissive. Fed. R. Civ. P. 11(c)(2) ("If warranted, the court **may** award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.") (emphasis added).

Fourth, whatever amount is ultimately determined to be an appropriate sanction, in addition to that awarded to Uptime in the Remand Order, Mr. Kennard and the Firm—in its capacity as Mr. Kennard's law firm, not as a party—shall be jointly responsible for the

awarded fees and costs. *See* Rule 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.").[33]

## IV. <u>RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Plaintiff Uptime Systems, LLC's Motion for Sanctions (Dkt. 52) be **GRANTED IN PART** and **DENIED IN PART**.

2. Defendant Kennard Law, P.C. and attorney Alfonso Kennard, Jr., jointly and severally, be held liable for the attorney's fees and costs awarded in the Order Granting Attorney's Fees (Dkt. 70).

3. Attorney Alfonso Kennard, Jr. and the law firm Kennard Law, P.C., jointly and severally, be ordered to pay a monetary sanction, pursuant to Rule 11, to Plaintiff Uptime Systems, LLC.

4. Plaintiff Uptime Systems, LLC be ordered to submit an affidavit regarding its attorney's fees and costs within seven (7) days of an Order adopting this Report and Recommendation, and that Defendant Kennard Law, P.C. and attorney Alfonso Kennard,

---

[33] Mr. Kennard stated that he has "waived his shield to personal liability." (Def.'s Mem. Sanctions ¶ 35 (citing Dec. 4, 2020 Decl. ¶ 4 and *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)).) It is unclear what this means, but in any event, Rule 11(c)(1) permits the Court to sanction "any attorney, law firm, or party" for violations, and Uptime has moved for sanctions to be imposed on Mr. Kennard, an attorney, so the Court is within its authority to sanction Mr. Kennard personally regardless of any such waiver.

Jr. be given seven (7) days to file any objections only as to the attorney's fees and costs sought by Plaintiff Uptime Systems, LLC.

## V. <u>ORDER</u>

1. The Clerk of Court is ordered to docket the two documents emailed to the undersigned's chambers on December 4, 2020 by an employee of Kennard Law, P.C.

DATED: June 16, 2021

*<u>s/Elizabeth Cowan Wright</u>*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

*See* page 9

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

UPTIME SYSTEMS, LLC,

Plaintiff,

v.

KENNARD LAW, P.C.,

Defendant.

No. 20-1597 (JRT/ECW)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO REMAND AND MOTION FOR ATTORNEY'S FEES**

---

Steven M. Cerny, **SANTI CERNY, PLLC**, 222 South Ninth Street, Suite 1600, Minneapolis, MN 55402, for plaintiff.

Michael J. Minenko, **MINENKO LAW LLC**, 2051 Killebrew Drive, Suite 611, Bloomington, MN 55425, for defendant.

Plaintiff Uptime Systems, LLC ("Uptime") filed a Motion to Remand to State Court and Motion for Attorney's Fees after Defendant Kennard Law removed this breach of contract case from Minnesota state court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. Uptime argues that the case must be remanded to state court because removal is untimely, and, even if it were timely, the Court lacks subject matter jurisdiction since Uptime's Complaint claimed damages less than the amount in controversy required for diversity jurisdiction. Kennard Law asserts that its counterclaim damages, combined with Uptime's damages, exceed the amount in controversy and thus confer subject matter jurisdiction on the Court. The Court finds that, irrespective of the amount in

controversy, removal was untimely and not subject to any exceptions. Accordingly, the Court will grant the Motion to Remand.

## BACKGROUND

Plaintiff Uptime is a Minnesota Limited Liability Corporation that provides technology services, such as cloud storage, to law firms. (Notice of Removal ¶ 7, Ex. 1 ("Compl.") ¶¶ 1, 6, July 17, 2020, Docket No. 1-1.) Defendant Kennard Law is a law firm incorporated in Texas as a professional corporation, (Compl. ¶ 2), and was a customer of Uptime's services, (*id.* ¶ 8.) Kennard Law first entered into a contract for technology services with Uptime in 2011, and entered updated contracts in 2013, 2014, and 2017. (*Id.* ¶ 8–13; *see also* Notice of Removal ¶ 7, Ex. 4 (State Order Partial Summ. J. "State Order") at 7, July 17, 2020, Docket No. 1-3.)

The contracts between Uptime and Kennard Law provided that Kennard Law was responsible for removing data before its account was suspended, and that Uptime is not responsible for data if an account is suspended or terminated. (*See* Compl. ¶ 13, Ex. D ("Master Service Agreement") at 40, July 17, 2020, Docket No. 1-1.) The contracts also specified that any legal proceeding or dispute would be brought exclusively in state or federal court in Hennepin County, Minnesota. (Master Service Agreement at 43.)

Uptime alleges that after November 2018 Kennard Law stopped paying Uptime, and Uptime sent Kennard Law multiple past due notices and notices of account suspension. (Compl. ¶ 32, Ex. G at 52–72, July 17, 2020 Docket No. 1-1; State Order at 7–

8.) On January 30, 2019, Uptime sent Kennard Law a notice that its account would be terminated and all of its data would be irrevocably deleted on January 31, 2019, unless Kennard requested in writing that its data be retained. (Compl. Ex. G. at 72; State Order at 8.)

Despite the contract terms and forum selection clause, Kennard Law filed an action in Harris County, Texas on January 30, 2019, asking the Texas court to require Uptime to continue storing its data. (State Order at 8; *see also* Notice of Removal ¶ 7, Ex. 3 ("Pl. Mem. Supp. Summ. J.") at 11, July 17, 2020, Docket No. 1-2.) The Texas court entered an ex parte Temporary Restraining Order, and Uptime continued to store Kennard Law's data. (Pl. Mem. Supp. Summ. J. at 11.) Uptime then filed a Motion to Dismiss the Texas proceeding, which the Texas court granted on September 18, 2019. (*Id.* at 11–12.)

On February 6, 2019, Uptime filed a Complaint against Kennard Law in Minnesota state court for (1) breach of contract based on Kennard Law's failure to pay for Uptime's services since November 2018, and (2) unjust enrichment in the alternative to the breach of contract claim, and separately for ongoing data storage costs from storing Kennard Law's data following the Texas court TRO. (Notice of Removal at 1, July 17, 2020, Docket No. 1; State Order at 13.) Uptime pleaded damages of $45,787.82, exclusive of interest, costs, and fees. (Pl. Mem. Supp. Summ. J. at 19–20.) The Minnesota Complaint was served on Kennard Law on February 7, 2019. (State Order at 7.)

On February 28, 2019, Kennard Law filed a Motion to Dismiss the Minnesota state court Complaint, arguing lack of personal jurisdiction. (State Order at 7; Notice of Removal at 2.) The state court denied Kennard Law's Motion to Dismiss on October 18, 2019 because Kennard Law had agreed, via the contract forum selection clause, to submit to jurisdiction in Minnesota. (State Order at 7.) Kennard Law filed two Answers and Counterclaims, the second of which alleged counterclaim damages of $1.5 million. (*See* Decl. Steven M. Cerny ("Cerny Decl.") ¶ 5, Aug. 14, 2020, Docket No. 13; Cerny Decl. ¶ 14, Ex. 5, Aug. 14, 2020, Docket No. 13-5; 2nd Ans. & Countercl. ¶ 21, July 17, 2020, Docket No. 4.)

On February 28, 2020, Uptime filed a Motion for Summary Judgment in state court. (Cerny Decl. ¶ 17, Ex. 8, July 17, 2020, Docket No. 13-8.) Then, on March 6, Uptime filed a Motion for Sanctions and Default Judgment. (Cerny Decl. ¶ 18, Ex. 9, July 17, 2020, Docket No. 13-9.) The state court granted Uptime's motion on the breach of contract claim on June 25, 2020, awarded Uptime $17,400 in damages, *sua sponte* dismissed Kennard Law's counterclaims, and deferred Uptime's Motion for Sanctions. (State Order at 6.)

On July 15, 2020, Kennard Law removed the case to the District of Minnesota on the basis of diversity jurisdiction, asserting an amount in controversy over $75,000, based on the claims and counterclaims. (Notice of Removal at 1–2.) Uptime filed a Motion to Remand to State Court and Motion for Attorney's Fees on August 14, 2020. (Mot.

Remand & Mot. Att'y Fees, Aug. 14, 2020, Docket No. 10.) Kennard Law filed a Motion to Amend the Pleadings on August 31, 2020, (Mot. Amend Pleadings, Aug. 31, 2020, Docket No. 26), which the Magistrate Judge stayed until after the Court issues its decision on Uptime's Motion to Remand, (Order, Oct. 14, 2020, Docket No. 50.)

