**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **RYAN PETERSON** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CASE NO. 1:23-CV-00646-RP** |
| | § | |
| | § | |
| **LOTTERY.COM, INC. d/b//a** | § | |
| **SPORTS.COM, INC. d/b/a** | § | |
| **AUTOLOTTO, INC.** | § | |
| | § | **JURY DEMANDED** |
| ***Defendant.*** | § | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**

---

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE**:

COMES NOW, Ryan Peterson, ("Plaintiff") files this response in opposition to Defendant Lottery.com d/b/a Sports.com d/b/a AutoLotto, Inc.'s 12(b)(6) Motion to Dismiss, filed on August 24, 2024. Plaintiff will respectfully show the Court as follows:

## I. LEGAL STANDARD UNDER RULE 12(B)(6)

1. Rule 12(b)(6) motions to dismiss are disfavored and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion. If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). However, the court may consider documents attached to a motion to dismiss under 12(b)(6); if the documents are referenced in the Plaintiff's complaint and central to the Plaintiffs's claims. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9

(5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).

2. Defendant asserts it has dispositive authority on two of Plaintiff's causes of action, fraud, and breach of contract. **Dkt 39 ¶** 9. In response to Plaintiff's fraud claim, Defendant cites *Turner v. Harvard MedTech*, a federal case interpreting fraud under Neveda law, which states that fraud allegations must specifically identify names of individuals who made the misrepresentation, that those individuals had authority to speak for the corporation. **Dkt 39 ¶** 7.

a. Plaintiff identifies several executive officers, board members, and the chairman of the board, by name, who either have actual authority or apparent authority under Texas law to bind Defendant to its misrepresentations and contracts. **Dkt. 38 ¶** 29, 67. *Elaazami v. Lawler Foods, Ltd.*, No. 14-11-00120-CV (Tex. App. Feb. 7, 2012) (Texas law recognizes that a company's placement of an officer or employee in a certain position will provide the agent with apparent authority to bind the company in usual, customary, or ordinary contracts that a reasonable person would view as being consistent with an agent's scope of authority in that position).

3. Defendant asserts that on Plaintiff's breach of contract claim, the SAC does not: (1) state that Lottery.com's board of directors directly authorized Plaintiff's employment agreement; or (2) allege how Ryan Dickinson had authorization to make the "employment agreement" on Lottery's behalf. **Dkt 39 ¶** 8.

a. The Motion fails to consider the existence of a unilateral contract. Plaintiff has alleged that an enforceable contract was created when Plaintiff performed work on behalf of Defendant and in return Defendant promised to compensate Plaintiff upon completion of his performance. **Dkt. 38 ¶ 57**. If the facts were taken liberally in Plaintiff's favor the Court

could infer that an enforceable unilateral contract was created each time Plaintiff performed work on behalf of Defendant.

4. Plaintiff asserts there is no legal basis to support Defendant's 12(b)(6) Motion, and it should be **<u>DENIED IN ITS ENTIRETY</u>** as to Plaintiff's (i) FLSA violation claim, (ii) breach of contract claim; (iii) fraud claim; and (v) unjust enrichment/quantum meruit claim.

## II. ARGUMENT AND AUTHORITIES

### A. <u>PLAINTIFF HAS ADEQUATELY PLED A FLSA CLAIM UNDER 29 U.S.C. § 206 (A) BASED ON DEFENDANT'S FAILURE TO PAY MINIMUM WAGES</u>

5. Defendant alleges that Plaintiff is not asserting minimum wage violations under the FLSA, therefore, the claim should be dismissed. The SAC alleges minimum wage violations throughout:

1) "This case is brought under 29 U.S.C. § 206(a) based on Defendant's failure to pay minimum wages" **<u>Dkt. 38 ¶ 3</u>**;

2) "Between July 22, 2022 and present (June 2024) Defendant has failed to pay Plaintiff minimum wages as required under the FLSA" **<u>Dkt. 38 ¶ 45</u>**;

3) "Plaintiff respectfully demand that he be paid federal minimum wage compensation as required by the FLSA, as a nonexempt employee, for every hour worked in any workweek for which he was not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law" **<u>Dkt. 38 ¶ 52</u>**;

4) "Plaintiff's claim for breach of the employment agreement, does not seek unpaid minimum wages or unpaid overtime compensation, and is not preempted by the FLSA because Plaintiff seeks damages for breach of contract above and beyond the FLSA's recovery of unpaid minimum and overtime wages" **<u>Dkt. 38 ¶ 60</u>**; and

5) "breach of contract claim separate and distinct from one brought under the FLSA for failure to pay minimum wages" **<u>Dkt. 38 ¶ 63</u>.**

6. In the SAC, Plaintiff cites to the FLSA Fact Sheet #70 which provides instruction to employers on exemption status and how to compensate furloughed employees "free-and-clear" for any week they performed any work. However, the Fact Sheet #70 in itself does not negate the fact

that Plaintiff is seeking compensation for minimum wage violations, which has been clearly alleged.

7. In the Motion, Defendant cites *Miller v. Infinite Percent Partners, LLC*, a Northern District of California case, which found the Plaintiff did not even attempt to allege she was a nonexempt employee. **Dkt. 39** ¶ 11; *Miller v. Infinite Percent Partners, LLC*, 2021 U.S. Dist. LEXIS 114026, at *4-7 (N.D. Cal. June 17, 2021). Defendant further asks this Court to reject Plaintiff's assertion that he is not exempt under the FLSA because Plaintiff has sufficiently alleged he was compensated less than $684 during the relevant period based on a California state case interpreting the FLSA as "not mandating that employers pay employees any particular salary levels if they are exempt." *Arambula v. Irvine Unified Sch. Dist.*, 2016 Cal. Super. LEXIS 32777, at *2 (Cal. Super. Ct. October 21, 2016).

a. Defendant fails to cite relevant case law in the Fifth Circuit that would be relevant. What distinguishes this case from *Miller* and *Arambula* is that Plaintiff has alleged that he was a nonexempt employee from July 22, 2022 to present. Ironically, in *Miller* the **Plaintiff pled she received a $5,000 payment during the three-month period**, which exceeded federal minimum wage requirements. **Exhibit A**. Is it not a relevant fact that the Plaintiff in *Miller* alleged she received minimum wages and at least $684 a week during the relevant period; when Plaintiff Peterson has alleged he has received *no compensation* during the relevant period? The Court in Miller dismissed the FLSA claim on that basis, which is clearly distinguishable. Plaintiff can seek minimum wages and contractual wages. *See Karna v. BP Corp. North America, Inc.*, 11 F. Supp. 3d 809 (S.D. Tex. 2014)(finding breach of contract claim not preempted because it was independent of the FLSA).

8. Defendant may argue Plaintiff was exempt based on allegations of his annual salaries,

which may be above minimum wage, however, there is no evidence of any paystub or evidence that Plaintiff was paid according to his salary. Thus, these factual determinations are premature. *White v. U.S. Corr., LLC*, 996 F.3d 302, 310 (5th Cir. 2021).

