**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RYAN PETERSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **1:23-CV-646-RP** |
| **LOTTERY.COM, INC. d/b/a** | § | |
| **SPORTS.COM, INC. d/b/a** | § | |
| **AUTOLOTTO, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court is Defendant Lottery.com, Inc.'s Motion to Dismiss for Failure to State a Claim (Dkt. 39) and all related briefing.[1] After reviewing the pleadings and the relevant case law, the undersigned submits the following Report and Recommendation to the District Judge.

## I. Background

Plaintiff Ryan Peterson is suing Texas-based Lottery.com, asserting employment-related claims. Dkt. 38 (Second Amended Complaint, hereinafter "SAC") at 1–3.

Peterson alleges that he began working for Lottery.com on March 30, 2020, as "Vice President of Research & Development" with an annual salary of $200,000. *Id.* ¶ 6. On February 14, 2022, after a promotion to "Executive Vice President, Technology," his annual salary increased

[1] United States District Judge Robert Pitman referred the Motion to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 44, Oct. 18, 2024.

to $350,000. *Id.* ¶ 8. Peterson states that although he continues working for Lottery.com, he has not been paid "full payroll" since July 8, 2022. *Id.* ¶ 9.

Peterson brings claims for: (1) violations of the Fair Labor Standards Act ("FLSA"); (2) breach of contract; (3) common law fraud and fraud in the inducement; or, in the alternative, (4) "quantum meruit/unjust enrichment"; and (5) declaratory judgment for domain name ownership. *Id.* at 11, 14, 16, 22, 24.

Lottery.com moved to dismiss the SAC under Rule 12(b)(6), arguing that none of Peterson's causes of action comply with Rules 8(a) and 9(b). Dkt. 39 (Motion to Dismiss, hereinafter "MTD") at 1.

## II. LEGAL STANDARD—RULE 12(b)(6)

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must first identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

When evaluating a motion to dismiss, the court considers "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The court may also consider "'documents that a defendant attaches to a motion to dismiss. . . if they are referred to in the plaintiff's complaint and are central to her claim.'" *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297 (5th Cir. 2023) (quoting *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

## III. ANALYSIS

Lottery.com moves to dismiss all Peterson's claims, including the two pleaded in the alternative. Dkt. 39. Peterson responded in opposition, Dkt. 41, and Lottery.com replied, Dkt. 43.

**A. FLSA**

Peterson asserts that he is covered by the FLSA and that Lottery.com failed to pay him minimum wages as required by the law. Dkt. 38 ¶¶ 41, 43. Specifically, Peterson claims that he is entitled to "unpaid minimum wages," *id.* ¶ 44, "for any week in which he performed any work." *Id.* ¶ 46. But Peterson also "demand[s] that he be paid **full regular pay** compensation as required by the FLSA . . ." *Id.* ¶ 50 (emphasis added). Peterson misapprehends the FLSA.

The FLSA requires employers to pay minimum wage to their nonexempt employees. 29 U.S.C. § 206(a)(1). Specifically, the FLSA establishes that an employee covered by the Act must be paid a minimum wage of at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). However, the FLSA also specifically exempts from its provisions "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); *Timm v. Advanced Eng'g Sols.*, No. A-12-CV-227-ML, 2014 WL 12649850, at *6 (W.D. Tex. Mar. 18, 2014) (consent case).

The Supreme Court recognized in *Christopher v. SmithKline Beecham Corporation* that the Section 213(a)(1) "exemption . . . is premised on the belief that exempt employees typically earned salaries well above the minimum wage and enjoyed other benefits that set them apart from the nonexempt workers entitled to overtime pay.'" *Meza v. Intel. Mex. Mktg.*, 720 F.3d 577, 586 (5th Cir. 2013) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 166 (2012)). The Court reasoned that the salaried employees in *Christopher* "who made significantly more than minimum wage [there, $70,000], were not the sort of employees the FLSA was meant to protect, thus implying only that earning significantly more than minimum wage may preclude relief under the statute." *Id.* (citing *Christopher*, 567 U.S. at 166).[2]

[2] FLSA exceptions are affirmative defenses, and they "are to be narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky*, 361 U.S. 388, 392 (1960); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) ("the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof."). Nevertheless, "[d]ismissal based on a successful affirmative

Lottery.com moves to dismiss Peterson's FLSA claim, asserting the affirmative defense that Peterson was (or is) an exempt employee. Dkt. 39 at 5–6. To fall within an exemption, "three conditions must be met: First, the employee must meet certain criteria concerning the performance of executive, administrative, and professional duties. Second, the employee must meet certain minimum income thresholds. Finally, the employee must be paid on a 'salary basis.'" *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 290 (5th Cir. 2021) (en banc).

