**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RYAN PETERSON** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CASE NO. 1:23-CV-00646-RP** |
| | § | |
| | § | |
| **LOTTERY.COM, INC. d/b//a** | § | |
| **SPORTS.COM, INC. d/b/a** | § | |
| **AUTOLOTTO, INC.** | § | |
| | § | **JURY DEMANDED** |
| ***Defendant.*** | § | |

**PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE**:

COMES NOW, pursuant to Federal Rule of Civil Procedure 72(b), Carl Wells, ("Plaintiff") objects to the Report and Recommendation of the United States Magistrate Judge ("MJ") (Dkt. 47) ("R&R"). Plaintiff incorporates by reference his response to the Motion to Dismiss (Dkt. 41) and his Second Amended Complaint ("SAC") (Dkt. 38); and in support of the objections Plaintiff will show the Court as follows:

## I. INTRODUCTION

1. This court is on the verge of creating the most convenient and lucrative pathway for employers to escape FLSA liability in the Fifth Circuit. In essence, any small business, struggling business, or start-up business can hire multiple employees, assign and label them with executive functions, offer them a high salary and not pay them any wages without suffering the consequences of the FLSA. **The Honorable MJ is of the opinion that free labor should exist in this country**. Employers can give their employees notice that funds will be paid, but never be held liable for not

paying any wages or minimum wages, as long as they give their employee an offer letter with a high salary. Lastly, employers will no longer be required to pay their employees at least $684 per week to be considered exempt; because according to the R&R whether an employee is **actually** paid $684 a week is not relevant to the 12(b)(6) analysis but only what the Plaintiff was **offered** to the employee.

2. This scenario will become precedent if this Court accepts and adopts the R&R for all three *Lottery* cases. Any company can take advantage of individuals **<u>for free</u>** without any federal repercussions by labeling them as salaried/exempt, giving them specific duties, without ever having to compensate the employees. It is a lucrative way for new businesses or struggling businesses to collect free labor without any repercussions of litigation. There is no longer a need for federal wage laws or exemptions under the FLSA.

3. Plaintiff Peterson brings claims for: (1) minimum wage violations under the Fair Labor Standards Act ("FLSA"); (2) breach of contract; (3) common law fraud and fraud in the inducement; and in the alternative (4) quantum meruit/unjust enrichment.

4. On January 24, 2025 the MJ issued his R&R which recommended the dismissal of all Plaintiff's claims with prejudice. The R&R contains bad case law and fails to analyze important facts within the FLSA cases that have been identified in R&R. Plaintiff objects to all portions of the R&R on fourteen (14) specific grounds.

5. Federal Rule of Civil Procedure 72 allows a party to object to a Magistrate Judge's order on a dispositive issue within 14 days after being served with the order. See FED. R. CIV. P. 72(b)(2). "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition." *Id*.

## II. ARGUMENT AND AUTHORITIES

**A.** (**OBJECTION 1**) – The R&R erred when it found Plaintiff to be an exempt employee, given that the SAC specifically alleges Plaintiff was not compensated $684 per week from July 2022 to present and there are not enough facts that conclusively establish Plaintiff performed executive, administrative, or professional duties under the FLSA.

7. The R&R states "the undersigned has little trouble concluding Peterson was employed in a capacity that exempts him from the provisions of the FLSA." Dkt. 47 pg. 5. The R&R goes on to state that "The conclusion that Peterson was (or is) exempt is buttressed by Peterson's allegations, which the court takes as true that he was to be employed with salaries of $200,000 and $350,000 paid bi-weekly. Those salaries are well above the minimum wage and exceed $107,432." *Id*.

8. The SAC explicitly states that Defendant has **failed to pay any wages for the relevant period** (July 2022 to present), yet the R&R does not take these allegations in Plaintiff's favor and totally disregards these facts in the analysis. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994) (when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory). If the Court were to adopt the R&R it would eliminate the exemption requirements under the FLSA and allow employers to collect free labor. Any diligent attorney could pull these *Lottery* R&R's and advise their client/employers that these *Lottery* cases stipulate that employers do not need to compensate their "salaried" employees as long as the employees have an offer letter of a high salary and general duties. The R&R is absent of an actual analysis of each exemption under the FLSA and automatically concludes that Plaintiff is an exempt employee based on the SAC. A closer look at each FLSA exemption; it is clear that each element has not been conclusively shown and the Court cannot conclude that Plaintiff is an exempt employee based on the face of the SAC:

