# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

November 26, 2025

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 25-50261   Peterson v. Lottery.com
                 USDC No. 1:23-CV-646

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

             Sincerely,

             LYLE W. CAYCE, Clerk

             By: _____
             Casey A. Sullivan, Deputy Clerk
             504-310-7642

cc:
    Mr. Alfonso Kennard Jr.
    Mr. Andrew R. Korn



**Certified as a true copy and issued**
**as the mandate on Nov 26, 2025**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# United States Court of Appeals
# for the Fifth Circuit

_____

No. 25-50261

_____

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2025

Lyle W. Cayce
Clerk

Ryan Peterson,

*Plaintiff—Appellant*,

*versus*

Lottery.com, Incorporated, *doing business as* Sports.com,
*doing business as* Autolotto, Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-646

_____

## JUDGMENT

Before Smith, Stewart, and Ramirez, *Circuit Judges*.

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that we AFFIRM the dismissal of Peterson's FLSA and fraud and fraudulent inducement claims, REVERSE the dismissal of Peterson's breach of contract, quantum meruit and unjust enrichment claims, and REMAND for further proceedings consistent with this opinion.

No. 25-50261

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 25-50261

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2025

Lyle W. Cayce
Clerk

Ryan Peterson,

*Plaintiff—Appellant*,

*versus*

Lottery.com, Incorporated, *doing business as* Sports.com,
*doing business as* Autolotto, Incorporated,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-646

———————————————————————

Before Smith, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Ryan Peterson sued his employer, Lottery.com, under the Fair Labor Standards Act (FLSA) and state law, after it allegedly failed to pay his salary and reimburse his expenses for over two years. He appeals the district court's dismissal of all his claims. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-50261

I

A

On March 30, 2020, Peterson "accepted the position of Vice President of Research & Development" at Lottery.com, in which he would oversee internal IT operations and design software solutions supporting Lottery.com's daily activities in the United States. He was also tasked with recruiting personnel for various roles, building compliance and operations teams, and leading the development of Lottery.com's core business products. In a "written employment contract," Lottery.com agreed to pay him an annual salary of $200,000, payable on a biweekly basis. After Peterson was promoted to "Executive Vice President, Technology," in February 14, 2022, his annual salary was increased to $350,000. From the beginning of his employment until July 8, 2022, Peterson received his agreed bi-weekly salary.

On July 29, 2022, Lottery.com furloughed most of its employees because it "did not have sufficient financial resources to fund its operations or pay certain existing obligations, including its payroll and related obligations." Peterson alleges that he was not furloughed, continues to be employed by and complete work for Lottery.com, and has not been paid any compensation since July 8, 2022, his "last date of full payroll." He also claims he is owed reimbursements for company expenses he personally paid to keep the company operating. For example, he has been paying the fees for registering and annually renewing Lottery.com's primary domains, along with 16 other company domains, since August 8, 2022. He also alleges that Lottery.com continues to use these domains for various business purposes but has failed to reimburse him for his personal expenditures to keep them active. On multiple occasions since the furlough, Lottery.com's representatives allegedly represented to Peterson that he would receive his agreed compensation and reimbursement for company expenses to induce

2

him to continue performing his duties for Lottery.com. He relied on these misrepresentations to his detriment and continued to perform services with the expectation of being compensated under the agreed payment structure.

B

Peterson sued Lottery.com, asserting a minimum wage violation claim under the FLSA, as well as state law claims of breach of contract, fraud and fraudulent inducement, quantum meruit, and unjust enrichment. He also sought a declaratory judgment finding that "he is the sole owner, or at minimum he is an equal co-owner of all right, title and interest in and to the Domain Names <Lottery.com.> and <sports.com> and goodwill appurtenant thereto."

Lottery.com moved to dismiss all claims under Rule 12(b)(6). A magistrate judge recommended dismissal of the FLSA claim because Peterson had not stated a claim for unpaid minimum wages and because he was exempted from the minimum wage requirements. The magistrate judge also recommended dismissal of his state law claims for failure to state a claim. Over Peterson's objections, the district court adopted the magistrate judge's recommendations and dismissed all claims against Lottery.com.