Uptime filed a Motion for Sanctions on November 20, 2020, (Mot. Sanctions, Nov. 11, 2020, Docket No. 52), which is currently pending before the Magistrate Judge.

## DISCUSSION

### I. STANDARD OF REVIEW

A defendant may remove a civil action to federal court only if the action could have been filed originally in federal court. *See* 28 U.S.C. § 1441(a)–(b); *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000). Following removal, "[a] plaintiff may move to remand the case if the district court lacks subject matter jurisdiction." *Junk v. Terminix Intern. Co.*, 628 F.3d 439, 444 (8th Cir. 2010) (citing 28 U.S.C. § 1447(c)). The party asserting federal jurisdiction bears the burden of demonstrating that removal was proper, and "all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (citation omitted).

**II. ANALYSIS**

Kennard Law removed this case from Minnesota state court to the District of Minnesota on grounds that it satisfies the requirements for federal diversity jurisdiction under 28 U.S.C. § 1332, which requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). The parties do not dispute that there is complete diversity, since Uptime Systems is a Minnesota limited liability corporation and Kennard Law is a Texas professional corporation with its principle place of business in Texas. However, Uptime asserts that the Court lacks jurisdiction because removal was untimely, the matter fails to meet the amount in controversy requirement, and removal is otherwise defective.

**A. Timeliness of Removal**

A defendant must file a notice of removal within 30 days of receiving a copy of the initial pleading. 28 U.S.C. § 1446(b)(1). The defendant is generally barred from later-asserting any ground for removal not attempted within the 30-day period. *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007). However, there is one exception to the 30-day rule: a notice of removal may be filed within 30 days of receipt of an amended pleading, motion, or order from which it may first be ascertained that the case is or has become removable. 28 U.S.C. § 1446(b)(3). Yet, even under this exception, a case cannot be removed based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 more than one year after the action begins, unless the plaintiff acted in bad faith to prevent

removal. 28 U.S.C. § 1446(c)(1). The time limits imposed by § 1446 are strictly construed. *See Percell's Inc. v. Cent. Tel. Co.*, 493 F. Supp. 156, 157 (D. Minn. 1980).

Kennard Law did not file a Notice of Removal within 30 days of receipt of the Complaint; Uptime served its state court Complaint on Kennard Law on February 7, 2019 and Kennard Law filed its Notice of Removal in this Court on July 15, 2020, over 17 months later. Because removal occurred 17 months after the state court proceedings commenced, no exception to the 30-day rule can apply here, as there are no allegations of bad faith conduct by Uptime. *See* 28 U.S.C. § 1446(c)(1). Thus, removal is untimely.

Kennard Law argues that removal is timely despite being outside the one-year window because Kennard Law sought to protect its interests in Texas state court first, delaying this removal action. Kennard Law offers no legal justification for this theory. Moreover, even if Kennard Law did identify some legal basis for the delay, the Texas case was dismissed on September 18, 2019, about ten months before Kennard Law filed its Notice of Removal, and Kennard Law is not pursuing an appeal or other relief from the Texas court. Thus, there is no plausible factual basis for Kennard Law's assertion that the Texas court proceedings caused the 17 month delay in removal of the Minnesota court proceedings to this Court.

While the lack of federal subject matter jurisdiction may be raised at any time before entry of judgment, *see* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

remanded."), Congress has placed strict time limits on a party's ability to remove the case from state court to federal court, *see Dahl*, 478 F.3d at 969 (analyzing congressional intent for interpretation of 28 U.S.C. § 1446(b)). Because removal is plainly untimely and not subject to any exceptions, the Court lacks jurisdiction to consider the substance of the case, and will remand the case to state court for further proceedings. However, the Court retains jurisdiction over the pending sanctions motion. *See Murphy v. Aurora Loan Servs., LLC*, 859 F. Supp. 2d 1016, 1019 (D. Minn. 2012); *accord Brady v. Hallmark Dev. Co., L.C.*, No. 04-40079, 2004 WL 729113, at *4–5 (S.D. Iowa Mar. 19, 2004) (remanding to state court because notice of removal was untimely but retaining jurisdiction to resolve pending motion for sanctions).

### B. Attorney's Fees and Costs

Section 1447 provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The decision to award fees and costs as part of a remand is discretionary. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). A district court "may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* When deciding whether to award fees and costs under § 1447(c), the Court "should recognize Congress'[s] desire to deter removals intended to prolong litigation and impose costs on the opposing party, while

not undermining Congress'[s] basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

Uptime argues that it is entitled to fees and costs because Kennard Law removed the case with the clear intent to cause delay and to avoid continued proceedings in state court, including Uptime's pending motion for sanctions, entry of default judgment, and trial. The Court agrees that removal of this case lacks an objectively reasonable basis, as it was blatantly untimely with strong indications of being a dilatory tactic. As such, the Court will award Uptime reasonable attorney's fees, to be determined based on submission of an accounting by Uptime.

## III. KENNARD LAW'S MOTION TO AMEND

Kennard Law filed a Motion to Amend its Answer/Counterclaims pursuant to Rule 15 on August 31, 2020, which the Magistrate Judge stayed pending resolution of the Motion to Remand. Because the Court finds that removal was untimely, the Court will deny the Motion to Amend as moot, since no amendment can overcome the deficiency. *See Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969) ("It is the situation at the time of removal which is determinative."). The Court also notes that Kennard Law's Motion to Amend does not comply with Local Rule 15.1(b) because the motion is not accompanied by a properly redlined copy of the proposed amendments.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Remand [Docket No. 10] is **GRANTED;**
2. Plaintiff's Motion for Attorney's Fees and Costs [Docket No. 10] is **GRANTED**;
3. Plaintiff shall provide the Court with an accounting of its expenses and fees incurred due to this Motion within 14 days of entry of this order; and
4. Defendant's Motion to Amend [Docket No. 26] is **DENIED as moot.**

DATED: February 8, 2021
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
Chief Judge
United States District Court

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Uptime Systems, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Kennard Law, P.C.,<br><br>Defendant. | Case No. 20-cv-1597 (JRT/ECW)<br><br><br><br>**ORDER** |

---

This matter is before the Court on Plaintiff's Motion to Revoke Pro Hac Vice Status of Alfonso Kennard, Jr. (Dkt. 19) ("Motion to Revoke"). For the reasons stated below, the Motion to Revoke is granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. State Court Proceedings

Plaintiff Uptime Systems, LLC ("Plaintiff" or "Uptime") initiated this case in Minnesota state court on February 7, 2019 by serving Defendant Kennard Law, P.C. ("Defendant" or "the Firm") with a summons and complaint. (Dkt. 1-3, Ex. 4 at 7.)[1] Uptime claimed that the Firm had breached a contract, under which Uptime provided technology services to the Firm, by failing to make payments and asserted a claim of unjust enrichment. (*Id.*; *see generally* Dkt. 1-1, Ex. 1 at 5-13.) Both the breach of contract and unjust enrichment claims asserted damages resulting in part from a breach of contract suit that the Firm had initiated in Texas state court on January 30, 2019 in which

---

[1] Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

the Firm had obtained a temporary injunction on January 31, 2019 that required Uptime to retain, and not delete, the Firm's data. (Dkt. 1-1, Ex. 1 at 11-13; Dkt. 1-3, Ex. 4 at 8, 13.)

The Texas suit was dismissed on September 18, 2019 based on a forum selection clause in the parties' contract. (Dkt. 1-3, Ex. 4 at 8; Dkt. 13-12, Ex. 12 at 2; *see also* Dkt. 34 ¶ 3.) According to Uptime, the Firm did not appeal, request reconsideration of, or seek other relief related to that dismissal (Dkt. 13 ¶ 2), and the Firm has not asserted otherwise (*see* Dkt. 34 ¶¶ 2-3).