9. At the pleading stage, in *Rodriguez v. Gold & Silver Buyers, Inc.*, Civ. A. No. 4:12-CV-1831, 2013 WL 5372529, at *3 (S.D. Tex. Sept. 24, 2013), the Southern District of Texas court relied on *Hoffman v. Cemex, Inc.*, No. Civ. A. H-09-3144, 2009 WL 4825224 *3 (S.D. Tex. Dec. 8, 2009), and *Qureshi v. Panjwani*, CIVIL ACTION No. H-08-3154 (S.D. Tex. June 9, 2009) ("finding plaintiffs' allegations that they were nonexempt, regularly worked more than forty hours per week, and were not paid time-and-a-half to be factual allegations and not legal conclusions") to deny a Rule 12(b)(6) motion. Similarly, here, it is too premature to rule on Plaintiff's exemption status and his allegation that he was nonexempt is a factual allegation and not a legal conclusion. Based on the decisions of sister federal courts in Texas and the Fifth Circuit, this Court should **deny** Defendant's 12(b)(6) Motion as to Plaintiff's FLSA minimum wage violation claims under 29 U.S.C. § 206(a)(1) et seq. *White v. U.S. Corr., LLC*, at 310 (5th Cir. 2021); *Hoffman v. Cemex, Inc.*, at *3 (S.D. Tex. Dec. 8, 2009); *Qureshi v. Panjwani*, (S.D. Tex. June 9, 2009).

10. Plaintiff lost any exemption he had in July 2022, when Defendant failed to compensate Plaintiff at minimum $684 per week, which Plaintiff has adequately alleged he received no compensation during this time. *Qureshi v. Panjwani*, CIVIL ACTION No. H-08-3154 (S.D. Tex. June 9, 2009). The burden of establishing an exemption remains with the employer, who must do so by a preponderance of the evidence. *Adams v. All Coast, L.L.C.*, 988 F.3d 203, 206 (5th Cir. 2021). Defendant has failed to allege that Plaintiff was in fact paid more than $684 per week during the relevant time period [July 22, 2022 to present] to prove that an FLSA exemption applies.

11. Plaintiff has adequately alleged he received no compensation, let alone the minimum wages

he is owed, for any and all weeks he performed work for Defendant during the relevant period [July 2022 to present]. Plaintiff's allegation provides fair notice that he lost any exemption status during the relevant period and he was a nonexempt employee who continued to work for Defendant. Defendant has not satisfied its burden by a preponderance of evidence that an exemption applies, and any argument is premature. Plaintiff received no weekly compensation; thus no exemption applies during the relevant time period [July 22, 2022 to present], and Defendant's request that this Court dismiss the FLSA claim under Rule 12(b)(6) should be **DENIED** because it can be reasonably inferred that Plaintiff has alleged he was not exempt during the relevant period because no exemption applies to employees who receive $0 compensation per week during the relevant period, in which he completed worked and worked many hours, which shall be further determined through discovery.

B. PLAINTIFF HAS ADEQUATELY PLED A BREACH OF CONTRACT CLAIM TO SURVIVE A 12(B)(6) MOTION.

12. Defendant alleges that Plaintiff had to clearly and specifically allege an express agreement and Plaintiff failed to do so. Defendant cites *Sapp v. Chamberlain Coll. of Nursing*, 2020 U.S. Dist. LEXIS 120390, at *14 (S.D. Tex. July 9, 2020) stating that Texas law will not allow a plaintiff to use bare allegations of fraud to circumvent the at-will nature of an employment relationship. **Dkt. 39 ¶** 12. Defendant states that the Employment acknowledges that Plaintiff's "employment with Lottery.com will be at will and for no specific period." **Dkt. 36 ¶** 13

a. Defendant incorrectly analyzes *Sapp's* applicability to this case. In *Sapp*, the Court found that at-will employees may not bring fraud claims based on **the termination of their employment**. *Sapp v. Chamberlain Coll. of Nursing*, CIVIL ACTION No. 4:19-CV-2076 (S.D. Tex. July 9, 2020); citing *Sawyer v. E.I. Du Pont De Nemours and Co.*, 754 F.3d 313, 316 (5th Cir. 2014) ("The non-covered employees [for whom there is no collective

bargaining agreement] are at-will employees who, under Texas law, may not bring fraud claims for the termination of their employment.”).

13. Defendant failed to recognize the unilateral agreements created once Plaintiff performed work on behalf of Defendant after July 22, 2022. If the facts were taken liberally in Plaintiff’s favor the Court could infer that an enforceable unilateral contract was created each time Plaintiff performed work on behalf of Defendant. Texas Courts have found:

> “A unilateral contract is created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs.” *Pickle v. Universal Cable Holdings*, 534 F. Supp. 3d 663 (N.D. Tex. 2021); *Owens* , 694 F. App'x at 953–54 (quoting *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009). “[A] unilateral employment contract is created when an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs.” *City of Hous. v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011).

14. In *Vanegas*, the Texas Supreme Court found an enforceable unilateral contract was formed when <u>at-will employees</u> accepted the offer and performed under the promise by remaining employed through the sale or merger. *Vanegas* at 302 (holding unilateral, post-employment contract giving at-will employees portion of proceeds from sale of company if they remained employed, which they did, was enforceable contract). Here, Defendant offered Plaintiff compensation if he remained employed and continued to perform work after July 22, 2022, which he alleges he performed and has continued to perform. The Motion does not take into consideration the creation of enforceable unilateral contracts each time Defendant asked Plaintiff to perform work after July 22, 2022 and Plaintiff actually performed. Moreover, the Texas Supreme Court has held that at-will employees can enter unilateral contracts while they are employed. *Vanegas* at 302.

15. The Texas Supreme Court has found:

> “[a] unilateral contract may be formed when one of the parties makes only an illusory promise but the other party makes a non-illusory promise. The non-illusory promise can

> serve as the offer for a unilateral contract, which the promisor who made the illusory promise can accept by performance. "Almost all unilateral contracts begin as illusory promises. Take, for instance, the classic text-book example of a unilateral contract: "I will pay you $50 if you paint my house." The offer to pay the individual to paint the house can be withdrawn at any point prior to performance. But once the individual accepts the offer by performing, the promise to pay the $50 becomes binding." *Vanegas* at 303; citing *Sheshunoff*, 209 S.W.3d at 650, and *Light*, 883 S.W.2d at 645 n. 6).

16. Similarly, here the at-will nature of the agreement does not negate that Plaintiff accepted the offer by continuing to perform work after July 22, 2022, which makes Defendant's promise to pay binding on each unilateral contract Plaintiff accepted and performed. *See Sheshunoff*, *Light*, and *Vanegas*.