The undersigned has little trouble concluding Peterson was employed in a capacity that exempts him from the provisions of the FLSA. *See Dewan v. M-I*, 858 F.3d 331, 334 (5th Cir. 2017) (exempt employee is one whose primary duty consists of office work directly related to management policies or general business operations for employer, including work requiring exercise of discretion and independent judgment). Peterson's allegations state his work was related to management, IT, and business operations, requiring discretion and independent judgment. Dkt. 38 ¶ 27. For example, he alleges the tasks he was responsible for included "managing company cloud accounts"; "provide due diligence on merger and acquisition talks"; "maintain communications with Patent Attorneys around company trademarks and registrations"; "manage proper operations with VP of IT Carl Wells to comply with company IT policies"; and "create new website for primary domain lottery.com [and] provide domain support for sports.com." *Id.* The conclusion that Peterson was (or is) exempt is buttressed by Peterson's allegations, which the court takes as true that he was to be employed with annual salaries of $200,000 and $350,000 paid biweekly. Dkt. 38 ¶¶ 6, 8. Those salaries are well above the minimum wage and exceed $107,432.

Peterson contends it may be "premature" to rule that an FLSA exemption forecloses a plausibly stated § 207(a)(1) claim. Dkt. 41 ¶¶ 8, 9 (citing *White v. U.S. Corr.*, 996 F.3d 302, 310

defense can be appropriate when that defense appears on the face of the complaint." *Carbon Six Barrels v. Proof Rsch.*, 83 F.4th 320, 324 (5th Cir. 2023) (citing *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017)).

(5th Cir. 2021) (discussing applicability of the Motor Carrier Act in an overtime-wage dispute)). "[B]ut the determination as to whether an employee is exempt under the FLSA is primarily a question of fact typically better suited for summary judgment." *White*, 996 F.3d at 310 (quoting *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)) (cleaned up). Nonetheless, "the *ultimate decision* whether [an] employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Fraser v. Patrick O'Connor & Assocs.*, 954 F.3d 742, 745 (5th Cir. 2020) (quoting *Lott v. Howard Wilson Chrysler-Plymouth*, 203 F.3d 326, 331 (5th Cir. 2000)) (emphasis added).

"[T]he only function of the federal judiciary under the FLSA 'is to assure to the employees of a covered company a minimum level of wages,' [the Fifth Circuit has] said that '[a]rguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the Act.'" *Martin v. PepsiAmericas*, 628 F.3d 738, 741 (5th Cir. 2010) (quoting *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974)). To be clear: "the only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards." *Id.*

Even if Peterson's allegations did not support the obvious conclusion that he is exempt, his allegations make clear that he is seeking recovery of unpaid wages in an amount Lottery.com allegedly agreed to pay him. On pages nine through ten of the SAC, Peterson lists the amounts he alleges he is owed by pay period, beginning July 22, 2022 and continuing through July 19, 2024. Dkt. 38 at 9–10. The biweekly salary amount is $13,461.54, and he contends he is owed two $70,000 bonuses, reimbursements for company expenses "he personally paid to keep the company operating," and loss of stock options. *Id.* at 10–11.

But the FLSA does not provide a cause of action for unpaid wages but rather only for failure to pay an employee overtime pay or the legal minimum wage, currently $7.25 per hour. *Villa v. Waters*, 2009 WL 1650482, at *1–2 (W.D. Tex. June 11, 2009) (concluding employee did not state FLSA claim because allegations involved failure to pay wages rather than unpaid minimum wages or overtime pay); *Abatement v. Williams*, 324 S.W.3d 858, 865 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding FLSA provides private cause of action for failure to pay minimum wages and overtime pay, not for failures to pay wages).

Peterson has not pleaded a minimum wage claim (overtime wage claim) under the FLSA. The FLSA provides for a private cause of action against an employer who violates the Act's minimum-wage and overtime provisions. *Villa*, 2009 WL 1650482, at *1. The FLSA permits an employee to sue their employer for unpaid minimum wages or unpaid overtime compensation. *Id.* Peterson does not complain about unpaid minimum wages or unpaid overtime compensation. He complains about unpaid wages to the tune of hundreds of thousands of dollars of allegedly unpaid salary and bonuses. Accordingly, the undersigned will recommend that the District Judge dismiss Peterson's first cause of action for violation of the FLSA.

**B. Breach of Contract**

Peterson's second claim is for breach of contract. Dkt. 38 at 14. He contends Lottery.com breached a "written employment contract." *Id.* ¶ 53. Lottery.com moves to dismiss Peterson's claim, relying on "the long-standing rule in Texas of employment at will" and arguing that Peterson failed to "clearly and specifically allege an express agreement to the contrary" required to overcome that rule. Dkt. 39 ¶ 12.

*1. Traditional breach of contract*

Under Texas law, to prevail on a breach of contract claim, a plaintiff must allege and prove the existence of, among other things, a valid contract and that the defendant breached the contract. *S&S Emergency Training Sols. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

Peterson's breach of contract claim is based on his allegation that he and Lottery.com "entered into a written employment contract whereby [he] was employed to perform services as Vice President of Research and Development for Lottery.com." Dkt. 38 ¶ 53. He then refers to the "written employment contract" as an "offer letter" which he alleges "was eventually amended by [his] February 2022 promotion to Executive Vice President, Technology." *Id.* Peterson further alleges that the "contract incorporated the laws of Texas." *Id.* ¶ 55. He adds:

> Defendant Lottery breached the contract by:
> ▪ Failing to pay Plaintiff his bi-weekly salary of $13,461.54 (being $350,000 annualized) – from 7/22/2022 to present;
> ▪ Failing to pay Plaintiff his 25% annual bonus
> ▪ Failing to reimburse Plaintiff for company expenses; and
> ▪ Making false misrepresentations that Plaintiff would be compensated.