| *FLSA EXECUTIVE EXEMPTION ELEMENTS* | *PETERSON'S SAC* |
|---|---|
| *(1) The employee must be compensated on a salary basis (as defined in the regulations) at a rate not less than $684* per week.* | Plaintiff alleges he received **<u>no compensation</u>** during the relevant period from July 2022 to present. Plaintiff alleges he continues to work and does not receive $684 per week. Plaintiff was not paid his salary or any compensation during the relevant period. Therefore, it is unclear how the R&R concluded that Peterson was (or is) exempt. |
| *(2) The employee's primary duty must be managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise* | Plaintiff has alleged he was offered the Executive, Vice President of Technology position. No discovery to conclude the position includes "customarily managing the enterprise." The R&R uses the words "discretion" and "independent judgment," yet Plaintiff does not use these words in the SAC. Plaintiff only describes his duties in the SAC but it does not conclusively establish he primarily manages the enterprise. |
| *(3) The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent;* <br><br> *AND* | Plaintiff has alleged he was offered the Executive, Vice President of Technology position. No discovery to conclude the position includes "customarily and regularly directing the work of at least two or more other full-time employees or their equivalent." The R&R does not take facts liberally in Plaintiff's favor and assumes that this element has been met without any facts or evidence. |
| *(4) The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight.* | Plaintiff has alleged he was offered the Executive, Vice President of Technology position No discovery to conclude the position includes "authority to hire or fire." The R&R is replete of any analysis of each element of the executive exemption, yet it conclusively states that there is little trouble to conclude Peterson was employed in a capacity that exempts him from the FLSA. Therefore, we ask the Court to reject the R&R's conclusion that Plaintiff is exempt executive employee under the FLSA. |

| *FLSA ADMINSTRATIVE EXEMPTION ELEMENTS* | *PETERSON'S SAC* |
|---|---|
| *(1) The employee must be compensated on a salary basis (as defined in the regulations) at a rate not less than $684* per week.* | Plaintiff alleges he received **<u>no compensation</u>** during the relevant period from July 2022 to present. Plaintiff alleges he continues to work and does not receive $684 per week. Plaintiff was not paid his salary or any compensation during the relevant period. Therefore, it is unclear how the R&R concluded that Peterson was (or is) exempt. |
| *(2) The employee's primary* | Plaintiff has alleged he was offered the Executive, Vice |

| | |
|---|---|
| *duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;*<br><br>*AND* | President of Technology position. No discovery to conclude the position includes "primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." Facts were not taken liberally in Plaintiff's favor and the R&R erred when it failed to identify which exemption applied. |
| *(3) The employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.* | Plaintiff has alleged he was offered the Executive, Vice President of Technology position. No discovery to conclude the position includes "customarily managing the enterprise." The R&R uses the words "discretion" and "independent judgment," yet Plaintiff does not use these words in the SAC. Plaintiff only describes his duties in the SAC but it does not conclusively establish he exercises discretion and independent judgment. The R&R is inferring facts in the movant's favor and making conclusions not supported by law or fact. Therefore, the R&R erred if it found Plaintiff to be an exempt administrative employee under the FLSA. |

| *FLSA PROFESSIONAL EXEMPTION ELEMENTS* | *PETERSON'S SAC* |
|---|---|
| *(1) The employee must be compensated on a salary basis (as defined in the regulations) at a rate not less than $684* per week.* | Plaintiff alleges he received **no compensation** during the relevant period from July 2022 to present. Plaintiff alleges he continues to work and does not receive $684 per week. Plaintiff was not paid his salary or any compensation during the relevant period. Therefore, it is unclear how the R&R concluded that Peterson was (or is) exempt. |
| *(2) The employee's primary duty must be the performance of work requiring advanced knowledge, defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment;* | Plaintiff has alleged he was offered the Executive, Vice President of Technology position. No discovery to conclude the position includes "work requiring advanced knowledge, defined as work which is predominantly intellectual in character." The R&R uses the words "discretion" and "independent judgment," yet Plaintiff does not use these words in the SAC. Plaintiff only describes his duties in the SAC but it does not conclusively establish he primarily manages the enterprise. |
| *(3) The advanced knowledge must be in a field of science or learning;* | Plaintiff has alleged he was offered the Executive, Vice President of Technology position. No discovery to conclude the advanced knowledge is in a field of science or learning. |

| | |
|---|---|
| *AND* | The R&R does not take facts liberally in Plaintiff's favor and assumes that this element has been met without any facts or evidence. There is not an analysis as to whether this exemption applies. |
| *(4) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.* | Plaintiff has alleged he was offered the Executive, Vice President of Technology position No discovery to conclude Plaintiff acquired this advanced knowledge by a prolonged course of specialized intellectual instruction." The R&R is replete of any analysis of each element of the professional exemption, yet it conclusively states that there is little trouble to conclude Peterson was employed in a capacity that exempts him from the FLSA. What would be the point of having elements of each exemption if it did not matter whether each element was met. Therefore, we ask the Court to reject the R&R's conclusion that Plaintiff is exempt professional employee under the FLSA. |