On appeal, Peterson challenges the district court's dismissal of his FLSA claims and his state law breach of contract, fraud and fraudulent inducement, quantum meruit, and unjust enrichment claims.[1]

_____

[1] Although Peterson's brief also addresses the dismissal of his request for declaratory judgment, he forfeited the issue by not listing it in the statement of issues in violation of Rule 28(a)(5). *See United States v. Quintanilla*, 114 F.4th 453, 464 (5th Cir. 2024) ("Where a party fails to list an issue presented in his or her statement of the issues, the issue is forfeited even if he or she raises the issue in the body of the brief.").

No. 25-50261

## II

We review the district court's grant of a motion to dismiss under Rule 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 783 (5th Cir. 2020). "But we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citation modified). "To survive a Rule 12(b)(6) motion to dismiss, the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for entitlement to relief—including factual allegations that, when assumed to be true, 'raise a right to relief above the speculative level.'" *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint must therefore contain 'enough facts to state a claim to relief that is plausible on its face.'" *King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010) (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)). To meet that heightened pleading standard, plaintiffs "'must state with particularity the circumstances constituting fraud,' which, at a minimum, includes 'the who, what, when, where, and how of the alleged fraud.'" *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 215 (5th Cir. 2025) (quoting *United States ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 204 (5th Cir. 2013)), *petition for cert. filed*, (U.S. Oct. 2, 2025) (No. 25-392).

No. 25-50261

"Although the failure-to-state-a-claim inquiry typically focuses on whether the plaintiff plausibly alleges the element of a claim, a Rule 12(b)(6) dismissal may also be appropriately based on a successful affirmative defense provided that the affirmative defense appears on the face of the complaint." *Am. Precision Ammunition, L.L.C. v. City of Min. Wells*, 90 F.4th 820, 824 (5th Cir. 2024) (citation modified). "In such a scenario, the pleadings must 'reveal beyond doubt that the plaintiffs can prove no set of facts' that would overcome the defense or otherwise entitle them to relief." *Jeanty v. Big Bubba's Bail Bonds*, 72 F.4th 116, 118–19 (5th Cir. 2023) (quoting *Garrett v. Commonwealth Mortg. Corp.*, 938 F.2d 591, 594 (5th Cir. 1991)).

## III

Peterson argues that the district court erred in dismissing his FLSA claim.[2]

## A

Peterson first challenges the district court's finding that he failed to adequately allege an FLSA minimum wage violation.

Under the FLSA, employers are required to pay minimum wages to any covered employee. *See* 29 U.S.C. § 206(a)(1). To state a claim for violation of the FLSA, "an employee must plead that the employee is covered by the FLSA and that the employer failed to pay the FLSA-required

---

[2] Lottery.com argues that there is no subject-matter jurisdiction over Peterson's FLSA claim because "interstate commerce is a jurisdictional prerequisite under the" FLSA and Peterson failed to plausibly allege interstate commerce to invoke FLSA coverage. This argument lacks merit as this court has determined that "the FLSA does not have any single independent jurisdictional provision." *Biziko v. Van Horne*, 981 F.3d 418, 420 (5th Cir. 2020).

wages." *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 786 (5th Cir. 2020).

Here, the complaint alleges that between July 2022 and June 2024, Peterson continued to complete work for Lottery.com; he engaged in interstate commerce on the job because his work directly related to the sale of lottery tickets across the United States; and Lottery.com failed to pay him minimum wages as required under the FLSA. Peterson seeks, in part, to be paid "federal minimum wage compensation for every hour worked in any workweek for which he was not compensated." We agree that Peterson's complaint adequately pleaded a minimum wage claim under the FLSA.

B

Peterson next challenges the district court's finding that he was an exempt employee.

The FLSA exempts several types of employees from its provisions, including employees working "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). It includes a "Highly Compensated Employee" (HCE) exemption. *See Smith v. Ochsner Health Sys.*, 956 F.3d 681, 685 (5th Cir. 2020) (citing 29 C.F.R. § 541.601). The HCE "needs to make an annual salary of $100,000 or more, customarily perform a duty or responsibility of an executive, administrator, or professional, and perform office or non-manual work." *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 301 (5th Cir. 2024). To meet any of these exemptions, the employer must satisfy three tests: (1) the duties test, (2) the salary-level test, and (3) the salary-basis test. *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 43 (2023) (citing 29 C.F.R. §§ 541.700, 541.600, 541.602). "The employer bears the burden to establish a claimed exemption applies to the claimant, and we give a fair reading to the exemptions." *Cunningham v. Circle 8 Crane Servs., L.L.C.*, 64 F.4th 597, 600 (5th Cir. 2023) (citation modified).