The Minnesota state court case proceeded to a partial resolution. On February 28, 2020, Uptime moved for summary judgment and, in the alternative, default judgment, as well as sanctions based on the Firm's conduct in the litigation. (Dkt. 1-3, Ex. 4 at 7; *see generally* Dkt. 1-2, Ex. 3.) The court granted Uptime's motion for "summary judgment on its claim for breach of contract with respect to damages arising up to January 31, 2019" on June 25, 2020. (Dkt. 1-3, Ex. 4 at 15; *see also id.* at 6.) The court denied the motion "as to subsequent damages arising from breach of contract, unjust enrichment, and default judgment"; dismissed the Firm's counterclaim in light of its ruling; and deferred the motion for sanctions. (*Id.* at 15; *see also id.* at 6.) The court's order also required the Firm to acquire Minnesota counsel and that Minnesota counsel to make certain filings by July 15, 2020; if the Firm did not, the court would issue a default judgment on Uptime's remaining unjust enrichment claim. (*Id.* at 6, 14.) In addition to the order for partial summary judgment, on June 25, 2020, the court issued an order

setting forth pre-trial dates and deadlines in July and August 2020 and trial beginning on August 10, 2020. (*Id.* at 3-5.)

During the pendency of the suit in state court, as noted above, the Firm did not have Minnesota counsel and purported to be represented by Alfonso Kennard, Jr. ("Mr. Kennard"), a principal of the Firm. (Dkt. 1-3, Ex. 4 at 7 n.1; Dkt. 34 ¶ 11 (Mr. Kennard "continually sought to represent his Firm *pro se*"), ¶ 19 (similar).) The state court "advised Mr. Kennard of the requirement for a corporation to be represented by a Minnesota attorney at [a] conference call in July 2019" and noted, "He has chosen to ignore the court's admonition." (Dkt. 1-3, Ex. 4 at 14 n.4.) In its June 25, 2020 order for partial summary judgment, the court stated that "Kennard's representation of Defendant was ineffective, because corporations must be represented by an attorney, and Mr. Kennard is not licensed to practice in the State of Minnesota." (*Id.* at 14 (citing *Nicollet Restoration, Inc. v. Turnham*, 486 N.W.2d 753 (Minn. 1992)).) The court ordered the Firm to acquire Minnesota counsel by July 15, 2020 to avoid default judgment on the unjust enrichment claim (*id.* at 6, 14) and reiterated the requirement and the deadline in its order for trial (*id*. at 3 ("*Corporations and limited liability companies (LLCs)* ***must*** *be represented by a lawyer. Defendant must have a lawyer no later than July 15, 2020 registered with the court.*") (emphasis in original)).

**B. Federal Court Proceedings**

Instead of acquiring Minnesota counsel in state court and proceeding to trial, on July 15, 2020, the Firm filed a notice of removal in state court (Dkt. 1-4), and a notice of removal was filed in this Court on July 17, 2020 (Dkt. 1). A Motion for Admission Pro

Hac Vice ("Motion for Admission") for Mr. Kennard was also filed on July 17, 2020. (Dkt. 5.) The notice of removal and Motion for Admission were signed and filed by Michael J. Minenko, an attorney licensed to practice in Minnesota (Dkts. 1, 5), and all documents filed on July 17, 2020 were filed by Mr. Minenko (Dkts. 1, 3, 4, 5).

The Motion for Admission stated that Mr. Kennard is "an attorney admitted to practice and currently in good standing in the U.S. District Court for" the Southern District of Texas. (Dkt. 5 at 1 (Affidavit of Mr. Minenko); *id.* at 2 (Affidavit of Mr. Kennard) (same, along with claiming admission and good standing in U.S. District Court for the Western District of Texas).) The Court granted the Motion for Admission on July 28, 2020. (Dkt. 6.)

However, the record indicates that in July 2020, Mr. Kennard was suspended and not eligible to practice law in the State of Texas due to a failure to comply with CLE requirements. (Dkt. 13-14, Ex. 14 at 2; Dkt. 13-15, Ex. 15 at 2; *see also* Dkt. 44-3, Ex. 2 ¶ 3.) Uptime represented that Mr. Kennard "was suspended from the practice of law from on or about July 1, 2020, through at least July 23, 2020." (Dkt. 21 at 8 (citing Dkt. 22 ¶ 8; Dkts. 13-14, 13-15).) The supporting documents Uptime submitted (Dkt. 13-14, Ex. 14 at 2; Dkt 13-15, Ex. 15 at 2) indicate that Mr. Kennard was suspended as of July 23 but do not indicate when the suspension began or ended. However, Uptime's counsel also declared under penalty of perjury that "a representative from the State Bar of Texas" told him that Mr. Kennard "was suspended since on or about July 1, 2020." (Dkt. 13 ¶ 9.) The only evidence of Mr. Kennard's suspension provided by Mr. Kennard and the Firm is that, as of October 6, 2020, Mr. Kennard was again eligible to practice in Texas.

(Dkt. 44-4, Ex. 3 at 2.) They also represented that Mr. Kennard's "brief period ineligibility [sic] was the result of **earned** unreported MCLE hours . . . . As soon as MCLE reporting error [sic] was brought to Mr. Kennard's attention, he quickly fixed the error that unreported his earned MCLE hours." (Dkt. 44-2, Ex. 1 ¶ 10 (emphasis in original); *see also* 44-3, Ex. 2 ¶ 3.) Notably, Mr. Kennard and the Firm did not dispute that Mr. Kennard was suspended at least between July 1 and July 28, 2020. They also did not state when Mr. Kennard's Texas suspension ended.

Neither Mr. Kennard nor Mr. Minenko informed the Court of Mr. Kennard's suspension from practice in Texas at the time of the Motion for Admission or any time after Mr. Kennard's pro hac vice admission to this Court. Instead, the suspension was first brought to the Court's attention by Uptime in connection with a Motion to Remand and Motion for Attorneys' Fees and Costs ("Motion to Remand") filed on August 14, 2020 (Dkt. 10) and was later identified as a basis for Uptime's Motion to Revoke (*see* Dkt. 21 at 8, 17, 18-19).

Uptime filed its Motion to Revoke on August 27, 2020, with its brief and supporting materials filed by August 29, 2020. (Dkts. 19-25.) The Firm filed its brief in opposition and supporting materials on September 18, 2020. (Dkts. 34-35.) Uptime requested and was granted permission to file a reply brief (Dkts. 38, 41), which was filed on September 28, 2020 (Dkt. 42). Uptime further sent a letter on October 5, 2020, requesting that the Court consider a Petition for Disciplinary Action against Mr. Kennard filed by the Director of the Office of Lawyers Professional Responsibility in the Minnesota Supreme Court and attaching a copy of the petition. (Dkts. 43, 43-1.) On

September 22, 2020, the Court set the hearing on the Motion to Revoke for 9:30 a.m. on October 7, 2020. (Dkt. 40.) On October 6, 2020, the evening before the hearing, the Firm filed an Opposed Motion to File a Sur-Reply (Dkt. 44) and attached the proposed Sur-Reply and supporting materials (Dkt. 44-2, Ex. 1; Dkts. 44-3, 44-4).

At the October 7 hearing, the Court granted the Firm's motion to file a sur-reply (Dkt. 44) and took the Motion to Revoke (Dkt. 19) under advisement. (Dkt. 45.) Mr. Kennard did not appear at the hearing, and the Court described the proceedings as follows:

> Shortly before the October 7 hearing, the undersigned's chambers received a call from Mr. Kennard's associate informing chambers that Mr. Kennard's law firm (located in Houston, Texas) thought there was a time zone difference between Minnesota and Texas and calendared this hearing for 8:30 a.m., and that Mr. Kennard had a 9:00 a.m. motion hearing in another matter that he thought would be finished by 9:30 a.m., but advising the Court that he may be late for the hearing in this matter. The Court waited 30 minutes for Mr. Kennard and, having received no word from Mr. Kennard or his law firm, began the hearing at 10:04 a.m. Steven Cerny appeared for Plaintiff and Defendant's local counsel Michael Minenko appeared for Defendant. After Mr. Cerny made his argument in support of his motion, Mr. Mine[n]ko was given the opportunity to respond. As of 10:30 a.m., argument was complete, and Mr. Kennard had not made an appearance, nor had anyone from his law firm contacted the undersigned's chambers.

(Dkt. 46 at 1-2; *see also* Dkt. 49 at 2:25-4:3, 17:19-18:7.) The Court stated at the hearing and in an Order the same day that "if [Mr. Kennard] wants to make an oral argument on the Motion to Revoke, Mr. Kennard is ordered to file a letter showing good cause why he should be permitted to do so, in view of his failure to appear at the October 7 hearing, no later than 9:00 a.m. on October 8, 2020"; if no letter was timely filed, the Court would decide the Motion to Revoke based on the written submissions and arguments of counsel at the hearing. (Dkt. 46 at 1; *see also* Dkt. at 18:8-19:7.) Mr. Kennard filed a timely

letter on October 8, 2020, but only addressed the hearing by stating, "I apologize that the hearing I was in ran much longer than expected. The hearing was conducted by a Texas State tribunal." (Dkt. 47.) The rest of the letter was directed at the merits of the Motion to Revoke and the suit generally. (*Id.*)[2] Mr. Kennard did not ask for the opportunity to present oral argument on the Motion to Revoke.