17. Defendant alleges that Plaintiff was "constructively terminated" when he did not receive the first bi-weekly pay period and Plaintiff knew "immediately and continually that he would only be paid … if the fortune of Lottery.com turned around." citing *Traweek v. Global Solutions & Logistics LLC*, 2015 U.S. Dist. LEXIS 98098, at *15 (N.D. Ala. July 28, 2015). **Dkt. 39 ¶** 14. Defendant also attempts to confuse the court stating that Plaintiff was constructively discharged (evidenced by cases analyzing employment under Title VII) and has no enforceable contract for wages after that first unpaid two-week pay period. *Id.*

a. Plaintiff has alleged that he was not "constructively terminated" and given written and oral notice that he was not furloughed at any point during his employment. **Dkt. 38 ¶** 28. Plaintiff has alleged that he continues to be employed and in the alternative has brought unjust enrichment/quantum meruit claims if the express Employment Agreement is considered not enforceable. Moreover, Plaintiff has alleged on multiple occasions that Defendant made misrepresentations that Plaintiff would be paid in full for all work he has completed since his last payroll. **Dkt. 38 ¶** 67. This is a factual dispute left for summary judgment; however, Plaintiff has pled that unilateral contracts were formed each instance

Plaintiff performed work on behalf of Defendant after July 22, 2022. Defendant made continuous assurances and statements that Plaintiff would be compensated upon his performance, which creates binding unilateral agreements. *Pickle*; *Owens*; *Vanegas*.

18. Plaintiff is not asserting claims under Chapter 61 or Chapter 62 of the Texas Payday Law. Here, Plaintiff has filed a breach of contract lawsuit rather than a wage claim with the TWC. In Texas, the "Payday Law," provides an alternative remedial scheme for workers who have been denied wages. *See Igal*, 250 S.W.3d at 87; *Hull*, 211 S.W.3d 461 at 464 (Tex.App.-Houston [14th Dist.] 2006, no pet.)(A worker has a choice either to file an administrative claim with the TWC or a common law breach of contract claim in district court). Plaintiff breach of contract claim is based on tendered performance by fulfilling services for Defendant, creating binding unilateral contracts. Defendant breached that contract by failing to pay Plaintiff once he tendered performance, and Plaintiff suffered damages as outlined in his SAC. *Pickle*; *Owens*; *Vanegas*, *Nart*.

19. Defendant does not address the issue that Plaintiff's claim for breach of the employment agreement, does not seek unpaid minimum wages or unpaid overtime compensation, and is not preempted by the FLSA because Plaintiff seeks damages for breach of contract above and beyond the FLSA's recovery of unpaid minimum and overtime wages, including but not limited to, contracted wages, vested bonuses, and reimbursements. **Dkt. 38 ¶** 60. *Karna v. BP Corp. North America, Inc.*, 11 F. Supp. 3d 809 (S.D. Tex. 2014)(finding breach of contract claim not preempted because it was independent of the FLSA).

20. As stated above, Plaintiff has provided fair notice of the existence of binding unilateral contracts and Plaintiff has opted to assert his right to file a breach of contract lawsuit rather than a wage claim with the TWC, under Texas law. *Igal*, 250 S.W.3d at 82; *Hull*, 211 S.W.3d at 464 (A worker has a choice either to file an administrative claim with the TWC or a common law breach

of contract claim in district court). The offer letter can be used as evidence of one of the essential terms in these unilateral contracts, but in the alternative has pled unjust enrichment/quantum meruit claims. Similarly, to *Nart* this Court should **deny** Defendant's 12(b)(6) Motion as to Plaintiff's breach of contract or quasi-contract/unjust enrichment claim. *Nart v. Open Text Corp*., A-10-CA-870 LY at *7 (W.D. Tex. Aug. 29, 2011).

C. PLAINTIFF HAS ADEQUATELY PLED A FRAUD CLAIM UNDER FED. R. CIV. P. 9(B).

21. Defendant asserts that the misrepresentations that Plaintiff attributes to Defendant are not actionable: as either, non-actionable legal opinion; statement made after expense incurred; no inducement; no reliance; too vague or general; statement was conditional on future events and uncertain; statement made after representations complained about; question asked; not a statement of existing fact or a promise; general and vague statement was conditional on future events and uncertain; or made during time period Plaintiff was adverse to Lottery.com on the claims made in this case. **Dkt. 39 ¶** 15.

a. First, Plaintiff has alleged that each representation listed in his SAC were false or made recklessly. **Dkt. 38 ¶** 17, 65, 67. Plaintiff has also alleged that he has relied on each representation to his detriment and has suffered damages, including but not limited to, liquidating his 401(k) and loss of wages. **Dkt. 38 ¶** 66, 67, 69. Second, a promise to do an act in the future is not actionable fraud *unless* it is "made with the intention, design, and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)(emphasis added)(*citing Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971)). Plaintiff has alleged that each of the misrepresentations were made falsely, deceptively, and with no intentions to perform. **Dkt. 38 ¶** 66, 67, 69. Plaintiff has provided Defendant with sufficient facts to demonstrate that

Defendant promised him compensation and reimbursements (if he continued to perform work for Defendant) while knowing it would never do so. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) ("An expression of an opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future."). It can be reasonably inferred that Defendant's executive members, board members, a chairman of the board's statements purport to have special knowledge of facts that will occur in the future, and Plaintiff's reliance of that special knowledge or opinion to his detriment (which were known to be false) gives fair notice that these misrepresentations constitutes actionable fraud.

22. Defendant also asserts that Plaintiff's failure to provide "specific dates" and "Where" section is inadequate because it lists various mediums, which Defendant asserts require dismissal under Rule 9(b) . **Dkt. 39** ¶ 16.

a. Plaintiff has alleged multiple dates, some specific, and some ranging on dates based on the fact that the statement was made multiple times. Based on the timing of the misrepresentations, the majority of the misrepresentations occurred after Defendant stopped compensating Plaintiff in July 2022, therefore, it can be reasonably inferred that these misrepresentations were made simultaneously with Plaintiff's acceptance of unilateral contracts after July 22, 2022. *See Lopez v. JP Morgan Chase Bank, N.A.*, No. SA-11-CA-936, 2012 WL 2726762, at *2 n.1 (W.D. Tex. July 9, 2012)(finding unilateral contracts are part of Texas common law). All statements, except Robert Stubblefield's statement, were made prior to Plaintiff filing this lawsuit. Plaintiff has alleged:

i. **Katie Lever, CLO** made the statement on July 23, 2022 (email), and on multiple occasions in July and August 2022. **Dkt. 38** ¶ 67 (statement made with the intent to deceive Plaintiff to perform work with no intention to compensate Plaintiff. Plaintiff's performance thereafter created binding unilateral contracts);