*Id.* ¶ 56. Peterson contends Lottery.com "continues to willfully breach the agreement by failing to compensate and reimburse." *Id.* ¶ 57. Peterson further claims that because he "was promised wages in return for his work/services, a valid contract existed or at minimum an implied quasi-contract existed." *Id.* ¶ 62. Finally, he contends that Lottery.com breached "the agreed payment structure in the employment agreement, which is a claim separate and distinct from one brought under the FLSA for failure to pay minimum wages." *Id.* ¶ 63. Lottery.com argues that the SAC fails to attach an enforceable contract and allege the terms of an enforceable contract. Dkt. 39 ¶ 13.

Under Texas law, a breach of contract claim requires proof of the existence of a valid contract. *Mullins v. TestAmerica*, 564 F.3d 386, 418 (5th Cir. 2009). A contract is "legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations."

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). The SAC alleges only that Peterson "was employed to perform services as Vice President of Research and Development for Lottery.com." Dkt. 38 ¶ 53. This allegation falls short of the Rule 8(a) standard.

Lottery.com points out that Peterson did not quote or attach an employment agreement to the SAC. Dkt. 39 ¶ 7. The EVP of Technology offer Peterson attached to the SAC reads in its entirety:

> Dear Ryan Peterson,
>
> In recognition of your hard work and dedication to AutoLotto, Inc. dba Lottery.com ("Lottery.com"), we are delighted to confirm your new title and salary. Effective as of February 14, 2022, your title will be Executive Vice President, Technology and your biweekly salary will be $13,461.54 (being $350,000 annually). You will see this change in pay reflected on your March 4, 2022, payroll. On behalf of the executive team and the Board of Directors, congratulations!
>
> If you have any questions please don't hesitate to reach out to your supervisor or the HR Department to discuss. Again, thank you very much for your commitment to the ongoing success of Lottery.com.
>
> My thanks,<br>Tony, CEO

Dkt. 38-1 (Exhibit A). That undated communication appears to be on Lottery.com letterhead. *Id.* The purported offer letter does not amount to a contract as a matter of law. It does not contain typical essential terms such as duties or responsibilities and it contains no temporal term.

In Peterson's Response, he raises, for the first time, the argument that a unilateral agreement existed between the parties—Peterson's performance for Lottery.com's promise to pay him. Dkt. 41 ¶13. Peterson cites two propositions from Texas courts. *Id.* First, "[a] unilateral contract is created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Pickle v. Universal Cable Holdings*, 534 F. Supp. 3d 663, 676 (N.D. Tex. 2021). Second, a "unilateral employment contract is created when an employer promises an employee certain benefits in exchange for the employee's performance,

and the employee performs." *City of Hous. v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011). "As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021). However, the undersigned will address Peterson's claim here.

Peterson's allegations show that individuals working for Lottery.com made promises conditioned on "the company [resolving] its current state of insolvency," not Peterson's performance. Dkt. 38 at 17–20. At the very least, this indicates there was not mutual assent or a meeting of the minds between the parties as to whether and what performance was expected of Peterson. *See Pickle*, 534 F. Supp. 3d at 674 ("A valid and enforceable contract under Texas law requires: . . . a meeting of the minds."). Additionally, the terms of the alleged unilateral contract are similarly vague as they are in Peterson's allegations for the written contract.

Peterson alleges no facts that lead to the conclusion that the parties entered into an employment agreement and the promotion communication allegedly amended a prior offer letter. Peterson does not rebut the presumption that his employment was at will. The language providing Peterson a title bump and a "biweekly salary will be $13,461.54 (being $350,000 annually)," Dkt. 38-1, is too indefinite to enable the court to understand Peterson's obligations under the contract. *See Hamilton v. Segue Software*, 232 F.3d 473, 480 (5th Cir. 2000). "In practical terms, this statement of an annualized base salary does not provide a guarantee of employment, but merely provides a benchmark to evaluate one's pay." *Id.* (citing *Stone v. Jo–Ann Stores*, 109 F. Supp. 2d 752, 755 (N.D. Ohio 2000) (interpreting Texas law)).

*2. Texas Payday Law*

Peterson seems to argue that his common law breach of contract claim is a different species of common law breach of contract claim in that he may bring it as of right. His position is problematic.

He states that "[a] worker has a choice either to file an administrative claim with the TWC or a common law breach of contract claim in district court." Dkt. 38 at 15 (citing *Igal v. Brightstar Info. Tech. Grp.*, 250 S.W.3d 78, 82 (Tex. 2008); *Hull v. Davis*, 211 S.W.3d 461, 464 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). But "Chapter 62 of the Payday Law explicitly provides for a private cause of action for failure to pay ***minimum*** wages, and the Legislature's 'express inclusion of a private right of action in chapter 62 and omission of that language in chapter 61 strongly suggests that the legislature did not intend a private right of action under chapter 61.'" *Byun v. Hong*, 641 S.W.3d 821, 829 (Tex. App.—Tyler 2022, no pet.) (emphasis added) (quoting *Abatement*, 324 S.W.3d 858, 864–65). Thus, the Texas Payday Law allows employees who have been denied wages (other than minimum wages) to file wage claims with the Texas Workforce Commission, but it does not afford employees a specific private right of action. *Timm*, 2014 U.S. Dist. LEXIS 200510, at *17 (citing *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F. Supp. 2d 635, 668 (S.D. Tex. 2013)); *Igal*, 250 S.W.3d 78, 81–82; *Abatement*, 324 S.W.3d at 864 (nothing in language of chapter 61 shows any intent to allow private right of action).