9. Plaintiff has identified and analyzed each of the three (3) exemptions raised in the R&R, which concluded that Plaintiff was (or is) exempt. Plaintiff has clearly alleged that he has not received any compensation from July 2022 to present, yet the R&R states that it does not matter whether he was paid $684 per week because he was given a salary at the time of hire. Thus, if the Court adopts the R&R it will be creating new precedent that the FLSA exemptions are irrelevant and employers no longer have to compensate employees whom they have designated as salaried/exempt with general duties. **Free labor is back**! Therefore, we respectfully object to the MJ's recommendation that Plaintiff was exempt under the FLSA and ask the District Court judge to **OVERRULE** the R&R's finding that Plaintiff has not plead minimum wage violations under the FLSA.

**B.** (**OBJECTION 2**) – The MJ committed manifest error of law and fact with its use of the cases *Christopher*, *Villa*, *and Abatement* these cases are irrelevant to the analysis of Plaintiff's claims.

10. The MJ cited *Christopher* for the proposition that Plaintiff has pled he was exempt by

stating, "The Court reasoned that salaried employees in *Christopher* 'who made significantly more than the minimum wage [there $70,000] were not the sort of employees the FLSA was meant to protect…" Dkt. 47 pg. 4. In *Christopher*, the Supreme Court found an exemption of outside salesmen from its minimum wage and maximum hours requirements, which was premised on the belief that exempt employees typically earned salaries well above the minimum wage and enjoyed other benefits that set them apart from the nonexempt workers entitled to overtime pay. *See Christopher*. However, there is no claim that Plaintiff is exempt from the FLSA based on the outside salesman exemption; and the *Christopher* case does not analyze whether an employee can be considered exempt if he was offered a high salary, but paid no wages during the relevant period (less than $684 per week).

11. *Villa v. Waters* is distinguishable, the Plaintiff filed FLSA claims because she was not paid for a two-hour window and alleged she was paid $12.50 hour, which is twice the minimum wage. *Id*. Here, Plaintiff is not seeking unpaid wages under the FLSA but to hold Defendant liable and to collect damages for Defendant's failure to pay minimum wages during the relevant period. Plaintiff has presented facts that he was not paid any wages, let alone minimum wages for the relevant time period, unlike the Plaintiff in *Villa* who was compensated above the minimum wage, but not for the two-hour window. *See Villa* at 4.

12. *Abatement* is misapplied (dismissing breach of contract claims against the individual because the Plaintiff referenced Chapter 61's definition of "employer," to bring claim against individual). *Abatement Inc.*, 324 S.W.3d at 863 (Tex. App. 2010). Therefore, it is irrelevant to analyze *Christopher, Villa*, or *Abatement* in deciding whether an Plaintiff is alleging minimum wage violations, when the SAC makes clear that Plaintiff seeks minimum wages as his damages under the FLSA. Therefore, we respectfully object to the MJ's recommendation that the SAC

concludes that the SAC does not plead minimum wage violations and ask the District Court judge to **OVERRULE** the R&R's finding that Plaintiff has not plead minimum wage violations.

**C.** (**OBJECTION 3**) – The R&R erred when it found Lottery.com made promises conditioned on "the company [resolving] its current state of insolvency because the promises were made to induce Plaintiff to perform work, which created a unilateral contract.

14. The R&R states that Plaintiff cannot claim breach of contract because there are no facts that the parties entered into an employment agreement. The R&R states that "Peterson raises for the first time" arguments that a unilateral contract existed, yet these arguments and allegations exist all throughout the SAC. Nowhere in the SAC does the word "bilateral" exist yet the R&R states that because Plaintiff uses the word "unilateral" in the response it is "new." Plaintiff has alleged that an enforceable contract was created when Plaintiff performed work on behalf of Defendant and in return Defendant promised to compensate Plaintiff upon completion of his performance. Dkt. 38 ¶ 28, 31, 53, 57, 61.

15. Instead, the R&R makes the inferential leap (not in Plaintiff's favor) that any promise made by Defendant was conditioned on the company resolving its insolvency and not conditioned on Peterson's performance, even though Peterson has alleged that Lottery offered to compensate Peterson for his performance and Peterson has alleged he performed. *Vanegas* at 303 (Almost all unilateral contracts begin as illusory promises. Take, for instance, the classic text-book example of a unilateral contract: "I will pay you $50 if you paint my house." The offer to pay the individual to paint the house can be withdrawn at any point prior to performance. But once the individual accepts the offer by performing, the promise to pay the $50 becomes binding."). The offer to not compensate Plaintiff due to insolvency or any reason could have been withdrawn at any point prior to Peterson's performance of his duties, and the facts demonstrate that it was not. The facts demonstrate that Defendant made further promises to compensate Plaintiff for his performance.