No. 25-50261

Although it did not specify which FLSA exemption applied, the district court held that Peterson's pleadings support the conclusion that he "was employed in a capacity that exempts him from the provisions of the FLSA." Consistent with the duties of an employee working in a bona fide administrative capacity, he alleged that he was "employed with annual salaries of $200,000 and $350,000 paid biweekly" and that his work related to management, IT, and business operations requiring discretion and independent judgment.[3] Peterson does not challenge the court's finding as to his duties. He instead argues that any FLSA exemption that could have applied to him was lost during the period when Lottery.com did not pay his salary.

This same issue has already been addressed in a related case that is factually and legally identical to this one, down to the briefing. In *Wells v. Lottery.com, Inc.*, No. 25-50037, 2025 WL 2265447 (5th Cir. Aug. 6, 2025) (per curiam) (unpub.), another employee of Lottery.com—represented by the same counsel—appealed the dismissal of his FLSA minimum wage claim. Wells argued that "he lost FLSA exemption status when he stopped receiving paychecks." *Id.* at *4. The court rejected that argument because he failed to cite any authority in support. We likewise reject Peterson's argument and conclude that the district court did not err in dismissing his FLSA claim.

---

[3] The administrative exemption applies "when an employee's 'primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers,' and the 'primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 684 (5th Cir. 2020) (quoting 29 C.F.R. § 541.200(a)).

7

No. 25-50261

IV

Peterson argues that the district court erred in dismissing his breach of contract claim.

Under Texas law, the existence of a valid contract is an essential element of a breach of contract claim. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009).[4] "To be enforceable, the terms of an agreement must be sufficiently definite to enable the court to understand each party's obligations." *Coe v. Chesapeake Expl., L.L.C.*, 695 F.3d 311, 320 (5th Cir. 2012). "Generally, duration, compensation, and the employee's duties are essential elements of an employment contract." *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 433 (5th Cir. 2001).

"Texas law imposes a strong presumption in favor of at-will employment." *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 870–71 (5th Cir. 2016) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 862 (5th Cir. 1999)). The employment-at-will relationship is a contractual one, even though it is for an indefinite period and can be terminated by either party without cause at any time. *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1051 n.28 (5th Cir. 1998). Indeed, the contractual nature of an at-will employment relationship has long been recognized by Texas and federal courts in various cases. *See id.* (citing cases).

The district court concluded that Peterson's complaint did not allege sufficient facts to suggest the existence of an enforceable contract. The

---

[4] The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins*, 564 F.3d at 418. In the present case, the parties do not dispute that the complaint contains sufficient allegations regarding the last three elements; rather, this appeal is focused on the first element—the existence of a valid contract.

complaint alleges that Peterson and Lottery.com "entered into a written employment contract" on March 30, 2020, under which Peterson was hired to perform services as Vice President of Research & Development at an annual salary of $200,000, payable biweekly. It alleges that he was hired to oversee Lottery.com's internal IT operations, design software solutions, recruit staff, establish compliance and operations teams, and head the development of core business products. The complaint also alleges that on February 14, 2022, Peterson was promoted to Executive Vice President, Technology, with an increased annual salary of $350,000. Peterson attached to the complaint an offer letter from Lottery.com, acknowledging his ongoing work for Lottery.com, as well as his new role and salary. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (noting that a court, in evaluating a motion to dismiss, can consider "any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint"). These factual allegations, together with the offer letter attached to his complaint, suggest that he had a contract to perform various tasks for Lottery.com's business operations for an indefinite period, terminable at will and without cause by either party, in exchange for a salary. *See Kalmus v. Oliver*, 390 S.W.3d 586, 593 (Tex. App.—Dallas 2012, no pet.) ("An employment contract that does not specify a definite duration or prescribe conditions from which its duration can be determined is presumed to be terminable at will."). Accepted as true and viewed in the light most favorable to Peterson, the allegations plausibly show that Peterson entered into a valid employment contract with Lottery.com. This is all that is necessary at the pleading stage. *See Twombly*, 550 U.S. at 570. The district court erred in dismissing this claim.