There are three other motions (at various procedural stages) filed in this case in addition to the Motion to Revoke. First, Uptime filed its Motion to Remand (Dkt. 10) that is currently set for argument before Chief U.S. District Judge John R. Tunheim on December 1, 2020 (Dkt. 51). Second, the Firm filed an Opposed Motion to Amend Defendant's Answer/Counterclaims (Dkt. 26), for which the undersigned stayed the deadline for Uptime to file its opposition brief and will set a deadline for that brief and a hearing, if appropriate, after Chief Judge Tunheim issues a decision on the Motion to Remand (Dkt. 50). Third, on November 20, 2020, Uptime filed a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority (Dkt. 52), to which Mr. Minenko has filed a response (Dkt. 58) and the Firm and Mr. Kennard have not yet responded.

## II. LEGAL STANDARD

"It is well established that admission of an attorney to practice law is not a right but a privilege." *LaFond v. Anderson*, No. CV 07-4066 (PAM/JSM), 2008 WL 11460674, at *5 (D. Minn. Sept. 9, 2008) (quoting *United States v. Gorman*, 661 F. Supp.

---

[2] Since Mr. Kennard was not given leave to file a document addressing the merits of any issue, the Court does not consider the contents of this letter in the decision in this Order, except as discussed in Section III.D.

1087, 1088 (D. Minn. 1987), *aff'd sub nom. United States v. Stelten*, 867 F.2d 446 (8th Cir. 1989)), *aff'd*, 2008 WL 11460675 (D. Minn. Oct. 9, 2008). However, some courts have recognized a distinction between **denial** of pro hac vice admission compared to **revocation** of pro hac vice admission. *See, e.g.*, *LabMD, Inc. v. Tiversa Holding Corp.*, No. CV 15-92, 2020 WL 1428935, at *10 (W.D. Pa. Mar. 24, 2020) ("While 'admission pro hac vice is a privilege, not a right, revocation of that privilege, once bestowed, sends a strong message which works a lasting hardship on an attorney's reputation.'") (quoting *Raub v. US Airways, Inc.*, No. CV 16-1975, 2017 WL 5172603, at *2 (E.D. Pa. Nov. 8, 2017)); *Mruz v. Caring, Inc.*, 166 F. Supp. 2d 61, 70 (D.N.J. 2001) ("While it is indeed true that admission pro hac vice is a privilege, not a right, . . . revocation of that privilege, once bestowed, sends a strong message which works a lasting hardship on an attorney's reputation."). "'There are, however, "no national standards" on disqualification of pro hac vice counsel, whether and to what limited extent an attorney has a property right in retaining pro hac vice status after it has been granted, or what level of procedural due process is required before revocation of pro hac vice admission.'" *Mgmt. Registry Inc. v. A.W. Cos.*, No. 017CV05009JRTKMM, 2019 WL 5388488, at *8 (D. Minn. Oct. 22, 2019) (quoting *Siupa v. Astra Tech, Inc.*, No. Civ.A. 10-10525-LTS, 2012 WL 6622492, at *3 (D. Mass. Dec. 18, 2012) (adopting the Third Circuit's approach of providing notice and an opportunity to respond to an attorney when the district court seeks to revoke pro hac vice status)).

While there may be no "national standards" as to what is required for revocation, the law is clear that "[v]iolation of the rules of professional conduct provides grounds for

disqualification or revocation of pro hac vice status." *LaFond*, 2008 WL 11460674, at *5 (collecting cases); *see also Mgmt. Registry*, 2019 WL 5388488, at *8 (quoting *Data Sys. Analysts, Inc. v. Netplex Gr., Inc.*, 187 F.R.D. 181, 183-84 (D.N.J. 1999)) ("Revocation of *pro hac vice* admission is a recognized sanction for violation of court orders or disciplinary rules."). This Court's Local Rules provide, "An attorney who is admitted to the court's bar or who otherwise practices before the court must comply with the Minnesota Rules of Professional Conduct, which are adopted as the rules of this court. An attorney commits misconduct by failing to comply with the Minnesota Rules of Professional Conduct." D. Minn. LR 83.6(a). "Thus, the Minnesota Rules of Professional Conduct are applicable to all attorneys practicing before this District Court." *LaFond*, 2008 WL 11460674, at *5 (citing *United States v. Gutierrez*, 351 F.3d 897, 902 (8th Cir. 2003)). Further, under this Court's Local Rules, "[i]f an attorney, law firm, or party violates these rules or is responsible for a rule violation, the court may impose appropriate sanctions as needed to protect the parties and the interests of justice." D. Minn. LR 1.3 (providing a non-exclusive list of potential sanctions).

Here, Uptime contends that Mr. Kennard's pro hac vice admission should be revoked based on violations of various Minnesota Rules of Professional Conduct, Local Rules of this Court, and other court rules and orders. With these standards in mind, the Court turns to Uptime's Motion to Revoke.

## III. ANALYSIS

Uptime argues that Mr. Kennard's pro hac vice admission should be revoked for several reasons: unauthorized practice of law in Minnesota state court, false

representations to the Minnesota state court and this Court, disregard for court rules and orders in state court and this Court, a false affidavit in support of the motion for admission pro hac vice, Mr. Kennard is a necessary fact witness, and Mr. Kennard has demonstrated that he does not possess the good professional character to practice in this Court. (*See generally* Dkts. 21, 42.) At the hearing, Uptime additionally argued that Mr. Kennard had failed to cooperate with the Office of Lawyers Professional Responsibility and that his failure to do so is an additional reason for revocation. (Dkt. 49 at 6:21-7:2, 12:17-13:7.)

### A. Violations of this Court's Rules Regarding Attorney Admission and Discipline

Local Rule 83.5(d) governs the pro hac vice admission of non-resident attorneys: "An attorney who does not represent the United States or one of its officers or agencies, who resides outside of Minnesota, and who is not admitted to practice before the Supreme Court of Minnesota may be permitted to appear before the court pro hac vice" only if, among other requirements, the nonresident attorney is "a member in good standing of the bar of a federal district court other than this court." D. Minn. LR 83.5(d)(1). Additionally, "[a] member of the court's bar must move for the nonresident attorney's admission pro hac vice," and the motion must include "an affidavit signed by the nonresident attorney." D. Minn. LR 83.5(d)(3)(C)(ii).

Uptime argues that Mr. Kennard violated Local Rule 83.5(d)(1)'s requirement that an attorney must be a member in good standing of the bar of another federal district court to be eligible for pro hac vice admission because at the time the Motion for Admission was filed, Mr. Kennard "was suspended from the practice of law in Texas, his only state

court bar admission, and falsely asserted in his Motion and Affidavit that he was a member in good standing of the United States District Court for the Southern District of Texas, and for the Western District of Texas, both of which require an attorney to be admitted to the highest court of a state, and in good standing of that bar." (Dkt. 21 at 18-19.) Uptime additionally argues that this false assertion was a violation of the Minnesota Rule of Professional Conduct regarding candor toward the tribunal (*id.* at 16-17), which states that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer," Minn. R. Prof. Conduct 3.3(a)(1).

The Court has carefully considered this issue and, although it is a close call, concludes that there is not a clear violation of Local Rule 83.5(d)(1) or Rule 3.3(a)(1) with respect to Mr. Kennard's Motion for Admission and Affidavit that would support revocation of Mr. Kennard's pro hac vice admission on this basis alone. Although Uptime is correct that both the United States District Court for the Southern District of Texas and the United States District Court for the Western District of Texas require an attorney to be admitted to the highest court of a state, only the Western District of Texas explicitly requires an attorney to be "in good standing" of that bar. W.D. Tex. R. AT-1(a)(1); S.D. Tex. LR 83.1(A). Further, those requirements appear in the courts' rules for **admission** of attorneys—not what is required for the attorney to remain in good standing in those Districts.