ii. **Richard Kivel, Chairman of Board** made the statement on July 6, 2022, September 6, 2022, November 23, 2022 – **Dkt. 38** ¶ 67 (statements made with the intent to deceive Plaintiff to perform work with no intention to compensate Plaintiff. Plaintiff's performance thereafter created binding unilateral contracts);
iii. **Sohail Quareshi, CEO**, made the statement on October 14, 2022 (email) **Dkt. 38** ¶ 67 (statement made with the intent to deceive Plaintiff to perform work with no intention to compensate Plaintiff. Plaintiff's performance thereafter created binding unilateral contracts);
iv. **Matt McGahan, Chairman of Board and CEO** made the statement on March 29, 2023 and on multiple occasions in March 2023. **Dkt. 38** ¶ 67 (statement made with the intent to deceive Plaintiff to perform work with no intention to compensate Plaintiff. Plaintiff's performance thereafter created binding unilateral contracts);
v. **Amar Ali, CLO** sent multiple emails and or calls from March 2023 – July 2023, discovery will uncover each instance Amar Ali asked Plaintiff to complete work and assured that payroll would restart. **Dkt. 38** ¶ 67 (statement made with the intent to deceive Plaintiff to perform work with no intention to compensate Plaintiff. Plaintiff's performance thereafter created binding unilateral contracts);
vi. **Robert Stubblefield, CFO** made the statement on or around June 6, 2024. **Dkt. 38** ¶ 67 (statement made with the intent to deceive Plaintiff to perform work with no intention to compensate Plaintiff. Plaintiff's performance thereafter created binding unilateral contracts).

These facts provide specific fair notice of "when" the alleged false representations were made, which include dates prior to the parties becoming adversarial. Plaintiff has alleged "where" that these statements were made verbally, or by email, text, or Slack messages. Plaintiff alleges that these statements were made through multiple mediums and has specifically provided facts as to when and what was stated in the communications.

23. Defendant asserts that Plaintiff's complaints about representations occurring after Plaintiff's employment (March 29, 2020) fail to state a plausible claim and must be dismissed. *Halper v. Univ. of the Incarnate Word*, 90 S.W.3d 842, 847 (Tex. App.—San Antonio 2002, no pet.); *Studer v. Moore*, 2021 Tex. App. LEXIS 1209, at *4 (Tex. App.—Houston [14th Dist.] Feb. 18, 2021, no pet.) ("[A]n at-will employee cannot bring fraud claims that depend on continued employment."). **Dkt. 39** ¶ 17.

a. Here, Defendant attempts to confuse the Court by stating Plaintiff's at-will status precludes

him from bringing any fraud claim. Defendant cites cases that stipulate that an at-will employee's fraud claims cannot be brought on the basis of **continued employment**. *See Halper*; *Studer*. Here, Plaintiff is not bringing his fraud claim based upon Defendant's decision to discharge him, because Plaintiff has alleged he has remained employed as of this date. Texas Courts have found:

> "An "at will" employee is barred from bringing a cause of action for fraud against his employer, **but only based upon the employer's decision to discharge** the employee. *See Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 925 (Tex.App. — Houston [1st Dist.] 1993, no writ) (at-will doctrine effectively bars contract and tort claims based on the decision to discharge an at-will employee). A Texas Appeals Court has held that "the cause of action for fraud, which encompasses misrepresentations made before employment, as well as those made during employment, is not barred by the employment at will doctrine." *Offshore Petroleum Divers v. Cromp*, 952 S.W.2d 954 (Tex. App. 1997); *Sawyer v. E I DuPont De Nemours & Co.*, 689 F.3d 463, 468 (5th Cir. 2012). Another case allowing a fraudulent misrepresentation cause of action by an employee against an employer during an at-will employment relationship is *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex. 1986). There, the court held there was sufficient evidence of the employer having made a promise to do an act in the future with no intention of performing the act. *Id*.

Therefore, Defendant's argument that Plaintiff's at-will status precludes him from bringing fraud claims, under Texas law, is misplaced due to the exception and the fact that the fraud claim is not based on any decision to terminate or discharge Plaintiff.

24. Defendant asserts that any representations made after Plaintiff's claims arose (June 8, 2023) fail to state a plausible claim because representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context. *AKB Hendrick, LLP v. Musgrave Enters.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.). **Dkt. 39 ¶** 18.

a. Here, all the of representations, except for one, occurred prior to June 8, 2023, which is the representation made by Robb Stubblefield in June 2024. **Dkt. 35 ¶** 75. Outside of Robb Stubblefield's representation, each representation was made between March 2022 – June

8, 2023, (before the lawsuit was filed) therefore, these actionable representations were not made in the adversarial context.

25. Defendant asserts Plaintiff's SAC negates reasonable reliance because (1) Plaintiff failed to adequately plead at-will employment. **Dkt. 39 ¶** 19. The promise to pay Plaintiff for work already performed is not based on continued employment because the alleged misrepresentations are related to Plaintiff's continued employment and enforceable unilateral contracts, and not based on Defendant's ability to terminate.

a. Again, Defendant's at-will employment arguments are misplaced because Texas Courts and the Fifth Circuit have allowed a fraudulent misrepresentation cause of action by an employee against an employer during an at-will employment relationship because there was sufficient evidence of the employer having made a promise to do an act in the future with no intention of performing the act. *Offshore Petroleum Divers v. Cromp*, 952 S.W.2d 954 (Tex. App. 1997); *Sawyer v. E I DuPont De Nemours & Co.*, 689 F.3d 463, 468 (5th Cir. 2012); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex. 1986).

26. Defendant argues that because Plaintiff's fraud claims revolve around his employment agreement the claim is barred by the economic loss rule. **Dkt. 36 ¶** 24.

a. Plaintiff pleaded that the economic loss rule does not apply because the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself. *See Formosa Plastics Corp. USA* , 960 S.W.2d at 46 ("it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself"); *Reservoir Sys., Inc. v. TGS-NOPEC Geophysical 20 Co.* , 335 S.W.3d 297, 308 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Tort damages are recoverable for a fraudulent-inducement claim

irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."). Here, Plaintiff has alleged that the misrepresentations to fraudulently procure Plaintiff to perform work are separate and distinct from the duties established by the contract, therefore, based on Texas Supreme Court precedent, which states any damages suffered as a result of fraud is sounded in tort. *See Formosa*

27. Here, Plaintiff has adequately pled fraud claim fraud with the specificity as required by Rule 9(b). However, "other than in the situations expressly enumerated in rule 9(b), e.g., allegations of actual fraud, plaintiff must satisfy only the minimal requirements of rule 8(a)." *General Elec. Capital Corp. v. Posey,* 415 F.3d 391, 396-97 (5th Cir. 2005).

28. Rule 9(b) requires, the who, what, when, and why statements were fraudulent and what damages flow from the fraudulent actions. Here, Plaintiff the false representations alleged are as follows:

**<u>WHO</u>**:

1. **Katie Lever** – CLO/COO, Apparent Authority;
2. **Richard Kivel** – Chairman of the Board, Actual Authority;
3. **Matt McGahan** – CEO/Chairman of Board/Director of Board, Actual Authority;
4. **Sohail Quraeshi** – CEO, Apparent Authority;
5. **Amar Ali** – CLO, Apparent Authority;
6. **Robert Stubblefield** – CFO, Apparent Authority

*Elaazami v. Lawler Foods, Ltd.*, No. 14-11-00120-CV (Tex. App. Feb. 7, 2012) (Texas law recognizes that a company's placement of an officer or employee in a certain position will provide the agent with apparent authority to bind the company in usual, customary, or ordinary contracts that a reasonable person would view as being consistent with an agent's scope of authority in that position). <u>**Dkt. 36 ¶** 64</u>.