The SAC is crystal clear, Peterson's "claim [is] for breach of the employment agreement, [and he] does not seek unpaid minimum wages or unpaid overtime compensation." Dkt. 38 ¶ 60. The SAC alleges only: "that Lottery.com breached the agreed payment structure in the employment agreement." *Id.* ¶ 63. Peterson is thus unable to recover directly under the Texas Payday Law in this action.

*3. Presumption of at-will employment*

This case may also turn on whether the threadbare allegation that Peterson and Lottery.com "entered into a written employment contract whereby Plaintiff was employed to perform services as Vice President of Research and Development for Lottery.com" in which role he would be compensated $200,000 annually, Dkt. 38 ¶¶ 6, 53, directly limited in a meaningful and special way, Lottery.com's right to terminate Peterson without cause. *See Hamilton v. Segue Software*, 232 F.3d 473, 477–78 (5th Cir. 2000).

"The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary." *Id.* (quoting *Ronnie Loper Chevrolet–Geo v. Hagey*, 999 S.W.2d 81, 83 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998))). "To rebut the presumption of employment at will, an employment contract must directly limit in a 'meaningful and special way' the employer's right to terminate the employee without cause." *Id.* (quoting *Rios v. Tex. Com. Bancshares*, 930 S.W.2d 809, 815 (Tex. App.—Corpus Christi 1996, writ denied) (quoting *Massey v. Hous. Baptist Univ.*, 902 S.W.2d 81, 83 (Tex. App.—Houston [1st Dist.] 1995, writ denied))).

The gravamen of Peterson's breach of contract claim is that various offer letters created a binding contract. But Peterson merely alleges salaries and titles. Peterson alleges little else about these communications. Paraphrased emails, which Peterson describes as offer letters, do not constitute a contract. The lack of factual allegations as to the purported agreement's terms—specifically a clear statement that Peterson's employment was not at will—is fatal to a breach of contract claim in the employment context. And without a contract, there can be no breach.

*4. Conclusion*

Peterson's Second Amended Complaint fails to allege the elements of breach of contract. Peterson also incorrectly asserts a claim under the Texas Payday Law, but he relies on a provision of the law that is limited to claims for unpaid minimum wage; he is clear he is not seeking unpaid minimum wages. The SAC also does not allege that Lottery.com unequivocally gave up its right to terminate Peterson. Accordingly, for each of those three independent reasons, he fails to state a claim for breach of contract.

**C. Common Law Fraud and Fraud in the Inducement**

*1. Threshold matter: at-will employment*

The undersigned's conclusion that the alleged offer letter did not alter Peterson's "at-will status . . . precludes his fraud claims, because an at-will employee cannot bring fraud claims that depend on continued employment." *Studer v. Moore*, No. 14-18-00640-CV, 2021 Tex. App. LEXIS 1209, at *4-5 (Tex. App.—Houston [14th Dist.] Feb. 18, 2021, no pet.) (quoting *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 401–02 (Tex. 2014)). "To allow a promise that is contingent on continued at-will employment to be enforced in a suit for fraud would mock the refusal of enforcement in a suit for breach of contract, making the non-existence of a contract action largely irrelevant, and would significantly impair the at-will rule." *Sawyer*, 430 S.W.3d 396 at 401–402. Accordingly, the undersigned will recommend dismissal of Peterson's fraud claim.

*2. Threshold matter: economic loss rule*

Lottery.com further argues "because [Peterson's] fraud claims revolve around an employment contract, [the] fraud claims are barred by the economic loss rule." Dkt. 39 ¶ 20 (citing *Homeland Ins. Co. of N.Y. v. Clinical Pathology Labs.*, 2021 U.S. Dist. LEXIS 145626, at *22-23 (W.D. Tex. August 4, 2021) (Pitman, J.)). In his Response, Peterson makes an erroneous citation

to Lottery.com's argument and contends that he "pleaded that the economic loss rule does not apply because the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." Dkt. 41 ¶ 26. In the SAC, Peterson makes no reference to the economic loss rule, so to claim he pleaded it is incorrect. Furthermore, the undersigned found Peterson's allegations insufficient to allege the existence of an enforceable contract.

*3. Merits of fraud claim*

If the District Court does not accept the undersigned's recommendation that Peterson's fraud claim be dismissed based on his at-will status or because his claim is barred by the economic loss rule, the undersigned recommends the claim be dismissed on any of four independent grounds.

Peterson brings a claim for common law fraud and fraud in the inducement. Dkt. 38 at 16. The SAC provides that Peterson "would not have entered into the contract but for the reasonable expectations from representations exhibited in the terms of the contract that he would not be compensated for his work for over ten months. In addition[,] representatives for [Lottery.com] represented and assured [Peterson] that they would honor all contract terms and fully compensate [him]." *Id.* ¶ 65. Peterson contends Lottery.com should have known its employees' "representations were false or made recklessly." *Id.* Lottery.com also moves to dismiss this claim, arguing the SAC does not meet Rule 9(b)'s heightened pleading standard applicable to fraud claims. Dkt. 39 at 8.