Therefore, a unilateral contractual relationship existed.

16. In *Vanegas*, the Texas Supreme Court found an enforceable unilateral contract was formed when at-will employees accepted the offer and performed under the promise by remaining employed through the sale or merger. *Vanegas* at 302 (holding unilateral, post-employment contract giving at-will employees portion of proceeds from sale of company if they remained employed, which they did, was enforceable contract). Here, Defendant offered Plaintiff compensation if he remained employed and continued to perform work, which he allegedly performed. *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009).

17. Plaintiff has pled he performed work on behalf of Defendant since July 22, 2022 and has not been compensated for his performance. Defendant offered Plaintiff compensation for his performance from July 2022 to present and Plaintiff has performed his normal duties conditioned on the belief that he would be compensated. If the District Court accepts the R&R it would create bad precedent that unilateral employment contracts are not enforceable, when the Texas Supreme Court states otherwise. Therefore, we object to the R&R's findings that Plaintiff has pled no facts to lead to the conclusion that the parties entered into an enforceable employment agreement.

**D.** (**OBJECTION 4**) – The R&R failed to explicitly address the exceptions to the at-will doctrine as it relates to Plaintiff's breach of contract and fraud claim.

18. The R&R states the longstanding rule in Texas that employment is presumed at-will and because Plaintiff's purported contract failed identify the agreement's terms or a specific statement that Plaintiff's employment was not at will – it is fatal to his breach of contract claim. Again, the MJ has committed manifest error of law and fact because as explained above an at-will employees can create enforceable unilateral contracts. *See Vanegas* and *Pickle v. Universal Cable Holdings*, 534 F. Supp. 3d 663 (N.D. Tex. 2021).

19. As a threshold matter, the R&R cites *Studer* for the position that Plaintiff's "at-will" status

precludes his fraud claims because Plaintiff's fraud claims depend on continued employment. Dkt. 47. The analysis by the MJ ended there, however, a closer look at the cases cited in the R&R identifies that Texas recognizes two general exceptions to the "at-will" employment doctrine. Here, Plaintiff is not bringing his fraud claim based upon Defendant's decision to discharge him, because Plaintiff has alleged he has remained employed as of this date. Texas Courts and Fifth Circuit has held:

> "the cause of action for fraud, which encompasses misrepresentations made before employment, as well as those made during employment, is not barred by the employment at will doctrine." *Offshore Petroleum Divers v. Cromp*, 952 S.W.2d 954 (Tex. App. 1997); *Sawyer v. E I DuPont De Nemours & Co.*, 689 F.3d 463, 468 (5th Cir. 2012); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex. 1986) (allowing a fraudulent misrepresentation cause of action by an employee against an employer during an at-will employment relationship because there was sufficient evidence of the employer having made a promise to do an act in the future with no intention of performing the act).

20. Similarly, here the at-will nature of the agreement does not negate that Plaintiff accepted the offer by continuing to perform work after July 22, 2022, which makes Defendant's promise to pay binding on each unilateral contract Plaintiff accepted and performed. Plaintiff's fraud claims are based on misrepresentations made prior to Plaintiff entering and accepting the unilateral contracts from July 22, 2022 to present by his performance (not continued employment). The promise to pay Plaintiff for work already performed <u>is not based on continued employment</u> and the R&R committed manifest error of law and fact because it failed to analyze whether the alleged misrepresentations are related to Plaintiff's continued employment or enforceable unilateral contracts. Therefore, we object to the MJ's finding that Plaintiff's "at-will" status precludes any breach of contract or fraud claim because Plaintiff sufficiently alleges he is not bringing his claims based upon Defendant's decision to discharge him, and his claims are based on misrepresentations made prior to the entering the unilateral contracts and misrepresentations made during Plaintiff's

employment, which is actionable under Texas laws. *See Offshore* and *Sawyer*.

**E.** **(OBJECTION 5)** – Plaintiff's fraud claim is not barred by the economic loss rule because Plaintiff's fraud claim stems from misrepresentations made by Defendant prior to Plaintiff entering into a unilateral contract, and accepting by his performance.

21. The R&R states Plaintiff's fraud claim is barred by the economic loss rule because he only alleges that his fraud claim stems from misrepresentations made before the parties entered into their contracts. Dkt. 38. Plaintiff pleaded that the economic loss rule does not apply because the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself. *See Formosa Plastics Corp. USA* , 960 S.W.2d at 46 ("it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself"); *Reservoir Sys., Inc. v. TGS-NOPEC Geophysical 20 Co.* , 335 S.W.3d 297, 308 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Tort damages are recoverable for a fraudulent-inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract.").