No. 25-50261

V

Peterson argues that the district court erred in dismissing his fraudulent inducement claim for failing to satisfy the pleading standards of Rule 9(b).[5]

"Fraudulent inducement is a 'species of common-law fraud' that 'arises only in the context of a contract.'" *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Common-law fraud requires "'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). "In fraudulent inducement cases, the plaintiff must show that he would not have entered into the contract in the absence of the misrepresentation." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012). Without "proof of an underlying contract which was induced," there is no fraudulent inducement claim. *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)).

---

[5] Although the complaint appears to assert separate claims for fraud and fraudulent inducement, the parties do not differentiate between the claims. *See Zaidi v. Shah*, 502 S.W.3d 434, 441 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("'Fraud' and 'fraudulent inducement' are not different names for the same claim; they are different claims."). Both claims are based on the same allegation: Lottery.com's false representations to induce him to enter into the employment contract. "Fraud claims that depend on the existence of an enforceable contract are properly styled as fraudulent inducement claims, not common law fraud claims." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012). We therefore treat Peterson's fraud claim as a claim for fraudulent inducement.

10

Here, the complaint alleges that between July 2022 and June 2024, Lottery.com's representatives represented and assured Peterson on multiple occasions that he would be fully compensated for work performed after July 22, 2022, that they knew the statements were false, and that the false representations were made to induce Peterson to continue working without pay. The complaint also alleges that Peterson "would not have entered into the contract but for the reasonable expectations from representations exhibited in the terms of the contract that he would not (sic) be compensated for his work for over ten months." Peterson's allegations, taken as true and construed in his favor, do not support the inference that the representations by Lottery.com's representatives induced him to enter into a contract. *See Haase*, 62 S.W.3d at 798 ("When a party has not been induced into a contract . . . there is no detrimental reliance and therefore no fraudulent inducement claim."). It is not plausible that the representations were made to induce Peterson to enter a contract because he alleges that the representations were made long after he had already entered into an employment contract with Lottery.com.[6] Peterson's failure to plead specific

---

[6] Peterson argues that "it can be reasonably inferred that these misrepresentations were made simultaneously with [his] acceptance of the unilateral employment contract to remain employed and perform services after July 22, 2022." But as noted by the district court, these allegations were raised for the first time in the opposition to the motion to dismiss. Nowhere does the complaint allege that Peterson and Lottery.com made a "unilateral employment contract" separate from their alleged written employment contract. Peterson did not seek leave to amend his complaint to allege these facts, and he does not contend on appeal that he should have been permitted to amend. Because these allegations were not included in the complaint or incorporated by reference, we will not consider them on appeal. *See Edionwe v. Bailey*, 860 F.3d 287, 293 n.1 (5th Cir. 2017); *see, e.g.*, *A2D Techs. Inc. v. MJ Sys., Inc.*, 269 F. App'x 537, 541 (5th Cir. 2008) ("[W]e typically may not consider materials or documents outside of the complaint in addressing a motion to dismiss."). Moreover, the allegations do not support the existence of a contract. *See generally King v. Baylor Univ.*, 46 F.4th 344, 365 (5th Cir. 2022) ("If a valid express contract

facts to support a conclusion that Lottery.com's representations induced him to enter a contract is fatal to his fraudulent inducement claim. *See also Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018) (noting that "dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief" (citation modified)).[7]

## VI

Peterson argues that the district court erred in dismissing his alternatively pleaded quantum meruit claim.

Under Texas law, quantum meruit is "an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)). "To recover under quantum meruit, the plaintiff must prove that: '(1) valuable services were rendered or materials furnished; (2) for the party sought to be charged; (3) which services and materials were accepted by the party sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by the person sought to be charged.'" *Matter of KP Eng'g, L.P.*, 63 F.4th 452, 456 (5th Cir. 2023) (quoting *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). Recovery in quantum meruit is generally unavailable when there is a valid contract covering the subject matter of the dispute. *Id.* "The measure of damages for

---

covering the subject matter exists there can be no recovery upon a contract implied by law.").