The relevant question here is what effect Mr. Kennard's suspension from practicing in the State of Texas had on his status in the United States District Court for

the Southern District of Texas and the United States District Court for the Western District of Texas as an attorney already admitted to those courts. The Western District of Texas does not appear to have any automatic reciprocal suspension based on discipline in another court; that court's rules merely require that an attorney self-report if "the attorney loses or relinquishes, temporarily or permanently, the right to practice in any court of record." W.D. Tex. R. AT-7(e)(2). While it is unknown whether Mr. Kennard self-reported his Texas suspension to the Western District of Texas, there is nothing in the record indicating that Mr. Kennard was in fact suspended (or otherwise not in good standing) in that District when the Motion for Admission was filed. It therefore does not appear that there was anything false about Mr. Kennard's affidavit with the Motion for Admission with respect to his statements regarding the Western District of Texas. Consequently, the Court finds no violation of Minnesota Rule of Professional Conduct 3.3(a)(1) with regard to this representation. Further, based on the record, it appears that Mr. Kennard fulfilled this Court's requirement for nonresident attorneys to be a member in good standing of another federal district court in order to be admitted pro hac vice under Local Rule 83.5(d).

Mr. Kennard's status in the Southern District of Texas is a more difficult question. That court's Rules of Discipline provide, "A lawyer disciplined by another court in the United States shall promptly notify this court . . . . A lawyer suspended or disbarred by another court in the United States shall immediately cease to practice before this court." S.D. Tex. LR App. A, R. 3(A). Uptime's counsel has declared under penalty of perjury that he was informed by a representative from the State Bar of Texas that Mr. Kennard

had been suspended "since on or about July 1, 2020" (Dkt. 13 ¶ 9) and submitted documents showing that Mr. Kennard was suspended as of July 23, 2020 (Dkt. 13-14, Ex. 14 at 2; Dkt 13-15, Ex. 15 at 2). Neither Mr. Kennard nor the Firm has disputed that he was suspended from July 1, 2020 to at least July 23, 2020, and their submissions only show that his suspension was lifted as of October 6, 2020. (*See* Dkt. 44-3, Ex. 2 ¶ 3; Dkt. 44-4, Ex. 3 (evidence that suspension was lifted as of October 6, 2020).) The Court therefore concludes from the record that Mr. Kennard's license to practice law in the State of Texas was suspended when the Motion for Admission was filed on July 17, 2020 (Dkt. 5). Nevertheless, the Court cannot find that Mr. Kennard made a false statement regarding the Southern District of Texas in his Affidavit that supports revocation of his pro hac vice admission. This is because, while the Southern District of Texas's rules state that "[a] lawyer suspended or disbarred by another court in the United States shall immediately cease to practice before this court," S.D. Tex. LR App. A, R. 3(A), the rule does not explicitly state that such a lawyer is not "in good standing" or is "suspended" in that court. It may be that the Southern District of Texas construes "immediately cease to practice before this court" as "suspended" or as terminating a lawyer's "good standing," but it not entirely clear.[3] In view of this lack of clarity, the Court is reluctant to conclude

---

[3] The parties did not provide any authority on whether the Southern District of Texas considers a lawyer subject to the local rule "suspended" or "not in good standing." The Court notes that one case from that jurisdiction seems to suggest that the admission of an attorney who must cease to practice pursuant to this rule is "suspended," but the correct understanding of that case and the rule remains unclear given that a suspension notice was issued in that case. *See Davis v. A.S.U.I. Healthcare & Dev. Ctr.*, No. CIV.A. H-13-3126, 2014 WL 948644, at *1 (S.D. Tex. Mar. 11, 2014) (Clerk's office "suspended" attorney's admission to practice pursuant to S.D. Tex. LR App. A, R. 3(A) after he was suspended from Texas bar).

Case 23-20064 Document 17-3 Filed 02/25/24 Page 107 of 125

that Mr. Kennard's statement that he was "a member in good standing" of the bar of the United States District Court for the Southern District of Texas (Dkt. 5 at 2) was false and take action based on it.

For all these reasons, the Court rejects Uptime's argument that Mr. Kennard violated Local Rule 83.5(d)(1) and/or Minnesota Rule of Professional Conduct 3.3(a)(1) through his affidavit for admission such that his pro hac vice admission should be revoked.

However, even assuming that Mr. Kennard did not violate Local Rule 83.5(d)(1) and/or Minnesota Rule of Professional Conduct 3.3(a)(1), attorneys who practice before this Court have an affirmative duty to report "in writing" to the Clerk of Court any "[d]isbarment, suspension, public reprimand, or other public discipline imposed by any other court or jurisdiction." D. Minn. LR 83.6(c)(1). And importantly, this District has automatic reciprocal discipline such that "[u]nless the court orders otherwise, an attorney who has been temporarily or permanently prohibited from practicing before any other court or jurisdiction automatically forfeits the right to practice before this court for the same period." D. Minn. LR 83.6(d).

As discussed above, Mr. Kennard and the Firm have not disputed that Mr. Kennard was suspended by the State of Texas when he applied for pro hac vice admission and was admitted in this Court. The Court therefore finds that Mr. Kennard had automatically forfeited his right to practice before this Court as soon as he was admitted on July 28, 2020 (*see* Dkt. 6) based on Local Rule 83.6(d)'s automatic

reciprocal discipline. Mr. Kennard also filed documents in this Court in August and September 2020 (*see, e.g.*, Dkts. 26, 30, 34) and participated in email communication with the undersigned's chambers on August 17, 2020. Based on the record, the Court therefore concludes that Mr. Kennard practiced in this Court during his suspension from the Texas state bar, in violation of Local Rule 83.6(d).[4] Moreover, Mr. Kennard violated Local Rule 83.6(c)(1) by failing to "promptly report" his suspension by the State of Texas "in writing" to the Clerk of Court. This is an ongoing violation, as Mr. Kennard still has not reported his suspension in writing nor provided the required documents to the Clerk of Court. For these reasons, the Court finds that Mr. Kennard violated Local Rules 83.6(c)(1) and 83.6(d).

The Court is troubled by the fact that Mr. Kennard and the Firm did not address the automatic reciprocal discipline provision of Local Rule 83.6(d)(1) or Mr. Kennard's duty to report pursuant to Local Rule 83.6(c)(1). Indeed, they did not even clarify the dates of Mr. Kennard's suspension. Their failure to do so suggests that Mr. Kennard either is not familiar with the Local Rules or views these provisions as technicalities that he can disregard because his suspension was "brief" and apparently related to the failure to report earned CLE hours (rather than misconduct). (*See* Dkt. 44-2, Ex. 1 ¶ 10.) This in itself is troubling, as "[a]n attorney who is admitted pro hac vice, like any other attorney, must read and follow the Local Rules of this District, and must comply with the Minnesota Rules of Professional Conduct." *Blue Cross Blue Shield of Minn. v. Hyman*,

---

[4] Mr. Kennard and the Firm had ample opportunity to provide the Court with the dates of Mr. Kennard's suspension, including when his suspension was lifted, and failed to do so.

No. 13-CV-0530 (PJS/SER), 2013 WL 12155779, at *1 (D. Minn. Apr. 9, 2013) (citing D. Minn. LR 83.6(d)). The Court recognizes that the current form Affidavit of Proposed Admittee does not require the proposed admittee to state whether the admittee has been temporarily or permanently prohibited from practicing before any other court or jurisdiction. *See* https://www.mnd.uscourts.gov/sites/mnd/files/forms/PHV-Form-Motion-and-Instructions.pdf (last visited November 21, 2020). However, had the Court known of Mr. Kennard's suspension by the State of Texas when considering the Motion for Admission, the Court would not have granted the Motion in view of the automatic suspension in this District that would then result from the automatic reciprocal discipline provision of Local Rule 83.6(d)(1). Rather, the Court would have deferred ruling on the Motion for Admission until Mr. Kennard cured his Texas suspension.

There may be circumstances where violations of this type would not warrant revocation of pro hac vice admission. But here, where the written submissions fail to address these Rules or recognize the need for this Court to regulate the attorneys who practice before it, and where Mr. Kennard not only failed to appear on his own behalf at the October 7, 2020 hearing on the Motion to Revoke but also declined a second opportunity for oral argument and to answer the Court's questions, the Court concludes that Mr. Kennard's conduct in connection with his suspension by the State of Texas and violations of Local Rules 83.6(c)(1) and 83.6(d) provide a sufficient basis to revoke Mr. Kennard's pro hac vice admission to this Court. *See Mgmt. Registry*, 2019 WL 5388488, at *8 (quoting *Data Sys. Analysts*, 187 F.R.D. at 183-84) ("Revocation of *pro hac vice* admission is a recognized sanction for violation of court orders or disciplinary rules.");

D. Minn. LR 1.3 ("If an attorney, law firm, or party violates [the Local Rules] or is responsible for a rule violation, the court may impose appropriate sanctions as needed to protect the parties and the interests of justice.").