**<u>WHAT</u>**:

1. "**the furlough was not applicable to Plaintiff**" (Katie Lever, CLO July 23, 2022);
2. "**"Lottery.com was working to reimburse Plaintiff for the expenses that were not paid**

**since May 6, 2022, but Lottery.com was waiting on confirmation of cash in the bank and a "cursory audit" of the financial**" (Richard Kivel, Chairman of Board, July 6, 2022);

3. "**Lottery was waiting on Woodford Eurasia to put the $2.5 million in the bank and everyone would get caught back up and Lottery would be able to start moving the company forward again**" (Richard Kivel, Chairman of Board, July 6, 2022);

4. "**On September 6, 2022 (the "Signing Date"), Lottery.com Inc. (the "Company") entered into a Term Sheet (the "Term Sheet"), with Woodford Eurasia Assets Ltd. ("Woodford").The Term Sheet provides for a $2.5 million convertible loan (the "Initial Loan") to be funded no later than five business days following the fulfillment of its conditions, such as, the receipt of the Director Resignations (as defined below) and appointment of two new members of the Board and an interim chief executive officer of the Company; The Term Sheet also contemplates an additional convertible loan or another investment instrument (the "Expansion Capital") in a principal amount of up to $50.0 million (the "Accordion)**" (Richard Kivel, Chairman of Board September 6, 2022);

5. "**Lottery was waiting on Woodford Eurasia to put the $2.5 million in the bank and everyone would get caught back up and Lottery would be able to start moving the company forward again**" (Sohail Quareshi, CEO October 14, 2022);

6. "**The company acknowledges that back pay is owed to various members of the team who were not furloughed properly, or subsequently asked to do work after furlough. When the company resolves its current state 20 of insolvency it will honor those debts and make good on all of the final calculation of all moneys owed once the audit is complete**" (Matt McGahan, CEO, Chairman, March 29, 2023);

7. "**Asked Plaintiff to complete work in return for payroll starting back up and reimbursements being paid out**" (Amar Ali, CLO March - June, 2023);

8. "**"Once the company gets funding from UCIL or another outside investor then everyone will get paid. Were just waiting for the S1 to be finalized**" (Robert Stubblefield June, 2024).

<u>**WHERE**</u>:

1. **Katie Lever** – email on July 23, 2022 + verbal communications in July/August;
2. **Richard Kivel** – email statement on July 6, 2022; September 6, 2022, November 23, 2022
3. **Matt McGahan** – email statement on March 29, 2023 + verbal communications in March 2023;
4. **Sohail Quraeshi** – email statement and verbal on October 14, 2022;
5. **Amar Ali** – multiple emails from March 2023 – July 2023;
6. **Robert Stubblefield** – email statement on June 6, 2024

**<u>HOW/WHY</u>:**

Plaintiff has alleged "why" these statements were made because Defendant had not compensated Plaintiff to date, and never intended to do so when Defendant asked Plaintiff to continue to working in July 2022. The statements were made to induce Plaintiff to remain employed and to continue work for Lottery.com, Plaintiff that he was not furloughed in July. The "how" is explained above Defendant used multiple mediums and verbal communications to make these statements, including but not limited to, emails, text messages, slack messages, etc. Plaintiff was a remote employee; so majority of the statements were made through various mediums, including but not limited to, oral, email, and messaging apps. Therefore, Plaintiff has specifically alleged the "how" the representations were made and the "why" the representations were made, which Plaintiff alleges he relied on to his detriment causing him damages.

29. Plaintiff has attached his compensation letter, which created evidence of an essential contractual obligation for Defendant to compensate Plaintiff once he has tendered performance under the unilateral contracts. Plaintiff believed he would continue to be compensated after the July 2022 representations; if Plaintiff continued to perform work. It is clear that the fraudulent representations made by Lottery.com's representatives (with actual or apparent authority) in July 2022 and representations made thereafter were false because as of this date Plaintiff has not been compensated, and Defendant continues to ask Plaintiff for work as of this filing, with no intention of compensating Plaintiff, and now denies any promises were made.

30. Plaintiff's Second Amended Complaint more than satisfies the Rule 9(b) heightened pleading standard; and Plaintiff respectfully asks this Court to **DENY** Defendant's 12(b)(6) Motion because Plaintiff's fraud claim satisfies Rule 9(b) heightened pleading standard.

D. <u>PLAINTIFF HAS ADEQUATELY PLED A QUANTUM MERUIT/UNJUST ENCRICHMENT CLAIM.</u>

31. Defendant alleges Plaintiff seeks compensation through quantum meruit "at the applicable salary that he contracted to earn," and therefore, fails to state a legally cognizable claim because Plaintiff refused to stay within the limits of the law now leaves Plaintiff with nada on his quantum meruit/unjust enrichment claims. **<u>Dkt. 39 ¶</u>** <u>21</u>.

a. Plaintiff has alleged that Plaintiff is entitled to recover the reasonable value of his management services rendered to Defendant. **<u>Dkt. 38 ¶</u>** <u>72</u>. Plaintiff alleges such services to the Company provided by Plaintiff, at the request of and on behalf of Defendant, have a reasonable fair market value in excess of the minimum jurisdictional limits of this Court, for all of which Plaintiff hereby sues. **<u>Dkt. 38 ¶</u>** <u>77</u>. Plaintiff has pled quantum meruit in the alternative based on theories of implied or quasi-contracts created during Plaintiff's employment. This cause of action prevents companies from refusing to pay an employee wages and escaping liability if the employee did not have an employment contract and failed to file a Payday claim within six months. *See Kitchen v. Frusher*, 181 S.W.3d 467, 474-76 (Tex. App.—Fort Worth, 2005 no pet.) A party to a contract may seek alternative relief under both contract and quasi-contract theories." *Woodcock v. Chase Home Fin., LLC*, No. H-11-1199, 2012 WL 393260, at *3 (S.D.Tex. Feb. 3, 2012)(citing *In re Kellogg Brown & Root Inc*., 166 S.W.3d 732, 740 (Tex. 2005)); *see* Similarly, to *Nart*, this Court should deny Defendant's 12(b)(6) Motion to dismiss Plaintiff's alternative quantum meruit claims. *Nart v. Open Text Corp.*, (W.D. Tex. Aug. 29, 2011) (denying 12(b)(6) Motion to Dismiss on Plaintiff's breach of contract and quantum meruit claims for unpaid wages). The inclusion of the wages does not foreclose Plaintiff's quantum meruit claims but provides facts as to what the reasonable value of his services are based on past performance.