In Texas, the elements of common law fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the

party acted in reliance on the representation; and (6) the party thereby suffered injury. *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

As an initial matter, the undersigned notes pleading fraud as a cause of action requires pleading "with particularity." FED. R. CIV. P. 9(a). Fifth Circuit precedent interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009); *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997); *Nathenson v. Zonagen*, 267 F.3d 400, 412 (5th Cir. 2001). "Put simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue." *Dorsey v. Portfolio Equities*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

a. <u>No contract</u>

In Texas, a plaintiff must show that his reliance on the defendant's misrepresentations induced him to enter into a contract, not just contractual negotiations. *See Williams*, 345 S.W.3d at 126–27; *ISG State Operations v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 716–718 (Tex. App.—Eastland 2007) ("The supreme court's analysis makes clear that the basis of any fraudulent inducement claim must be an *executed contract* that was procured by fraud, without which would not have been executed, and the damages sought must flow directly from that contract.") (emphasis added).

The SAC alleges: Peterson "would not have entered into the contract but for the reasonable expectations from representations exhibited in the terms of the contract that he would not be

compensated for his work for over ten months." Dkt. 38 ¶ 65. But there is no contract attached to the SAC, and Peterson alleges no specific contract terms. Indeed, the undersigned concluded that there is no contract between Peterson and Lottery.com. Accordingly, the undersigned recommends dismissal of Peterson's fraud claim on this basis.

b. Timing

The SAC includes a list of haphazard, bullet-pointed allegations presented as quoted statements made by Lottery.com leadership. The allegations are non-specific, conclusory, and repetitive. Dkt. 38 at 16–21. Peterson alleges that the quoted statements were repeated by various means: "Verbal Conversations, text messages, and emails." *Id.* Peterson contends that the eight statements he quotes in the SAC were made for the same reason:

> These statements, representations, and schemes were made because Defendant had not compensated Plaintiff to date, and never intended to do so when Defendant asked Plaintiff to continue [] working in July 2022. The statements were made to induce Plaintiff to remain employed and to continue work for Lottery.com, Plaintiff that he was not furloughed in July 2022, and he has continued to complete work for Defendant as of this filing date.

*Id.*

"A false statement made after the parties entered into their contract could not have induced the contract." *Mohamed Ahmed v. Hinga Mbogo*, No. 05-17-00457-CV, 2018 Tex. App. LEXIS 5849, at *32–33 (Tex. App.—Dallas July 30, 2018, pet. denied) (quoting *Van Marcontell v. Jacoby*, 260 S.W.3d 686, 691 (Tex. App.—Dallas 2008, no pet.) ("if at the time the parties entered into a written contract there had been no fraud or misrepresentation, the contract is binding on both parties and cannot be set aside for the representations of anyone occurring afterward because such representations could not have induced the contract")).

Peterson alleges the earliest statement was made sometime in approximately July 2022 and the latest made in approximately June 2024. The undersigned takes judicial notice that July 2022

is over two years *after* Peterson entered the alleged contract and that June 2024 is more than four years after Peterson entered the alleged contract (the undersigned takes further judicial notice that most of approximate dates Peterson alleges are also after he alleges he was paid for two years by Lottery.com). *Id.* Because these statements occurred after Peterson alleges he entered a contract with Lottery.com, the undersigned will recommend dismissal of his fraudulent inducement claim on this basis.

c. Intent

Relatedly, the SAC does not contain sufficient allegations to reasonably infer that Lottery.com had no intention of paying or reimbursing him at the time the parties entered the alleged contract.

"A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033–34 (5th Cir. 2010) (citing *Spoljaric v. Percival Tours*, 708 S.W.2d 432, 434 (Tex. 1986). "While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made." *Spoljaric*, 607 F.3d at 434. However, "failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." *Id.* at 435. Partial payment "can negate an intent not to keep a promise at the time it was made." *Potter*, 607 F.3d at 1034.

A 2023 Fifth Circuit case is instructive. In *Wesdem v. Illinois Tool Works*, the Fifth Circuit affirmed a 12(b)(6) dismissal where an auto part distributor's fraud claim against a manufacturer was dismissed because the alleged facts did not support an inference that the manufacturer's alleged promise was false or that the manufacturer knew it was false when made. 70 F.4th 285,

289 (5th Cir. 2023). Just as in *Wesdem*, Peterson's alleged facts do not allow the court to reasonably infer that in March 2020 Lottery.com "knew or should have known these representations [that Lottery.com would honor all contract terms and fully compensate Peterson] were false or made recklessly." Dkt. 38 ¶ 65. While Peterson alleges that the promise was false and that Lottery.com knew it was false, these conclusory allegations are "unadorned" and "devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

To be sure, Lottery.com's alleged nonperformance for over two years "is a circumstance to be considered with other facts to establish intent." *Spoljaric*, 708 S.W.2d at 435. But Peterson alleges no "other facts" suggesting that Lottery.com *intended* not to perform. On the contrary, Peterson's alleged facts support the opposite inference. Peterson alleges that he worked successfully enough at Lottery.com to earn salary increases and title bumps. He also alleges that he was paid regularly for over two years.