22. If the District Court accepts and adopts the R&R it will create bad case law that contradicts *Formosa*'s ruling. *See Formosa* at 47 (holding if a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort). Therefore, we object to the MJ's finding that the economic loss rule precludes Plaintiff's fraud claim because the R&R failed to analyze *Formosa*'s applicability and any damages suffered as a result of fraud is sounded in tort. *See Formosa*.

**F.** (**OBJECTION 6**) – The R&R erred when it found no unilateral contract existed between Plaintiff and Defendant; and Plaintiff has shown his detrimental reliance on the Defendant's misrepresentations which induced him to enter unilateral contracts to perform work on behalf of Defendant, which Plaintiff performed and was not compensated.

23. The R&R concluded that there was no contractual relationship between Peterson and

Lottery because there was no contract attached to the SAC. The R&R is creating case law that a contract only exists if it is expressly written; which negates oral agreements and unilateral contracts, which are valid contracts under Texas law. Plaintiff's fraud claims are based on alleged unilateral contracts, which were accepted when Peterson perform work on behalf of Defendant from July 2022 to present. Defendant continuously offered to compensate Plaintiff if he completed the work (i.e. "I will pay you $50 if you paint my house."), which created unilateral contracts which were procured by fraud and misrepresentations that Plaintiff would be compensated. Plaintiff has plead with specific particularity that he detrimentally relied on the misrepresentations made by Defendant, which caused him to continue to perform work under the belief that he would be compensated for his work and personal expenses. Dkt. 38. Therefore we object to the MJ's finding that the SAC fails to allege a contract because a contract was not attached to the SAC given that the R&R does not take into consideration the oral unilateral contracts and the fact that each misrepresentation was made with the intent that Plaintiff rely on the misrepresentation by performing. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994) (when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory).

24. Furthermore, Plaintiff alleges detrimental reliance on Defendant's misrepresentations induced him to enter into a unilateral contract, by his performance. Dkt. 38. The MJ concluded that there was no contract between Plaintiff and Defendant but fails to recognize the existence of unilateral contracts that are binding based on Plaintiff's performance and the offer to compensate Plaintiff not being withdrawn at any time prior to Plaintiff's performance. The R&R focuses on the express offer letter, but fails to analyze the implied unilateral contracts created when Plaintiff was offered compensation to continue to perform work, which became binding when Plaintiff

completed the work since July 22, 2022. *Vanegas* at 303.

**G.** **(OBJECTION 7)** – Plaintiff has provided specific facts surrounding the timing of the misrepresentations.

25. The R&R states that because the statements identified as misrepresentations occurred after Plaintiff alleges he entered a contract with Defendant the MJ recommended dismissal. The R&R only looks at when Plaintiff entered an agreement to be employed by Defendant in July 2020, but fails to look at the timing between the misrepresentations and the enforceable unilateral contracts that were entered into after July 22, 2022. Plaintiff has alleged the misrepresentations were made between March 2022 and June 2024 and each of the misrepresentations were made to induce Plaintiff to continue to perform work.

26. We ask the District Court to take notice of Plaintiff's response and SAC, which identifies the timing of the fraud with particularity. Dkt. 38, 41. Based on the timing of the misrepresentations, the majority of the misrepresentations occurred after Defendant stopped compensating Plaintiff in July 2022, therefore, it can be reasonably inferred that these misrepresentations were made simultaneously with Plaintiff's acceptance of unilateral contracts after July 22, 2022. *See Lopez v. JP Morgan Chase Bank, N.A.*, No. SA-11-CA-936, 2012 WL 2726762, at *2 n.1 (W.D. Tex. July 9, 2012)(finding unilateral contracts are part of Texas common law). Therefore, we object to the MJ's findings that the statements occurred after Plaintiff entered a contract with Defendant because it does not take into account the enforceable unilateral contracts entered by the parties based on Plaintiff's performance after July 22, 2022.

**H.** (**OBJECTION 8**) – Plaintiff has provided specific and particular facts that allow the Court to reasonably infer that Lottery's representatives knew or should have known that that their misrepresentations to induce Plaintiff to perform were false based on the timeline of facts that Defendant never intended to perform.

27. The R&R states that Plaintiff alleges no "other facts" suggesting Defendant did not intend

to perform and states that Plaintiff was successful and was paid regularly for two years. Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. *See Benoit v. Wilson*, 150 Tex. 273, 281, 239 S.W.2d 792, 796-797 (1951). Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made. However, that fact is a circumstance to be considered with other facts to establish intent. *Titterington*, 19 S.W. at 474; *King v. Wise*, 282 S.W. 570, 573 (Tex.Comm'n App. 1926, judgmt adopted).