[7] Because we conclude that Peterson failed to plead sufficient facts to make out a fraudulent inducement claim, we do not reach the arguments concerning the at-will employment doctrine or the economic loss rule.

recovery under a quantum-meruit theory is the reasonable value of the work performed and the materials furnished." *Hill*, 544 S.W.3d at 733.

The district court dismissed Peterson's quantum meruit claim, finding that he (1) seeks impermissible damages and (2) fails to adequately plead nonpayment of reasonable value for his services. We disagree on both points.

First, the district court concluded that, based on the complaint's allegation that Peterson "was not properly compensated for his work at the applicable salary that he contracted to earn," Peterson's quantum meruit claim fails because he is "clearly" seeking compensation under the alleged employment contract. But the complaint specifically alleges that Peterson's quantum meruit claim was pleaded in the alternative to his breach of contract claim, and that he is entitled to recovery in quantum meruit if his employment contract is not enforceable. A plaintiff "may seek alternative relief under both contract and quasi-contract theories" like quantum meruit. *In re Kellogg Brown & Root*, 166 S.W.3d at 740.

Second, the district court concluded that Peterson failed to specifically allege that he was not paid a reasonable value for his services or to adequately allege "what that reasonable value is or how it might be calculated." The complaint contains "factual content" that allows us to "draw the reasonable inference" that Peterson had not been paid any amount, reasonable or otherwise, for his services. *See Iqbal*, 556 U.S. at 678. Notably, the complaint includes allegations that Peterson "continued to complete work for [Lottery.com] . . . without any income for over year" and "was never compensated" for completed work; that he "received no compensation during the [relevant] time period and continues to not receive compensation for his work performed" and Lottery.com "has failed to pay [him] minimum wages;" that he "received no weekly compensation nor

No. 25-50261

$684 per week at minimum;" and that Lottery.com "fail[ed] to pay [him] the agreed compensation or at a minimum the reasonable value of his services." While Peterson will have to prove the reasonable value of services or the calculation of damages at the summary judgment or trial stage, that proof is unnecessary at this point. Construing the complaint in Peterson's favor, Peterson has stated a plausible claim for quantum meruit.

VII

Peterson argues that the district court erred in dismissing his alternatively pleaded claim for unjust enrichment.

Texas law recognizes two theories of unjust enrichment: active and passive. *Matter of KP Eng'g*, 63 F.4th at 457 (citation modified). To recover under the active unjust enrichment theory, a plaintiff must show that "one party 'has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 379–80 (5th Cir. 2020) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Under the passive unjust enrichment theory, a plaintiff need only show that a person passively received a benefit that would be unconscionable to retain. *Dig. Drilling Data Sys.*, 965 F.3d at 379 (citing *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied)). An unjust enrichment claim under either theory is "unavailable when a valid, express contract governing the subject matter of the dispute exists." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001).

Here, the complaint alleges that Lottery.com took "undue advantage" of Peterson's services when it failed to pay him, at a minimum, the reasonable value of his services. The complaint also alleges that it is "wholly unconscionable" for Lottery.com to "passively retain [Peterson's] services while refusing to compensate [him] for those services." Accepting

14

No. 25-50261

the factual allegations as true and drawing all reasonable inferences from them in Peterson's favor, we hold that Peterson has adequately pleaded both active and passive theories of unjust enrichment. *See Dig. Drilling Data Sys.*, 965 F.3d at 379–80.[8]

## VIII

We AFFIRM the dismissal of Peterson's FLSA and fraud and fraudulent inducement claims, REVERSE the dismissal of Peterson's breach of contract, quantum meruit and unjust enrichment claims, and REMAND for further proceedings consistent with this opinion.

---

[8] Relying on *Jyue Hwa Fu v. Yeh Chin Chin*, No. 3:18-CV-2066-N-BN, 2020 WL 7049161, at *6 (N.D. Tex. Oct. 23, 2020), *report and recommendation adopted*, No. 3:18-CV-2066-N-BN, 2020 WL 7047053 (N.D. Tex. Dec. 1, 2020), the district court concluded that Peterson failed to plead a plausible claim for passive unjust enrichment solely because he did not allege "third-party involvement." Although *Jyue Hwa Fu* states that the benefit a defendant receives from a plaintiff "as a result of a third-party's actions supports recovery under passive unjust enrichment, there is no indication that third-party involvement is an essential element for the passive theory.