**B. Unauthorized Practice of Law**

The Minnesota Rules of Professional Conduct provide that: "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction . . . ." Minn. R. Prof. Conduct 5.5(a). Generally, to practice law in Minnesota and appear in Minnesota state courts, a person must be a member of the bar of Minnesota, though a person may appear personally when a party. Minn. Stat. § 481.02, subdiv. 1 ("It shall be unlawful for any person or association of persons, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law, to appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct, or defend the same, except personally as a party thereto in other than a representative capacity . . . ."). Further, "[i]t is well settled under Minnesota common law that a corporation must be represented by an attorney in legal proceedings." *Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307, 309 (Minn. 2005) (citing *Nicollet Restoration*, 486 N.W.2d at 754; *Cary & Co. v. F.E. Satterlee & Co.*, 166 Minn. 507, 509, 208 N.W. 408, 409 (1926)). "[T]he right of a party to a suit in court to appear in person therein does not entitle him to appear for a corporation, even if he owns all its

capital stock, for the corporation is a distinct legal entity." *Nicollet Restoration*, 486 N.W.2d at 754 (quoting *Cary*, 166 Minn. at 509, 208 N.W. at 409).

Uptime contends that Mr. Kennard "has knowingly and brazenly engaged in the unauthorized practice of law in Minnesota for approximately seventeen months" and that his "conduct constitutes a knowing and ongoing violation of Rule 5.5(a) of the Minnesota Rules of Professional Conduct, and corresponding law." (Dkt. 21 at 16.)

The Court agrees that Mr. Kennard violated Minnesota Rule of Professional Conduct 5.5(a) and engaged in the unauthorized practice of law in Minnesota state court. First, the Minnesota state court's order for partial summary judgment confirms that Mr. Kennard represented the Firm in state court in violation of Minnesota law and that he was aware of the issue since at least July 2019, stating that "[a]t all times, Defendant purported to act through" Mr. Kennard; that the court had "advised Mr. Kennard of the requirement for a corporation to be represented by a Minnesota attorney at [a] conference call in July 2019," though "[h]e [chose] to ignore the court's admonition"; and that "Kennard's representation of Defendant was ineffective, because corporations must be represented by an attorney, and Mr. Kennard is not licensed to practice in the State of Minnesota." (Dkt. 1-3, Ex. 4 at 7, 14, 14 n.4.)

Moreover, the Firm has not disputed Uptime's contention or the Minnesota state district court's description of the proceedings. In fact, the Firm has repeatedly admitted that Mr. Kennard has represented the Firm—in a so-called "pro se" manner—in the state court litigation and continues to assert that he "continue[s] to represent the Firm itself *pro se*." (Dkt. 34 ¶ 11 (Mr. Kennard "continually sought to represent his Firm *pro se*"); *id.* ¶

19 ("continually made good-faith efforts protect [sic] his firm pro se"); Dkt. 44-2, Ex. 1 ¶ 2 (citing Dkt. 44-3, Ex. 2 ¶ 4) ("[Mr. Kennard] is representing his law firm as *pro se*."); *id.* ¶ 15 ("As asserted numerous times since the inception of this dispute, . . . Mr. Kennard . . . is the *Pro Se* representative of the Firm . . . ."); Dkt. 44-3, Ex. 2 ¶ 2 ("I [Mr. Kennard] continue to represent the Firm itself *pro se*.").) This "pro se" argument is inconsistent with the law. First, Minnesota law does not permit **anyone** to represent the Firm "pro se" in Minnesota state court. Rather, "a corporation must be represented by a licensed attorney when appearing in district court." *Nicollet Restoration*, 486 N.W.2d at 756; *see also Ebersen, Inc. v. City of Minneapolis*, No. CIV. 03-6482RHKAJB, 2004 WL 483165, at *1 (D. Minn. Mar. 11, 2004) (citing and quoting *Osborn v. Bank of the United States*, 22 U.S. 738, 830 (1824); *Com. & R.R. Bank of Vicksburg v. Slocomb, Richards & Co.*, 39 U.S. 60, 65 (1840); *Nicollet Restoration*, 486 N.W.2d at 754).[5] Second, the definition of "pro se" is "[f]or oneself; on one's own behalf; without a lawyer." Black's Law Dictionary (11th ed. 2019). Mr. Kennard was not a party to the state court action and was not acting for himself or on his own behalf; he was acting for and on behalf of the Firm. Mr. Kennard cannot erase the fact that he is a lawyer (albeit a lawyer not licensed in Minnesota) or the reality of the corporate form simply by stating that he was representing the Firm "pro se." Rather, Mr. Kennard did precisely what is warned against in *Nicollet Restoration*, which explained:

> "**Were it possible for corporations to prosecute or defend actions in person, through their own officers**, men unfit by character and training,

---

[5] The Court also notes that, as under Minnesota law, a corporation must be represented by counsel in federal courts and cannot proceed pro se. *Osborn*, 22 U.S. 738, 829-30; *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996).

> men, whose credo is that the end justifies the means, disbarred lawyers or **lawyers of other jurisdictions would soon create opportunities for themselves as officers of certain classes of corporations and then freely appear in our courts** as a matter of pure business not subject to the ethics of our profession or the supervision of our bar associations and the discipline of our courts."

486 N.W.2d at 755 (emphasis added) (quoting *Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook Cnty.*, 543 F.2d 32, 33-34 (7th Cir. 1976)). In sum, it is clear that Mr. Kennard—a lawyer not admitted to practice in Minnesota—violated Minnesota Rule of Professional Conduct 5.5(a) by representing the Firm in Minnesota state court.

The question is therefore whether this Court should revoke Mr. Kennard's pro hac vice admission based on his clear violation of a Minnesota Rule of Professional Conduct. *See LaFond*, 2008 WL 11460674, at *5 ([V]iolation of the rules of professional conduct provides grounds for disqualification or revocation of pro hac vice status."). In *LaFond*, the court revoked an attorney's pro hac vice status based on the attorney's pre-suit contact with an unrepresented person in violation of Minnesota Rule of Professional Conduct 4.3. 2008 WL 11460674, at *6-8. Similarly, the Court concludes that revocation based on Mr. Kennard's violation of Rule 5.5(a) is appropriate.[6] Mr. Kennard

---

[6] The Court is aware that the Minnesota state court considered papers filed by Mr. Kennard on behalf of the Firm even though they were "technically invalid" because "there is a strong judicial preference for substantive resolution of cases." (Dkt. 1-3, Ex. 4 at 7 n.1.) Nevertheless, this Court is entitled to regulate the ability of attorneys to practice before it, and will not disregard an undisputed and unabashed violation of the Minnesota Rules of Professional Conduct when doing so. Moreover, as previously discussed, the state court required the Firm to amend its pleadings to have them "signed by an attorney who is licensed in Minnesota," and cautioned the Firm that "if [the Firm] fails to have the pleadings signed by a Minnesota attorney by July 15, 2020, the court will issue a default judgment on the unjust enrichment claim" and that "[a]ll further appearances must be though Minnesota counsel; Defendant must acquire such counsel,

was repeatedly advised by the state court that he could not act on behalf of the Firm because he was not licensed in Minnesota. (*See, e.g.*, Dkt. 1-3, Ex. 4 at 7, 14, 14 n.4.) Mr. Kennard disregarded the state court's warnings and continued with his representation of the Firm in that proceeding for several months. Worse yet, Mr. Kennard continues to this day to insist that his representation of the Firm in the state court proceeding was permissible—without identifying any legal authority supporting that position. Instead, he and the Firm try to justify his conduct by claiming that the Firm did not have the financial resources to hire an outside attorney (Dkt. 34 ¶ 11; Dkt. 44-2, Ex. 1 ¶¶ 2, 15; Dkt. 44-3, Ex. 2 ¶¶ 2, 4) and that the state court's alleged lack of jurisdiction over the suit means that Mr. Kennard's conduct before that court is "irrelevant" (Dkt. 34 ¶ 19). Again, Mr. Kennard and the Firm have identified no authority supporting these positions. Moreover, the fact that the Firm has retained counsel to represent it in this Court undermines its argument that it could not afford to hire an attorney licensed in Minnesota in the state court action.