*See Kitchen v. Frusher* 181 S.W.3d 467, 474 (Tex. App. 2005)(holding evidence of the reasonable annual rate of compensation to be evidence of reasonable value); *Timm* at *14 (W.D. Tex. Mar. 18, 2014)(finding Plaintiff entitled to relief under quantum meruit and determined the reasonable value of his services based on his affidavit, which identified his hourly rate while working for the Defendant).

32. Throughout the SAC, Plaintiff has alleged he has received no payment, let alone any payment for the reasonable value of his services during the relevant period. Plaintiff can provide the Court with evidence of his annual salary to help determine what the reasonable value of his services are. *See Kitchen* and *Timm*. Therefore, Plaintiff denies that he has not alleged nonpayment for the reasonable value of his services, when the SAC is full of statements identifying that Plaintiff has not been paid any compensation, let alone the reasonable value of his services during the relevant period. **Dkt. 39 ¶** 23.

33. Defendant asserts that the Court can dismiss Plaintiff's unjust enrichment claim because unjust enrichment is not a "distinct" or independent cause of action. *Midwestern Cattle Mktg., L.L.C. v. Legend Bank*, N.A., 999 F.3d 970, 972 (5th Cir. 2021); *Nickel Bridge Cap., LLC v. Hendrickson*, 2024 U.S. Dist. LEXIS 73091, at *18 (S.D. Tex. April 22, 2024). **Dkt. 36 ¶** 29.

> "Texas cases are split as to whether unjust enrichment is not an independent cause of action but rather the result of a failure to make restitution for benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay. *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895 (Tex. App.—Dallas 2006); *Nart v. Open Text Corp.*, A-10-CA-870 LY at *6-7 (W.D. Tex. Aug. 29, 2011). Some Texas state courts' understand that unjust enrichment describes the nature of certain claims and remedies, not a distinct cause of action itself. *See Argyle Indep. Sch. Dist. ex rel. Bd. of Trs. v. Wolf* , 234 S.W.3d 229, 246 (Tex. App. 2007) . In *Midwestern* the Fifth Circuit opined that it did not remand an unjust enrichment claim as an independent cause of action. "Unjust enrichment "is an independent cause of action that allows recovery when there is no express contract covering the services rendered." *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, CIVIL ACTION No. 4:15-cv-00307-GHD-CMC at *32 (E.D. Tex. Sep. 27, 2016); *citing Nart v. Open Text Corp.*, No. A-10-CA-870 LY, 2011 WL 3844216, at *4 (W.D. Tex. Aug. 29, 2011) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52

S.W.3d 671, 683-84 (Tex. 2000)). Here, Plaintiff has adequately sought alternative relief if there is no express agreement covering the service rendered by Plaintiff. *Woodcock v. Chase Home Fin., LLC*, Civ. A. No. H-11-1199, 2012 WL 393260, at *3 (S.D. Tex. Feb. 3, 2012)(a party to a contract may seek alternative relief under both contract and quasi-contract theories)(quoting *In re Kellogg Brown & Root Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)).

34. The Fifth Circuit recognized that Texas law appears to "recognize two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit" based on fraud, duress, or undue advantage. *Id*. If a plaintiff's unjust enrichment claim is based on a defendant's wrongful securing of a benefit, then a plaintiff must plead facts showing fraud, duress, or the taking of undue advantage. If a plaintiff's unjust enrichment claim is based on "passive receipt of a benefit that would be unconscionable to retain," then the plaintiff does not need to plead or prove that the defendant acted wrongfully. *Credos Indus. Supplies & Rentals v. Targa Pipeline Mid-Continent Westtex LLC* (In re KP Eng'g), Civil Action H-22-00664 at *11-12 (S.D. Tex. Aug. 15, 2022). Defendant argues that the word "unconscionable" is not located in the SAC, but facts are sufficient to infer that it is and was unconscionable for Defendant to passively retain services rendered by Plaintiff and unconscionable to refuse to pay Plaintiff his wages after inducing him to continue to work based on false representations that Defendant is "waiting on funds to clear" or "waiting for cash to transfer into the bank." *See Nart* at *11. The Western District in *Nart*, did not have to analyze the "unconscionableness" of the Defendant's actions in its opinion, which can be inferred in instances were an employer refused to pay unpaid wages. Therefore, Plaintiff has pled sufficiently that Defendant has passively retained a benefit (Plaintiff's services) that would be unfair/unconscionable to retain at Plaintiff's expense.

35. To recover under quantum meruit, the plaintiff must prove that: "(1) valuable services were rendered; (2) to the party sought to be charged; (3) which services were accepted by the party

sought to be charged; (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing such services, expected to be paid by the recipient." *Collins v. Aikman Floorcoverings, Inc. v. Thomason*, 256 S.W.3d 402, 407-08 (Tex. App.-San Antonio 2008, pet. denied.

36. Plaintiff sufficiently alleges that he provided and still provides benefits to Lottery.com for which he expected compensation or to which Lottery.com was not already entitled to receive, such as, IT services and IT support to keep Lottery.com operational. Lottery.com received benefits in the form of IT services and IT support and in return for performing these tasks Plaintiff expected compensation based on the reasonable value of his services and/or what has been contractually agreed upon by both parties.

37. Plaintiff's live Complaint alleges adequate facts to give Defendant fair notice of Plaintiff's quantum meruit/unjust enrichment claims that are pled in the alternative. We respectfully ask this Court to **DENY** Defendant's 12(b)(6) motion as to Plaintiff's unjust enrichment/quantum meruit claims to the extent if it is found no express contract exist between Plaintiff and Defendant.

E. DECLARATORY JUDGMENT.

38. Defendant alleges because the request for declaratory relief is not tied to a cause of action within the jurisdiction of the Court, Plaintiff's request for declaratory judgment must be dismissed. *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982). **Dkt. 39 ¶** 31.

39. Defendant also argues by calling the payment of Lottery.com's "annual renewal fees" "personal financial contributions," Plaintiff eliminated any case or controversy, because Plaintiff admits making the payments as a gift. Which is wholly incorrect. The basis of Plaintiff's request declaratory judgment is based on Plaintiff financing the renewal fees on behalf of Defendant based on the promise that he would be reimbursed for his personal expenses.

40. Although, the Fifth Circuit has cautioned that courts “should avoid duplicative...litigation where possible.” *Sherwin-Williams Co. v. Holmes Cty*., 343 F.3d 383, 391 (5th Cir. 2003). If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted. *See Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980) (affirming refusal to allow leave to add claims that were adequately raised in the original complaint); *Mandry v. Fina Oil & Chem. Co.*, 44 F.3d 1004, 1994 WL 733494 at *2 (5th Cir. 1994) (unpublished) (reversing award of declaratory relief where “[t]he declaratory judgment does not declare any significant rights not already at issue in the contract dispute.”). Here, the rights at issue revolve around the ownership of the domain names based on the maintenance, up-keep, and payments to allow them to remain active.