Because the SAC does not contain factual content that allows an inference that his claim is plausible, the undersigned will recommend dismissal of Peterson's fraud claim on this basis.

d. <u>Future predictions</u>

"[A] prediction, or statement about the future, is essentially an expression of opinion, future predictions are generally not actionable." *Austin Cycle Imps. v. Genuine Scooters*, No. 1:20-CV-782-RP, 2021 U.S. Dist. LEXIS 123808, at *4-5 (W.D. Tex. 2021) (quoting *Hoffman v. L & M Arts*, 838 F.3d 568, 579 (5th Cir. 2016)). "The generally accepted rule in Texas jurisprudence is that future predictions and opinions, *especially those regarding the future profitability of a business*, cannot form a basis for fraud as a matter of law." *Zar v. Omni Indus.*, 813 F.2d 689, 693 (5th Cir. 1987) (emphasis added). "Predictions and opinions regarding the future profitability of a business generally cannot form a basis for a claim of fraud." *Guevara v. Lackner*, 447 S.W.3d 566,

577 (Tex. App.—Edinburg 2014, no pet.). "This is a wise and sound principle that is deeply embedded in the common law." *Presidio Enters. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 678–79 (5th Cir. 1986) (citing *Deming v. Darling*, 148 Mass. 504, 20 N.E. 107 (1889)).

The statements about which Peterson complains are financial predictions related to the business. Examples include:

- "The company acknowledges that back pay is owed to various members of the team who were not furloughed properly, or subsequently asked to do work after furlough. *When the company resolves its current state of insolvency* it will honor those debts and make good on all of the final calculation of all moneys owed once the audit is complete.";
- "*Once the company gets funding from UCIL or another outside investor* then everyone will get paid. Were just waiting for the S1 to be finalized.";
- "Lottery.com was working to reimburse Plaintiff for the expenses that were not paid since May 6, 2022, but Lottery.com was *waiting on confirmation of cash in the bank and a 'cursory audit' of the financials*."; and
- "Lottery was *waiting on Woodford Eurasia to put the $2.5 million in the bank* and everyone would get caught back up and Lottery would be able to start moving the company forward again."

*Id.* at 17–20 (quotations in original; emphasis added).

Because the statements Peterson alleges are predictions about a business's future financial viability and are not actionable as a matter of law, the undersigned will recommend dismissal of Peterson's fraud claim on this basis as well.

*4. Conclusion*

Peterson's fraud claims should fail for six reasons. First, he is an at-will employee, thus his allegations that he has continued to work for Lottery.com bar his fraud claim as a matter of law. In the alternative, Peterson makes clear that his fraud claim stems from Lottery.com's alleged contractual representations and assurances to Peterson that "they would honor all contract terms and fully compensate" him. Dkt. 38 ¶ 65. And because his claim revolves around the alleged contract between the parties, it is thus barred by the economic loss rule. *Homeland Ins. Co. of N.Y.*, 2021 U.S. Dist. LEXIS 145626, at *22–23 (Pitman, J.) ("Because Homeland's claim depends on

the existence and enforceability of the 2017 Policy, it revolves around the insurance policy between the parties and is thus barred by the economic loss rule."). If his at-will employment or the economic loss rule do not bar his fraud claim *ab initio*, it should still fail because Peterson fails to allege facts sufficient under Rules 8(a) and 9(b) that would give rise to a fraud claim. Accordingly, the undersigned will recommend dismissal of Peterson's fraud claim on these bases.

**D. Quantum Meruit / Unjust Enrichment (pleaded in the alternative)**

Peterson's cause of action for "quantum meruit/unjust enrichment" is pleaded in the alternative should the court conclude that his alleged "employment contract is not enforceable." Dkt. 38 ¶ 72. Lottery.com moves to dismiss this claim on the grounds that Peterson failed to state a facially plausible claim for quantum meruit. Dkt. 39 ¶ 21.

*1. Quantum meruit*

"Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received." *Metroplexcore v. Parsons Transp.*, 743 F.3d 964, 975 (5th Cir. 2014) (quoting *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (internal quotations omitted)). "Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished" on the theory that non payment [*sic*] for the services rendered and knowingly accepted would otherwise "result in an unjust enrichment to the party benefited by the work." *Id.* (quoting *Vortt Expl. Co. v. Chevron U.S.A.*, 787 S.W.2d 942, 944 (Tex. 1990) (internal quotations omitted)). "To recover in quantum meruit, a plaintiff must establish that: '1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Id.* (quoting *Vortt*, 787 S.W.2d at 944) (internal quotations

omitted). "[T]he measure of damages in quantum meruit is the "reasonable value of the work performed.'" *Timm*, U.S. Dist. LEXIS 187176, at *8 (quoting *Sullivan v. Leor Energy*, 600 F.3d 542, 550 (5th Cir. 2010)).

Peterson's quantum meruit claim incorporates the first 69 paragraphs of the SAC. Dkt. 38 ¶ 71. He goes on to allege:

> Plaintiff continues to render valuable sales services to Defendant by participating in management of Defendant's business, the benefits of which were accepted by Defendant. *Plaintiff rendered management services with an understanding and expectation that Plaintiff would be compensated for his services as agreed*. Defendant has accepted and continues to retain the benefits of Plaintiff's efforts by receiving and retaining substantial revenues. In the alternative to Plaintiff's breach of contract allegations, Plaintiff is entitled to recover the reasonable value of his management services rendered to Defendant.