28. The Texas Supreme Court has held a party's denial that he ever made a promise is a factor showing no intent to perform when he made the promise. *Stone v. Williams*, 358 S.W.2d 151, 155 (Tex.Civ.App. — Houston 1962, writ ref'd n.r.e.). *See also O'Boyle*, 462 S.W.2d at 272. (Denial of a promise coupled with failure to perform the promise is some evidence of fraudulent intent). Texas Supreme Court has also held Courts can consider evidence that the Defendant made no attempt to perform on the promise as evidence bearing on his lack of intent. *Chicago, T. & M.C. Ry. Co. v. Titterington*, 84 Tex. 218, 223-24 (1892) (observing that "subsequent utter failure and refusal to perform the promises or assurances," when coupled with other evidence, tends to show lack of intent to fulfill the promise at the time the speaker made the promise); *Spoljaric* at 434.

29. Here, Plaintiff has alleged Defendant has made no attempt to perform on the unilateral contracts created after his performance. Plaintiff has also alleged a timeline of misrepresentations made by Defendant (including, what, when, where, and why) in an effort to induce Plaintiff to perform. Defendant's subsequent utter failure and refusal to perform tends to show a lack of intent to fulfill each unilateral contract that was accepted by Plaintiff once he performed. Dkt. 38.

30. The R&R cites *Wesdem v. Illinois Tool Works* for the position that Plaintiff alleges "no other facts" that Defendant had "no intention" of adhering to the unilateral contracts. In *Wesdem*,

the Fifth Circuit found "the only fact remotely supporting Wesden's false-when-made allegation is ITW's eventual company-wide prohibition, nearly two years later." Plaintiff's facts are clearly distinguishable because Plaintiff provided a timeline of facts from July 22, 2022 to present related to Defendant making false representations, making no attempt to perform, and denying promises were made. The filing of the Motion and the arguments made by Defendant creates factual inferences that Defendant has denied the promise or denied that unilateral contracts exist, coupled with Defendant's failure to perform is evidence of fraudulent intent. Therefore, we object to the MJ's finding that the SAC lacks specific facts to establish intent not to perform given the SAC has pled Defendant's representations were false and Defendant never intended to perform based on their denial of the promises and their failure to pay the unilateral contracts accepted by Plaintiff once he performed.

**I.** (**OBJECTION 9**) – The R&R failed to address or analyze Plaintiff's facts regarding the exception to "future predictions."

31. The R&R states that statements which are considered financial predictions related to the business are not actionable as a matter of law and the MJ recommended dismissal with no further analysis. Dkt. 47. **Are the exceptions to the general rule not relevant to the analysis?** The R&R cites *Guevara v. Lackner*, for the position that predictions and opinions regarding future profitability cannot form a basis for a claim of fraud. *Guevara v. Lackner*, 447 S.W.3d 566, 577 (Tex. App. 2014). Although, the R&R stops at the general rule, the *Guevara* Court recognizes the exceptions to the general rule, which Plaintiff has specifically pled and responded to in his Response. (Dkt. 38, Dkt. 41). The exceptions to the general rule are: (1) knowledge of the representation's falsity; and (2) an opinion that is based on facts known to be false. *See Guevara* at 377; *Spoljaric at* 434 (Tex. 1986) (citing *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971))(holding a promise to do an act in the future is not actionable fraud unless it is "made with

the intention, design, and purpose of deceiving, and with no intention of performing the act").

32. Here, Plaintiff pled Defendant promised him compensation (from July 22, 2022 to present if he continued to perform work for Defendant) while knowing it would never do so based on misrepresentations that the company was waiting on funding or audits and eventually denying the promise to pay. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) ("An expression of an opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future."). It can be reasonably inferred from the SAC that Defendant's executive members, board members, and chairman of the board's statements purport to have special knowledge of facts that will occur in the future, and Plaintiff's reliance of that special knowledge or opinion to his detriment (which were known to be false) gives fair notice that these misrepresentations constitutes actionable fraud. The allegations that "defendant promised to honor all debts," "once the company gets funding from Woodford everyone will be caught up" or "waiting on confirmation of cash and cursory audit" are actionable fraud because Plaintiff has alleged and provided a timeline of facts that each statement was made with the intention, design, and purpose of deceiving Plaintiff to perform work, and Defendant had no intention of performing by compensating based on its denial of the promise and subsequent failure to pay multiple unilateral contracts. The R&R does not acknowledge the general exception to "future predictions," and we ask the District Court to analyze whether Plaintiff has adequately pled actionable fraud based on the inference that statements by Defendant were made to deceive with no intentions to perform. Therefore, we object to the MJ's finding that the allegations regarding a promise to do act in the future is not actionable because Texas law provides exceptions to the general rule, which Plaintiff has pled with specificity under Rule 9(a).