In sum, the Court concludes that Mr. Kennard's clear violation of Minnesota Rule of Professional Conduct 5.5(a) from at least July 2019 (when the state court advised him that he could not represent the Firm) through the pendency of the state court action, combined with the Firm and Mr. Kennard's unabashed insistence that Mr. Kennard is entitled to violate Rule 5.5(a) and Minnesota state law regarding who may represent a corporate entity in court—notwithstanding the warnings of the state court—demonstrates

---

and such counsel must file a certificate of representation and register for e-service on this case by July 15, 2020." (*Id.* at 14.)

that Mr. Kennard does not possess "good private and professional character and hence is not qualified for admission to practice pro hac vice in this case." *Gorman*, 661 F. Supp. at 1088; *see also id.* at 1091 (citing *In re GLS*, 745 F.2d 856 (4th Cir. 1984)) ("A United States District Court has authority to deny an attorney's application for admission when the court is not satisfied that he possesses good private and professional character, albeit he was previously admitted to practice in a state court."). This is sufficient reason for the Court to revoke Mr. Kennard's pro hac vice admission to this Court.

**C. Necessary Fact Witness**

The Minnesota Rules of Professional Conduct provide that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," subject to three exceptions. Minn. R. Prof. Conduct 3.7(a). Uptime argues that Mr. Kennard is a necessary witness in this case, because "as the Managing Shareholder of Kennard Law, [he is] the individual with whom many of the events in the lawsuit occurred" and he "is the only individual identified to likely have discoverable information on behalf of [the Firm] with respect to this lawsuit." (Dkt. 21 at 11-12, 19.) Addressing one of the exceptions to the necessary witness rule, "disqualification of the lawyer would work substantial hardship on the client," Minn. R. Prof. Conduct 3.7(a)(3), Uptime further argues that "being represented by local counsel should not cause a hardship, much less a substantial hardship" because Mr. Kennard "has also already hired local counsel in Minnesota" and "advertised that he has obtained million dollar and multi-million dollar verdicts" (Dkt. 21 at 19). The Firm did not address whether Mr. Kennard is a necessary witness or any of the exceptions to the rule, though in addressing the allegations of

unauthorized practice of law, it contends that it did not have the financial resources to hire an outside attorney. (Dkt. 34 ¶ 11; Dkt. 44-2, Ex. 1 ¶¶ 2, 15; Dkt. 44-3, Ex. 2 ¶¶ 2, 4.)

The Court agrees that Mr. Kennard is a necessary witness in this case, based on Uptime's representations that the Firm itself has only identified Mr. Kennard as an individual likely to have discoverable information for this case. *See Merch. & Gould, P.C. v. Premiere Glob. Servs., Inc.*, No. CV0903144JRTJSM, 2010 WL 11646623, at *4 (D. Minn. Nov. 15, 2010) (concluding that attorney "is likely to be a necessary witness at trial pursuant to Rule 3.7" because, in part, "[h]e disclosed himself as such in the Rule 26(a)(1) disclosures"). Uptime's contention that Mr. Kennard is a necessary witness is further supported by the Firm's and Mr. Kennard's own statements that Mr. Kennard is the sole owner of the Firm, as the sole owner is likely to be a witness in a business dispute such as this. (*See* Dkt. 44-2, Ex. 1 ¶¶ 2, 13, 15; Dkt. 44-3, Ex. 2 ¶¶ 4, 6.) And the Firm has not disputed Uptime's argument or argued that an exception to Minnesota Rule of Professional Conduct 3.7(a) applies; indeed, the Firm never addressed Rule 3.7(a).

The Court also concludes that disqualification of Mr. Kennard via revocation of his pro hac vice admission would not work substantial hardship on the Firm. *See* Minn. R. Prof. Conduct 3.7(a)(3). To the extent the Firm's statements regarding its financial resources are applicable to this issue, the statements are unsubstantiated and do not provide a sufficient basis for the Court to conclude that there is financial hardship to the Firm if Mr. Kennard cannot represent it. Further, the Firm has had local counsel since removing this action to federal court in July 2020. (*See* Dkt. 1.) Although the hearing on

Uptime's Motion to Remand is soon (Dkt. 51), local counsel is presumably familiar with the issues (*see* D. Minn. LR 83.5(d)(2)(A) (local counsel must "participate in the preparation and presentation of the case")), and the Court does not view the legal and factual issues of that motion as so complex that local counsel will not have sufficient time to prepare.[7] Moreover, the Firm would be hard-pressed to claim hardship because "[i]t is relevant to the analysis of hardship that 'one or both parties could reasonably foresee that the lawyer would probably be a witness.'" *Merch. & Gould*, 2010 WL 11646623, at *6 (quoting Minn. R. Prof. Conduct 3.7, cmt. 4); *id.* ("It seems improbable to this Court that after disclosing himself as a key witness that [plaintiff Merchant & Gould] could not have anticipated an issue arising regarding [the attorney's] dual role as both a critical fact witness and advocate.").

Beyond the Motion to Remand, this case is essentially at a halt until that motion is decided, as the Court canceled the Rule 16(f) pretrial conference, has not set a schedule, and stayed proceedings on the Firm's motion to amend its pleading pending a decision on the Motion to Remand. (Dkt. 18 at 2; Dkt. 50.) Local or any other counsel will therefore have time to prepare for the next stage of this proceeding. The Court therefore concludes that there is not substantial hardship to the Firm if Mr. Kennard cannot represent it further in this matter. *LaFond*, 2008 WL 11460674, at *9 (concluding that client would not be unduly prejudiced by revocation of counsel's pro hac vice admission because local

---

[7] Local counsel was previously reminded of his obligations under Local Rule 83.5(d)(2) (Dkt. 18 at 3 (citing Dkt. 5 at 1)) and was ordered to appear at the hearing on the Motion to Revoke (Dkt. 39), which he did (Dkts. 45, 46). The Court therefore expects that local counsel is sufficiently involved to address the Motion to Remand and the Motion for Sanctions.

counsel was involved since commencement of the case and the case had "not procedurally advanced to the point that Erhard's removal from the case would jeopardize LaFond's action").

The Court also notes that although the text of Minnesota Rule of Professional Conduct 3.7(a) prohibits a necessary witness from acting as an advocate only **at trial**, other courts in this District have nonetheless disqualified attorneys at earlier stages on the basis of the rule. *See LaFond*, 2008 WL 11460674, at *8-9 (case at "early stages" and discovery not completed). Disqualification is especially appropriate now in light of Mr. Kennard's apparent inability to distinguish between the roles he may play in this case, as evidenced by his repeated assertion that he represented the Firm "pro se" in Minnesota state court. It is clear to the Court that Mr. Kennard does not appreciate the difference between Mr. Kennard the witness, Mr. Kennard the advocate, and the corporate entity the Firm. The blurring of these lines is likely to work undue prejudice to Uptime in discovery and pre-trial matters, in addition to at trial. *See Merch. & Gould*, 2010 WL 11646623, at *6 ("Clifford would like to begin taking and defending depositions, but when a lawyer is acting as both advocate and witness, it is practically impossible to know how those dual roles affect questioning. Clifford has unique knowledge of the facts in this case, and it is entirely possible that his questioning could become testimony. The resulting prejudice to the opposing party is invisible, because only the lawyer knows when he has crossed the line from advocacy to testimony. The same is true of evidentiary motions.") (citations omitted). For these reasons, the Court finds revocation of Mr. Kennard's pro hac vice status based on Rule 3.7(a) is warranted.

**D. Uptime's Other Arguments**

The Court views each of the three grounds above as sufficient bases on their own (and in combination) to revoke Mr. Kennard's pro hac vice admission. The Court will also briefly address other grounds raised by Uptime and arising from Mr. Kennard's conduct before this Court.

First, the Court declines to address the events in state court (other than the undisputed fact that Mr. Kennard represented the Firm for several months in state court) that Uptime argues constitute violations of the Minnesota Rules of Professional Conduct and/or state court rules and orders. For example, Uptime relies on representations made by Mr. Kennard to the state court judge or in affidavits and certificates of service filed in state court. (*See* Dkt. 21 at 16-18.) The Court is reluctant to delve into the specifics of the state court proceeding and finds doing so is unnecessary for purposes of the Motion to Revoke. The Court, however, disagrees with the Firm's contention that such conduct is "irrelevant" (Dkt. 34 ¶ 19) and notes that the Firm does not directly dispute Uptime's description of what occurred.

Second, the Court declines to address the Petition for Disciplinary Action against Mr. Kennard pending in the Minnesota Supreme Court. (*See* Dkts. 43, 43-1.) Mr. Kennard disputes at least some of the allegations in the petition (Dkt. 44-2, Ex. 1 ¶¶ 1-3, 14), the petition has not been adjudicated, and, given that the Court has found three independent bases for granting the Motion to Revoke, it is not necessary to consider the contents of the petition. The Court also does not address any issue related to email

communications with the Court on August 17, 2020 (*see* Dkt. 21 at 8-9, 17), since the communications are not in the record and are not necessary to decide this motion.