41. This practice accords with the “[t]wo principal criteria” that guide the court's decision of whether to issue a declaratory judgment: whether (1) “the judgment will serve a useful purpose in clarifying and settling the legal relations in issue” and (2) whether “it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.” *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016). Here, the judgment will be useful to determine Plaintiff’s ownership share in the domain names based on his ongoing actions and it will afford relief from the uncertainty of domain name ownership given that Plaintiff has renewed and kept the domain names active and Defendant has failed to abide by its promise of compensating Plaintiff. Defendant inserts facts regarding the domain name’s purchase price, yet fails to consider that facts at this stage are taken liberally in Plaintiff’s favor and the purchase price is not a fact on the face of the pleading.

42. Plaintiff’s live Complaint allege facts showing that there is a substantial likelihood that he will suffer injury in the future because he continues to pay for the domain renewal fees and if he

does not the domains will be lost and all parties would lose any investment into the domain names. In order to receive declaratory relief "for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." Plaintiff has pled facts showing that he continues to face the threat of losing the domain names due to nonpayment, and that is a real and immediate threat if Plaintiff does not continue to pay renewal fees, yet there is a controversy as to who is the owner of the domain names in that situation. As such, dismissal of the declaratory relief is premature. Therefore, the Motion to Dismiss should be denied.

## III. CONCLUSION & PRAYER

43. Defendant's Rule 12(b)(6) motion must be **DENIED** in its entirety. Contrary to Defendant's assertions, there is no affirmative defense or other bar to relief that is clear from the face of the SAC.

44. Defendant failed to present arguments or case law in the Fifth Circuit that stipulates Plaintiff's FLSA claims should be denied on a 12(b)(6) Motion based on Plaintiff's exemption status. Defendant cited a California case, which was distinguishable because the Plaintiff in that case received $5,000, which did not transform her into a nonexempt employee.

45. Defendant failed to present an argument that rebuts Texas Law, which allows Plaintiff to pursue unpaid wages under Texas common law theories of breach of contract (unilateral contracts performed after July 22, 2022), unjust enrichment, and quantum meruit.

46. Plaintiff has sufficiently pleaded the "who, what, when, where, and how" in particularity as to his fraud claim, which satisfies his pleading burden under Rule 9(b). Plaintiff has identified that the agents of Defendant either had actual or apparent authority to bind Defendant to the false representations. Moreover, Plaintiff has alleged enough facts to demonstrate he detrimentally relied on the representations of Defendant, which caused him more than economic loss. Defendant

has fair notice, under Rule 9(b)'s heightened pleading standard, of Plaintiff's fraud claim and the 12(b)(6) Motion must be dismissed.

47. Discovery will uncover the fact-intensive inquiries, which Defendant seeks to assert in seeking dismissal under Rule 12(b)(6). The fact that Defendant believes the facts to be "mere conclusions," but require discovery; cannot be resolved at the pleading stage, therefore, Defendant's 12(b)(6) motion must be **DENIED** as to all claims.

Respectfully Submitted,

Eddie R. Hodges Jr.
______________________________

**Eddie Hodges, Jr.**
Texas Bar No.: 24116523
Federal Bar No.: 3479748
**Alfonso Kennard, Jr.**
Texas Bar No. 24036888
Federal I.D. No. 713316
Kennard Law PC
5120 Woodway Dr., Suite 10010
Houston Texas 77056
Main: (713) 742-0900
Fax: (713) 742-0951
Email: alfonso.kennard@kennardlaw.com
Email: eddie.hodges@kennardlaw.com
Email: filings@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on this 6th day of September 2024, a true and correct copy of this Response to Defendant's 12(b)(6) Motion was filed with the Court using the Court's CM/ ECF system and served on Defendant's counsel.

**ANDREW R. KORN**
State Bar card number: 11683150
Mailing address:
Andrew R. Korn, PLLC
4221 Avondale Avenue
Dallas, Texas 75219
E-mail address: akorn@receiverandrewkorn.com
Telephone number: (214) 521-0500
Attorney for Lottery.com

Eddie R. Hodges Jr.

Eddie Hodges Jr.

**CERTIFICATE OF COMPLIANCE**

I certify that this Motion response is within the page-limit ordered by Local Rule CV-7. Plaintiff files this Motion along with a Motion for Leave to file Excess Pages. If The District Court grants the Motion; this Motion *only has four* (4) additional pages. Therefore, this Motion is in compliance with the local rule and no more than twenty-five (25) pages, exclusive of the caption, the signature block, any certificate, and any accompanying documents.

Eddie R. Hodges Jr.

Eddie Hodges Jr.

# EXHIBIT A

Case No. 20-cv-02253-HSG
UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

# Miller v. Infinite Percent Partners

Decided Jun 17, 2021

20-cv-02253-HSG

06-17-2021

LISA MILLER, Plaintiff, v. INFINITE PERCENT PARTNERS LLC, et al., Defendants.

---

HAYWOOD S. GILLIAM, JR., UNITED STATES DISTRICT JUDGE

**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT RE: DKT. NOS. 32, 50**

HAYWOOD S. GILLIAM, JR., UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendants' Motion to Dismiss. Dkt. No. 50 ("Mot."). For the following reasons, the motion to dismiss is **GRANTED.**

**I. BACKGROUND**

The Court previously summarized the factual background of this employment dispute between Plaintiff, Dr. Lisa Miller, and Defendants Infinite Percent Partners LLC ("IPP"), et al. *See* Dkt. No. 48 ("Order").

In brief, Plaintiff contends that she relied to her detriment on Defendants' promise of fulltime employment as IPP's Chief Medical Officer with an annual salary of $200,000; medical benefits; and equity. *Id.* In her First Amended Complaint ("FAC"), Plaintiff repeats the previously alleged causes of action for (a) Violation of the Fair Labor Standards Act's ("FLSA") anti-retaliation provision; (b) Violation of California Labor Code section 1102.5; (c) Breach of Contract; (d) Promissory Estoppel; (e) Estoppel by Conduct; (f) Non-Payment of Wages; and (g) Failure to Provide Itemized Wage Statements. FAC ¶¶ 28-67.

5 Plaintiff adds in her FAC the allegation that Defendants failed to pay her the *5 federal minimum wage in violation of FLSA § 206. FAC ¶¶ 35-38. Plaintiff also alleges that Defendants violated FLSA § 215(a)(3) in terminating her employment after her complaints about timely and complete compensation. FAC ¶¶ 39-40. Defendants move to dismiss Plaintiff's FAC on the grounds that Plaintiff has not alleged facts sufficient to establish a minimum wage or retaliation claim under the FLSA. Mot. at 1.

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is
6 plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible *6 when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

**III. DISCUSSION**

In Plaintiff's initial complaint, she brought a freestanding retaliation claim. The Court dismissed this
1 freestanding retaliation claim *1 because Plaintiff did not adequately allege an underlying FLSA violation. Order at 3-5. As the Court explained, "the purpose of the FLSA's anti-retaliation clause is to ensure vindication of the wage-and-hour rights established by the statute." *Id.* at 4 (citing *Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999) ("The FLSA's anti-retaliation clause is designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act.")). Plaintiff now alleges an underlying minimum wage violation in addition to her retaliation claim. FAC ¶¶ 35-38. But Plaintiff's allegations of an FLSA minimum wage violation do not meet the 12(b)(6) plausibility threshold and appear to be an attempt to manufacture federal court jurisdiction rather than to assert a bona fide FLSA violation.

The FLSA requires employers to pay minimum wages and overtime compensation to nonexempt, i.e. hourly, employees. *See* 29 U.S.C. §§ 206-207. These requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). While it is the employer who bears the burden of demonstrating that an FLSA exemption applies to an employee, *Klem v. Cnty. of Santa Clara,* 208 F.3d 1085, 1089 (9th Cir. 2000), the Court may rely on "'judicial experience and common sense' to determine whether the factual allegations, which are assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679, and applying the 12(b)(6) plausibility standard in the FLSA context).

Here, Plaintiff alleges that she accepted a job offer from Defendants to be IPP's Chief Medical Officer and that she accepted an annual salary of $200,000. FAC ¶¶ 15, 17. According to Plaintiff, Defendants offered to pay her "$10,000 per month for the first three months" and to pay the accrued balance in stock and cash. *Id.* ¶ 17. After the first three months, Plaintiff was to be paid $16,667 per month. *Id.* ¶ 31. Plaintiff's duties, according to the FAC, included

> (a) reviewing current research from Cythera; (b) reviewing IPP's operations and procedures; (c) reviewing consumer product categories; (d) working closely with manufacturing specialists on consumer product formulation parameters; (e) identifying and researching scientific data related to specific nutrients and botanicals; (f) attending Cythera lab weekly meetings for research updates; (g) attending bi-weekly team and company meetings; (h) providing medical commentary/advice to IPP; and (i) researching and preparing safety documents for use by IPP internally and for consumer and physician education.

FAC ¶ 18.

According to Plaintiff's own allegations, she was hired to perform professional functions, [1] and she was to be paid a monthly salary, not an hourly wage. Plaintiff does not even attempt to allege that she was a nonexempt employee. *See generally* FAC. Instead, she argues in her opposition that "[e]xempt employees are still entitled to the benefits of the FLSA if they are paid no minimum wage for 3 months."[2] Dkt. No. 51 at 9. Plaintiff cites no authority, *id.*, and the Court has found none, in support of this proposition. On the contrary, the plain language of 29 U.S.C. § 213 clearly exempts "any employee employed in a bona fide executive, administrative, or professional capacity" from the minimum wage provisions of 29 U.S.C. § 206. Accordingly, the Court finds that Plaintiff has not plausibly alleged a violation of the FLSA's minimum wage provisions.

1 The terms and duties of Plaintiff's alleged employment with IPP fit squarely within Department of Labor regulations defining an "employee employed in a bona fide professional capacity":

> The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week . . . exclusive of board, lodging or other facilities; and
>
> (2) Whose primary duty is the performance of work:
>
> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
>
> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300.

2 The Court notes that Plaintiff's attempt to transform her state law contract dispute into an FLSA minimum wage claim is undermined by her allegation that she was paid $5,000 on September 8, 2019 for work performed in August. FAC ¶ 33. Setting aside Plaintiff's contradictory allegation that she was paid nothing for work performed in August 2019, *see* FAC ¶ 38, this $5,000 payment exceeds the federal minimum wage for an employee working full time for three months. The FLSA establishes the federal minimum wage at $7.25 an hour. *See* 29 U.S.C. § 206. Assuming a 40-hour work week for 12 weeks, Plaintiff would have been entitled to $3,480, i.e. less than the $5,000 she was paid at the beginning of September.

As the Court explained in its previous order, the viability of Plaintiff's retaliation claim depends on a plausible allegation of an underlying FLSA violation, which the FAC fails to provide. Further, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for

their protection." *Rosenfield v. GlobalTranz Enterprises, Inc.*, 811 F.3d 282, 286 (9th Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1335 (2011)). "The employee's job title and responsibilities . . . form an important part of that 'context.'" *Id.*

Here, Plaintiff alleges that she "complained several times to [Defendants' COO] that she was not being paid" and that she "complained to Defendants that she received no payment for her work hours in June, July, and
2 August and asked them to provide her compensation." FAC ¶¶ 21, 34. *2 She also submitted invoices to Defendants and "offered to provide a consulting contract to Defendants and request a retainer for her work." FAC ¶ 25.

The Court finds that Plaintiff's vague allegations of complaints about not receiving a promised salary for a professional job as "Chief Medical Officer, " as well as her attempt to invoice Defendants and enter into a consulting contract complete with retainer (actions not normally correlated with minimum wage disputes), did not provide "fair notice" to Defendants that she intended to assert her rights under the FLSA's minimum wage provisions. *See Kasten*, 131 S.Ct. at 1334 ("[T]he employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation."); *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999) ("We agree that not all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of [FLSA] § 215(a)(3)"). Accordingly, the Court finds that Plaintiff again has not plausibly alleged an FLSA retaliation claim.

In her opposition, Plaintiff requests leave to further amend her complaint if the Court grants the motion to dismiss. Dkt. No. 51 at 17. It is within the court's discretion to determine whether to grant leave to amend, and "[a] district court does not err in denying leave to amend where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Plaintiff's failure to plausibly allege an underlying FLSA violation for her retaliation claim was the exact defect identified by the Court in its prior dismissal order and at the hearing on the motion to dismiss. Order at 3-5. The Court also specifically noted that "[b]ecause Plaintiff's case appears to lack a substantive connection to the FLSA, Plaintiff's complaints about her compensation may have failed to provide Defendants with the required notice that she was asserting statutory rights under the FLSA." *Id.* at 5 n.1 (citing *Kasten*, 563 U.S. at 14). Plaintiff was thus informed of the defects in her FLSA claim and given an opportunity to amend. In light of Plaintiff's failure to plausibly allege an FLSA claim in her amended complaint even with this direct guidance, the Court finds that further amendment would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad."). Accordingly, Plaintiff's FLSA claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citation and internal quotations omitted). Having dismissed Plaintiff's federal claims, the Court, in its discretion, declines to assert supplemental jurisdiction over the remaining state law claims. Accordingly, Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IV. CONCLUSION**

The Court **GRANTS** Defendant's motion to dismiss.[3] Plaintiffs FLSA claims are **DISMISSED WITHOUT LEAVE TO AMEND**. The Court declines to exercise supplemental jurisdiction over Plaintiffs remaining state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to close the case.

[3] In light of this dismissal, Plaintiffs motion for partial summary judgment as to her employment status under California law is **DENIED AS MOOT**. Dkt. No. 32.

10 **IT IS SO ORDERED.** *10

---

casetext
Part of Thomson Reuters