*Id.* ¶ 72 (emphasis added). He continues: the services he rendered "have a reasonable fair market value in excess of the minimum jurisdictional limits of this Court, for all of which Plaintiff hereby sues." *Id.* ¶ 75. Peterson "seeks damages in the amount of all respective unpaid wages, bonuses, and reimbursements, plus liquidated damages" and "recovery of all attorney fees, costs, and expenses of this action, to be paid by" Lottery.com. *Id.* ¶ 78.

a. Impermissible damages

The SAC alleges "Plaintiff was not properly compensated for his work at the applicable salary that he contracted to earn." Dkt. 38 ¶ 75. By seeking "the applicable salary that he contracted to earn," *id.*, Peterson clearly means the compensation set forth in the alleged employment contract. He is seeking contract damages. But "Texas law is clear that quantum meruit and unjust enrichment cannot be used to enforce a contract, but merely permit restitution of the reasonable value of services provided." *Sullivan*, 2006 U.S. Dist. LEXIS 73609, at *14 (collecting cases). Accordingly, the undersigned will recommend dismissal of Peterson's quantum meruit claim on this basis.

b. <u>Nonpayment</u>

If the District Court declines to adopt the undersigned's recommendation to dismiss Peterson's quantum meruit claim on the grounds that he seeks impermissible damages, the undersigned recommends dismissing Peterson's quantum meruit claim for failure to allege nonpayment of reasonable value for his services. Lottery.com argues that Peterson failed to allege nonpayment. Dkt. 39 ¶ 22. Lottery.com argues that Peterson "complains about not being paid at a biweekly salary totaling $250,000.00 [*sic*] per year," *id.*, but does not allege whether he was paid a smaller sum or nothing at all.

In his Response, Peterson cites *Kitchen v. Frusher* for the proposition that quantum meruit "prevents companies from refusing to pay an employee wages and escaping liability if the employee did not have an employment contract and failed to file a Payday claim within six months." Dkt. 41 ¶ 31 (citing 181 S.W.3d 467, 474–76 (Tex. App.—Fort Worth 2005, no pet.)). He then argues without explanation or analysis, "Similarly, to *Nart*, this Court should deny Defendant's 12(b)(6) Motion to dismiss Plaintiff's alternative quantum meruit claims." *Id.* (citing *Nart v. Open Text Corp.*, No. A-10-CA-870 LY, 2011 U.S. Dist. LEXIS 96449, at *12 (W.D. Tex. 2011) R&R adopted by U.S. Dist. LEXIS 167863, at *2 (W.D. Tex. 2011)).

Problematically for Peterson, nowhere does he allege that he has not been paid a reasonable amount for his services. Rather, he alleges he has not been paid a $350,000 annual salary. Recovery in quantum meruit presupposes nonpayment of a reasonable value. *See Metroplexcore*,743 F.3d 964, 975; *see Timm*, 2014 U.S. Dist. LEXIS 187176, at *8 (where calculations and hourly rates stated in the previous paragraph gave rise to a reasonable estimate of the value of all services provided for the benefit of defendants in an approximate amount). By failing to allege that he was

not paid a reasonable value for his services and alleging what that reasonable value is or how it might be calculated, Peterson has failed to state a claim for quantum meruit.

*2. Unjust enrichment*

As a preliminary matter, "because the Court is bound to apply Texas law as interpreted by the Texas Supreme Court, and because the Court is also bound by Fifth Circuit precedent interpreting Texas law, the Court concludes that there is an unjust enrichment cause of action under Texas law." *Branch Banking & Tr. Co. v. Healthgrowth Credit*, No. 1:18-CV-783-RP, 2019 U.S. Dist. LEXIS 139450, at *17–18 (W.D. Tex. 2019) (order overruling objections and adopting the undersigned's report and recommendation).

"Texas law . . . recognizes two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit." *Digit. Drilling Data Sys. v. Petrolink Servs.*, 965 F.3d 365, 379 (5th Cir. 2020). "If a plaintiff's unjust enrichment claim is based on a defendant's wrongful securing of a benefit, then a plaintiff must plead facts showing fraud, duress, or the taking of undue advantage." *Id.* (citing *Digit. Drilling*, 965 F.3d at 380). "If a plaintiff's unjust enrichment claim is based on passive receipt of a benefit that would be unconscionable to retain, then the plaintiff does not need to plead or prove that the defendant acted wrongfully." *Id.* (citing *Digit. Drilling*, 965 F.3d at 380). "A plaintiff may recover under the passive form of unjust enrichment when the defendant passively receives a benefit from the plaintiff *as a result of a third-party's actions*, and it would be unconscionable for the defendant to retain the benefit." *Fu v. Chin*, No. 3:18-cv-2066-N-BN, 2020 U.S. Dist. LEXIS 225606, at *18 (N.D. Tex. 2020). "The theory available is the one '*actually alleged*.'" *Credos Indus. Supplies v. Targa Pipeline Mid-Continent Westtex ( in re KP Eng'g, L.P.)*, 63 F.4th 452, 457 (5th Cir. 2023) (quoting *Digit. Drilling*, 965 F.3d at 380) (emphasis in original).

As to the passive theory, Peterson asserts, "facts are sufficient to infer that it is and was unconscionable for Defendant to passively retain services rendered by Plaintiff and unconscionable to refuse to pay Plaintiff his wages." Dkt. 41 ¶ 34. The passive theory fails because Peterson does not allege third-party involvement. *See Fu*, U.S. Dist. LEXIS 225606, at *18.

As to the other theory, Peterson contends his claim is based "[Lottery.com's] fraudulent representations that continued to assure [him] that he would be compensated and [Lottery.com] took undue advantage of [his] services by failing to pay [Peterson] the agreed compensation or at minimum the reasonable value of his services." Dkt. 38 ¶ 77. This allegation is sheer boilerplate, and there are no facts supporting a duress or taking of undue advantage theory. The only factual basis in the complaint is the alleged fraudulent conduct. But Peterson failed to plead fraud in accordance with Rule 9(b). *See Sullivan*, 2006 U.S. Dist. LEXIS 73609, at *14 ("He never reveals in the second amended complaint that he performed services under duress, and he cannot establish fraud or 'undue advantage' because he has not pled any detriment to himself, aside from his efforts in performing the services."); *accord Rodriguez v. Fuentes (In re Cogent Energy Servs.)*, Nos. 23-33659, 23-3212, 2024 Bankr. LEXIS 1878, at *16 (Bankr. S.D. Tex. 2024). Thus, Peterson's claim for unjust enrichment is baseless.

"Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant." *In re ESO Sols. Breach Litig.*, No. 1:23-CV-1557-RP, 2024 U.S. Dist. LEXIS 134337, at *34–35 (W.D. Tex. 2024) (citing *Heldenfels*, 832 S.W.2d at 42) (quotations omitted). Accordingly, the undersigned will recommend dismissal of Peterson's unjust enrichment claim.

**E. Declaratory Judgment**

Peterson includes a final request for a declaratory judgment naming him owner or co-owner of the domain names "lottery.com" and "sports.com." Dkt. 38 at 24. Peterson contends that he "maintained and paid the renewal fees (without reimbursement) . . . for the purpose of keeping [Lottery.com's] business afloat." *Id.* Peterson contends his maintenance of the websites entitles him to be "the sole and exclusive owner thereof." *Id.* ¶ 82. He also alleges that he tried to resolve the issue by asking Lottery.com to either "memorialize in writing" Peterson's ownership interest or "reimburse [him] for the expenses related to the renewal of the Domain Names." *Id.* ¶ 85.

Declaratory judgment, as Lottery.com points out, is a form of relief, not a cause of action. Dkt. 39 ¶ 30; *SJM Irrevocable Fam. Trust v. City of Runaway Bay*, 2024 U.S. Dist. LEXIS 141775, at *14 (N.D. Tex. Aug. 9, 2024) ("the Court notes that declaratory relief, in itself, is not an independent cause of action but a form of relief"); *Tetelestai Mgmt. Grp., LLC v. Kiavi Funding, Inc.*, 2023 U.S. Dist. LEXIS 184462, at *6 (W.D. Tex. October 13, 2023) ("declaratory relief is merely a theory of recovery on an underlying cause of action—it is a procedural device that does not create any substantive rights or causes of action").

Peterson alleges, however, that Lottery.com breached the contract between them by, among other things, "failing to reimburse [Peterson] for company expenses." Dkt. 38 ¶ 56. Peterson claims he has "accumulated $998.45 in renewal fees since August 2022." *Id.* ¶ 86. Peterson does not allege that Lottery.com asked him to pay these renewal fees or that Lottery.com authorized him to do so with personal funds. Furthermore, "[w]hen seeking declaratory relief, a plaintiff must allege facts showing that it appears there is a substantial likelihood that he will suffer injury in the future." *Joseph v. Rodriguez*, 2022 U.S. Dist. LEXIS 250146 (S.D. Tex. Nov. 18, 2022) (citations omitted). In his Response, Peterson alleges that he "has pled facts showing that he continues to face the

threat of losing the domain names due to nonpayment, and that is a real and immediate threat if Plaintiff does not continue to pay renewal fees." Dkt. 41 ¶ 23. The undersigned fails to see how continuing to pay for something on behalf of a company that Peterson has not alleged asked him to pay renewal fees or shown any other interest in maintaining the domain names would continue to harm Peterson when he could stop making payments. The undersigned recommends denying Peterson's request for a declaratory judgment.

## IV. CONCLUSION

Peterson has not managed to allege facts that give rise to a facially plausible claim for any of the causes of action he asserts. Moreover, he has had three opportunities to do so. For that reason—after three strikes—Peterson is out, and the undersigned will recommend dismissal with prejudice.

## V. RECOMMENDATIONS

For the reasons given above, the undersigned **RECOMMENDS** that Lottery.com's Motion to Dismiss (Dkt. 39) be **GRANTED** and the Second Amended Complaint be **DISMISSED WITH PREJUDICE**.

## VI. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED January 23, 2025.

MARK LANE
UNITED STATES MAGISTRATE JUDGE