**J.** (**OBJECTION 10**) – Plaintiff has provided facts that he is seeking reasonable value of his services under quantum meruit theories, and the only evidence available to determine his reasonable value is the Offer Letter attached to the SAC.

33. It appears that the MJ is recommending dismissal because of the inclusion of Plaintiff's wages in the SAC. The inclusion of the wages does not foreclose Plaintiff's quantum meruit claims but provides facts as to what the reasonable value of his services are based on past performance. *See Kitchen v. Frusher* 181 S.W.3d 467, 474 (Tex. App. 2005)(holding evidence of the reasonable annual rate of compensation to be evidence of reasonable value). The MJ foreclosed any opportunity for Plaintiff to show what his reasonable value of service is and automatically concluded that Plaintiff seeks contract damages under quantum meruit, without taking facts liberally in Plaintiff's favor that the Offer Letter can be used as evidence of reasonable value of Plaintiff's services.

34. The R&R also cites *Timm*, which the Court in *Timm* found Plaintiff entitled to relief under quantum meruit and determined the reasonable value of his services based on his affidavit, which identified his hourly rate while working for the Defendant. *Timm* at *14 (W.D. Tex. Mar. 18, 2014). It is unclear how an offer letter that identifies Plaintiff's annual salary is any different than evidence from an affidavit of a Plaintiff's hourly rate. Throughout the SAC, Plaintiff alleges that he was not **paid any compensation** let alone the reasonable value of his services, and by submitting evidence of his annual salary it is unclear how the MJ concluded that the SAC does not allege what is reasonable or how it might be calculated. *See Kitchen* and *Timm*. Therefore, we object to the MJ's finding that Plaintiff has failed to state a claim for quantum meruit because he is not seeking contract damages, but the reasonable value of his services, which can be evidenced by Plaintiff's offer letter or other evidence identified in discovery. *See Kitchen* and *Timm*.

**K.** (**OBJECTION 11**) – Plaintiff has consistently pled nonpayment of the reasonable value of his services, and the only evidence available to determine his reasonable value is the Offer Letter attached to the SAC.

35. As stated above, Plaintiff objects to the Magistrate's finding that Plaintiff has failed to allege nonpayment of reasonable value of service. Throughout the SAC, Plaintiff has alleged he has received no payment, let alone any payment for the reasonable value of his services during the relevant period. Plaintiff can provide the Court with evidence of his annual salary to help determine what the reasonable value of his services are. *See Kitchen* and *Timm*. Therefore, Plaintiff objects to the MJ's finding that Plaintiff has not pled nonpayment for the reasonable value of his services, when the SAC is full of statements identifying that Plaintiff has not been paid any compensation, let alone the reasonable value of his services during the relevant period.

**L.** (**OBJECTION 12**) – The R&R creates bad case law that Plaintiff's passive theory of unjust enrichment fails because the R&R added the requirement that Plaintiff must allege "third-party" involvement, which is not a required element of unjust enrichment in Texas.

36. The R&R states that Plaintiff's unjust enrichment claim under the passive theory fails because Plaintiff does not allege third-party involvement. *Fu v. Chin* at *18 (N.D. Tex. 2020). In *Fu*, a case decided on summary judgment, the case dealt with unjust enrichment regarding a third-party investor that allowed another party to withdraw funds, and whether the third-party can recover under the passive theory of unjust enrichment. *Id*. No other case cited by Plaintiff or Defendant has explicitly held that "third-party involvement" is a requirement for unjust enrichment claims. *See Hui Ye v. Xiang Zhang*, No. 22-20026 (5th Cir. June 8, 2023)(unjust enrichment claim is based on the "passive receipt of a benefit that would be unconscionable [for the defendant] to retain."); *Credos Indus. Supplies & Rentals v. Targa Pipeline Mid-Continent Westtex LLC* (S.D. Tex. Aug. 15, 2022); *Nart v. Open Text Corp*., A-10-CA-870 LY (W.D. Tex. Aug. 29, 2011). None of these cases required the Plaintiff to prove "third-party involvement" or even mentioned "third-

parties." If the District Court adopts the R&R it will create bad precedent with regards to unjust enrichment claims and create a new hurdle for Plaintiff's pursuing unjust enrichment claims, which goes against Texas case law. In *Nart*, the Plaintiff was an employee and no third-party involvement was raised, and the Court still denied 12(b)(6) on unjust enrichment claims. *Nart* at *7. Therefore, we object to the MJ's finding that Plaintiff's passive theory fails because he does not allege "third-party involvement" because that is not a requirement under unjust enrichment claims and accepting the R&R would create bad case law that states Plaintiffs can only bring unjust enrichment claims if a third party is involved.

**M.** <u>(**OBJECTION 13**) – Plaintiff has pled particular facts that Defendant wrongfully secured benefits by fraud and undue advantage with specificity under Rule 9(a).</u>

37. Texas Courts have found unjust enrichment "is an independent cause of action that allows recovery when there is no express contract covering the services rendered." *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, at *32 (E.D. Tex. Sep. 27, 2016). Plaintiff sufficiently alleges Lottery.com received benefits in the form of IT services and IT support and in return for performing these tasks Plaintiff expected compensation based on the reasonable value of his services and/or what has been contractually agreed upon by both parties. Therefore, we object to the MJ's finding that Plaintiff's unjust enrichment claim is baseless because Plaintiff has adequately pled specific facts as the fraud and undue advantage under Rule 8 and Rule 9(a), which demonstrates that Defendant made fraudulent misrepresentations to induce Plaintiff to accept the unilateral contracts during the relevant period. Acceptance of Plaintiff's performance without compensating Plaintiff is the same as refusing to pay an employee wages and escaping liability, which unjust enrichment claims have been recognized to prevent. *See Kitchen*.

**N.** <u>**OBJECTION 14**) – Declaratory Relief should be determined at the conclusion of the case on the merits.</u>

## III. CONCLUSION & PRAYER

38. Rarely, are FLSA exemptions decided on a 12(b)(6) motion, but in this situation it is clear the R&R did not take facts liberally in the nonmovant's favor; and it even assumed facts that are not in evidence ("Wells does not complain about unpaid minimum wages but about the tune of hundreds of thousands of dollars… the Court takes true he was to be employed with an annual salary of $250,000). This is the **third** time the MJ has recommended dismissal on similar issues under the FLSA without properly analyzing each exemption and whether it applies. If Plaintiff were receiving the wages the R&R assumes he receives he would have no reason to bring claims under the FLSA for failure to pay minimum wages.

39. The MJ and the R&R is on the verge of creating the most favorable case law for employers under the FLSA, which essentially allows employers to escape FLSA liability by presenting an offer letter that purports to pay the employee more than minimum wages and some duties that appear to be executive, professional, or administrative. Whether employees are actually paid $684 per week to be considered exempt; is long in the past; and now employers have the opportunity to collect free labor without repercussions by citing the R&R for *Wells*, *Peterson*, and *Marsh*. It is a new day in the Fifth Circuit where FLSA exemptions do not exist and free labor is allowed. It has become clear that these issues may be better suited for the Fifth Circuit based on the consistency by the MJ to rule on these issues in a similar manner.

40. The R&R contains statements of bad case law and fails to take the facts liberally in Plaintiff's favor. Defendant's 12(b)(6) motion should have been **DENIED** as to all claims and the R&R should be **REJECTED** by the District Court in its entirety. However, we respectfully ask the District Court to review this case *de novo* and analyze each claim taking all facts liberally in Plaintiff's favor.

Respectfully Submitted,

[signature]
______________________________

**Eddie Hodges, Jr.**
Texas Bar No.: 24116523
Federal Bar No.: 3479748
**Alfonso Kennard, Jr.**
Texas Bar No. 24036888
Federal I.D. No. 713316
Kennard Law PC
5120 Woodway Dr., Suite 10010
Houston Texas 77056
Main: (713) 742-0900
Fax: (713) 742-0951
Email: alfonso.kennard@kennardlaw.com
Email: eddie.hodges@kennardlaw.com
Email: filings@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on this 24th day of January 2025, a true and correct copy of this Objections to the R&R was filed with the Court using the Court's CM/ ECF system and served on Defendant's counsel.

**ANDREW R. KORN**
State Bar card number: 11683150
Mailing address:
Andrew R. Korn, PLLC
4221 Avondale Avenue
Dallas, Texas 75219
E-mail address: akorn@receiverandrewkorn.com
Telephone number: (214) 521-0500
Attorney for Lottery.com

Eddie R. Hodges Jr.
Eddie Hodges Jr.

**CERTIFICATE OF COMPLIANCE**

I certify that this Motion response is within the page-limit ordered by Local Rule CV-7. This objection is filed with no more than twenty (20) pages, exclusive of the caption, the signature block, any certificate, and any accompanying documents.

Eddie R. Hodges Jr.
Eddie Hodges Jr.