Third, the Court does have serious concerns about representations made by Mr. Kennard to this Court regarding the Texas state court action filed on January 30, 2019. Mr. Kennard, on behalf of the Firm, repeatedly stated, "On or about September 2019, Defendant took measures to safeguard its operations by filing pleadings with Texas state court." (Dkt. 34 ¶ 2; Dkt. 30 ¶ 2; Dkt. 44-3, Ex. 2 ¶ 7.) He further repeatedly stated, "This on-going process in Texas was later ultimately resolved as follows: the Court decided that a choice of venue in Minnesota applied." (Dkt. 34 ¶ 3; Dkt. 44-3, Ex. 2 ¶ 8.) But there were no "pleadings"—or, as far as the record evidence here shows, any documents—filed by the Firm in Texas state court in September 2019, and the Texas action was not resolved "later": the Texas court issued an Amended Order Granting Defendant's Motion to Enforce Forum Selection Agreement and to Dismiss on September 18, 2019. (Dkt. 13-12, Ex. 12 at 2.) According to Uptime, the Firm did not appeal, request reconsideration of, or seek other relief related to that dismissal (Dkt. 13 ¶ 2), and the Firm has not asserted otherwise and has not filed copies of the referenced pleadings for the Court's review (*see* Dkt. 34 ¶¶ 2-3). The Court considers the Firm's statements—made more than once—to be false statements of fact to this Court and therefore to violate—more than once—Minnesota Rule of Professional Conduct 3.3(a), which provides that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ." Minn. R. Prof. Conduct 3.3(a).

Fourth, the Court also agrees with Uptime that the Firm's response to the Motion to Revoke was untimely. (Dkt. 42 at 2-3.) The supporting materials for the Motion to Revoke were filed and complete on August 29, 2020. (Dkts. 22-25.) The Firm then had seven days (as calculated under the Federal Rules of Civil Procedure) to file a response. D. Minn. LR 7.1(b)(2) (time limit for responding party filings for nondispositive motions). The Firm filed its response on September 18, 2020, well after the seven-day deadline. (Dkt. 34.)

The Firm argues that its response was timely because the Motion to Revoke is subject to the rule for dispositive motions, and so the appropriate deadline is twenty-one days. (Dkt. 44-2, Ex. 1 ¶¶ 5-8 (citing D. Minn. LR 7.1(b)(4)(B)(i), 7.1(c)(2)). The Firm argues that this is so because the motion seeks injunctive relief, "in the form of seeking to retrain [sic] Mr. Kennard from participating in this Federal forum." (*Id.* ¶ 6; *id.* ¶ 8 ("Here, it is apparent that Plaintiff seeks injunctive remedy by filing Plaintiff's Motion to Revoke Pro Hac Vice, (i.e. restraining Mr. Kennard from serving as *Pro Se*) allows for this Motion to be treated according to dispositive motion response time, twenty-one days.").)

The Court rejects this argument. A motion to revoke pro hac vice status falls squarely within the Court's authority to sanction, supervise, discipline, and otherwise regulate the conduct of attorneys who appear before it. *See Wescott Agri-Prod., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991)) (district court has inherent power to manage its affairs, including supervising and disciplining attorneys who appear before it); D. Minn.

LR 1.3 (court may impose sanctions as needed if an attorney violates the Local Rules). The undersigned, who issued the order granting the motion for Mr. Kennard's pro hac vice admission (Dkt. 6), similarly has the authority to revoke that status, *see LaFond*, 2008 WL 11460675 (reviewing magistrate judge order revoking pro hac vice status as an order on a "nondispositive matter"). The Firm offers no legal authority for its contention that the type of relief sought here, which is in the nature of a sanction, is properly considered injunctive relief, and "[a] majority of circuits treat sanctions as non-dispositive matters unless the sanction awarded by a magistrate judge disposes of a claim." *Smith v. Bradley Pizza, Inc.*, No. 17CV02032ECTKMM, 2019 WL 2448575, at *10 (D. Minn. June 12, 2019) (collecting cases addressing sanctions under Fed. R. Civ. P. 37(b)), *aff'd*, 821 F. App'x 656 (8th Cir. 2020). Indeed, the Firm and Mr. Kennard lack any legal basis for their argument that the Motion to Revoke is a motion for injunctive relief or a dispositive motion.

Fifth, the Court is troubled by Mr. Kennard's failure to appear at the October 7 hearing (Dkt. 45) and the letter he filed in response to the Order giving him an opportunity "to file a letter **showing good cause why he should be permitted to do so** [to make an oral argument on the Motion to Revoke], in view of his failure to appear at the October 7 hearing" (Dkt. 46 (emphasis added)). The proffered excuse for his failure to appear was a mistaken belief that Texas and Minnesota were in different time zones and that Mr. Kennard thought the hearing was scheduled for 8:30 a.m. Texas time and therefore scheduled a hearing for 9:00 a.m. Texas time (that he thought would be over by 9:30 a.m.). Even if this were true, it does not suggest that Mr. Kennard was taking the

Motion to Revoke seriously. Moreover, the letter filed in response to the Order directing Mr. Kennard to show cause if he wanted an opportunity to make an oral argument—which the Court offered to Mr. Kennard due to the seriousness of the Motion to Revoke—made no argument seeking oral argument. (Dkt. 47.) Instead, the letter made several miscellaneous arguments as to the merits of the Motion to Revoke, as well as the lawsuit as a whole and other unrelated topics. (Dkt. 47.)

The Court would not normally revoke an attorney's pro hac vice admission because the attorney filed a brief late, failed to appear for a hearing, and filed a nonresponsive letter. Rather, the Court describes this conduct because, when taken in combination with the conduct described in Sections III.A-C, it supports the Court's conclusion that Mr. Kennard has demonstrated an unwillingness or inability to litigate this case in the manner expected in this District and required by the Minnesota Rules of Professional Conduct and this Court's Local Rules, not to mention comply with the Court's orders.[8] *See Blue Cross Blue Shield of Minn.*, , 2013 WL 12155779, at *1 (denying motion for pro hac vice admission because motion did not comply with local rules and because applicant "time and again has demonstrated that he is unwilling or unable to follow the Local Rules of this District" and "the Court has serious doubts about [his] willingness or ability to follow the [Minnesota Rules of Professional Conduct]").

[8] Uptime argues that the Firm's local counsel's failure to sign papers in this Court is a violation of Local Rule 83.5(d)(2)(A) and this Court's August 18, 2020 Order (Dkt. 18). (Dkt. 42 at 3-4.) The rule does not require local counsel to sign papers. *Compare* D. Minn. LR 83.5(d)(2)(A), *with* D. Del. LR 5.1.1(a) ("Unless otherwise ordered, the name, Delaware state bar identification number, address, telephone number, and email address of local counsel shall be typed or printed under the signature line [of papers presented for filing].").

* * *

The Court takes the question of whether to revoke an attorney's pro hac vice admission very seriously.  Mr. Kennard's failure to comply with this District's disciplinary rules, specifically Local Rule 83.6(c)(1) and 83.6(d), and his failure to acknowledge his obligation to comply with those Rules; his undisputed unauthorized practice of law in Minnesota state court in violation of Minnesota Rule of Professional Conduct 5.5(a) and his persistent refusal to admit that Minnesota law prohibited him from representing the Firm in Minnesota state court (notwithstanding repeated warnings from the state court judge); and the fact that he will be a necessary witness at trial in violation of Minnesota Rule of Professional Conduct 3.7(a)(3) individually—and certainly in combination—provide sufficient basis to revoke Mr. Kennard's pro hac vice admission. As described in Section III.D of this Order, Mr. Kennard's conduct in connection with the Motion to Revoke, including making apparently false representations and failing to take the motion seriously, does not give the Court any reason to think his ability or willingness to comply with the Local Rules and Professional Rules of Conduct will improve in the future.  For these reasons, the Court grants the Motion to Revoke.

## IV. ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

Plaintiff's Motion to Revoke Pro Hac Vice Status of Alfonso Kennard, Jr. (Dkt. 19) is

**GRANTED** and Alfonso Kennard, Jr.'s pro hac vice admission to the District of Minnesota is **REVOKED**.

DATED: November 25, 2020

*s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge